1   ETHAN D. DETTMER, SBN 196046
      edettmer@gibsondunn.com
2   ENRIQUE A. MONAGAS, SBN 239087
      emonagas@gibsondunn.com
3   AIMEE M. HALBERT, SBN 279144
      ahalbert@gibsondunn.com
4   GIBSON, DUNN & CRUTCHER LLP
    555 Mission Street
5   San Francisco, California 94105-0921
    Telephone: 415.393.8200
6   Facsimile:  415.393.8306

7   *Attorneys for Plaintiff Chevron Corporation*

FILED

2013 FEB 25  P 3: 08

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8                 UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11   CHEVRON CORPORATION,                    Case No. C 13- 80038          MISC   CRB

12                    Plaintiff,            **CHEVRON CORPORATION'S MOTION TO
                                            ENFORCE AMAZON WATCH SUBPOENA
13        v.                                TO PRODUCE DOCUMENTS**

14   STEVEN DONZIGER, *et al.*,             **Hearing:**
                                            Date:  April 1, 2013
15                    Defendants.           Time: 10:00 a.m.
                                            Place: San Francisco Courthouse
16

17   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

18        PLEASE TAKE NOTICE that on April 1, 2013,[1] at 10:00 a.m. or as soon thereafter as

19   counsel may be heard in the above-captioned court, located at 450 Golden Gate Avenue, San

20   Francisco, California 94102, Plaintiff Chevron Corporation ("Chevron") will and hereby does move

21   for an order compelling Amazon Watch to produce all documents responsive to Chevron's subpoena.

22   This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and

23   Authorities, the concurrently filed Declaration of Enrique Monagas, all other papers submitted in

24   support of the Motion, the records on file in this case, the arguments of counsel, and any other matter

25   that the Court may properly consider.

26   _____

[1]  Pursuant to the Honorable Lewis A. Kaplan's standing order, this motion has been limited to four
27   pages.  In the event Chevron's Motion to Transfer this subpoena enforcement action to the
     Southern District of New York is not granted, Chevron will request that the Court shorten time
28   for briefing and hearing the instant motion, pursuant to Civil Local Rules 6-1(b) and 6-3.

1    Pursuant to Civil Local Rule 37-1(a), Chevron hereby certifies that it has in good faith

2    conferred with Amazon Watch (by engaging in four lengthy telephonic conferences and exchanging

3    ten letters) for the purpose of attempting to resolve all disputed issues without court action.

### MEMORANDUM OF POINTS AND AUTHORITIES

5    Amazon Watch ("AW") is a non-party co-conspirator in Chevron's lawsuit against Steven

6    Donziger and others (the "RICO Defendants"), which alleges claims related to a fraudulently

7    obtained $19 billion judgment against Chevron in Ecuador (the "Lago Agrio litigation"). *See*

8    Declaration of Enrique A. Monagas ("Monagas Decl.") Ex. 1, at ¶¶ 1-5, 18(f).  On November 28,

9    2012, Chevron served a subpoena to produce documents on AW.  Monagas Decl. ¶ 3; *id.* Exs. 2, 3,

10   19.  AW refuses to produce a single document in response to the subpoena.

11   **1.    Amazon Watch Participated in the RICO Defendants' Scheme to Pressure
         Chevron to Settle the Fraudulent Litigation.**

12

13   AW partnered with the RICO Defendants to place Chevron "in a position where," as AW put

14   it, "to survive intact in American society as a reputable company with a competitive edge, [it] will be

15   forced to settle the lawsuit." *Id.* Ex. 4, at WOODS-HDD-0353023.  Throughout the Lago Agrio

16   litigation (and continuing to this day), the RICO Defendants directed a public relations campaign

17   through AW against Chevron as part of their scheme to extort a massive settlement. *See id.* Ex. 1, at

18   ¶¶ 214-25.  Unbeknownst to those who received AW communications—including Chevron

19   shareholders, the SEC, and the general public—Donziger and his co-conspirators directed the scope,

20   substance, timing, and tone of numerous AW publications about Chevron and the Lago Agrio

21   litigation.  As Donziger stated in a November 2006 e-mail to AW: "I . . . know the press releases on

22   the Ecuador campaign are not a terrible work burden to AW because I am writing most of them." *Id.*

23   Ex. 5.  The RICO Defendants also paid AW directly for what they called "propaganda." *See id.* Ex. 6

24   ("FYI, a check is being sent today for $1,000 for p.r. newswire propaganda.").

25   With compromised independence came compromised integrity.  On multiple occasions,

26   AW declined to correct or retract falsehoods and misrepresentations in the documents prepared by the

27   RICO Defendants.  For example, after AW learned it had published false statistics in its press

28   releases claiming that Chevron dumped thirty times more oil than the Exxon Valdez, *see id.* Ex. 7, at

1    DONZ-HDD-0112888 ("we are off by a factor of 10 it seems"), Donziger persuaded AW not to

2    correct the releases because it would have "HUGE implications for the legal case," *see id.* Ex. 8.

3    And even after receiving a cease and desist letter from a former consultant for plaintiffs in the Lago

4    Agrio litigation stating that his $6 billion damages estimate was invalid and vastly overstated, *see id.*

5    Ex. 9, AW—at Donziger's direction—continued to use that figure, *see, e.g., id.* Ex. 10. *Cf. In re*

6    *Appl. of Chevron Corp.*, 749 F. Supp. 2d 141, 153 n.63 (S.D.N.Y. 2010). AW relied on the $6 billion

7    figure in letters demanding that the U.S. Securities and Exchange Commission ("SEC") investigate

8    Chevron for purported Sarbanes-Oxley violations. *See* Monagas Decl. Exs. 11, 12, 13; *cf. id.* Ex. 14

9    (Donziger suggests that AW submit a follow-up letter to the SEC "without disavowing or mentioning

10    Russell's report").[2] Given this and other evidence of AW's role in the extortion scheme, the

11    requested discovery is highly relevant to Chevron's claims.

12    **2.**     **The First Amendment Does Not Protect Amazon Watch's Fraudulent Conduct.**

13    AW claims that the First Amendment—and in particular *Perry v. Schwarzenegger*, 591 F.3d

14    1147 (9th Cir. 2010)—protects every document requested by the subpoena. But the First

15    Amendment does not protect fraudulent activity or associations that further a conspiracy. *See, e.g.,*

16    *Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003); *United States v.*

17    *Sattar*, 395 F. Supp. 2d 79, 101 (S.D.N.Y. 2005). Numerous courts have found compelling the

18    evidence that the fraud alleged in this case in fact occurred,[3] and the abundant evidence of AW's role

19

20    [2] Even more egregious conduct did not deter AW from continuing to support the RICO Defendants. *See, e.g., Chevron Corp. v. Donziger*, 768 F. Supp. 2d 581, 612-13 (S.D.N.Y. 2011), *rev'd on other grounds*, 667 F.3d 232 (2d Cir. 2012) (discussing AW Executive Director Atossa Soltani's participation in a June 2007 meeting at which Donziger and Defendant Pablo Fajardo discussed the need for a "private army," and Soltani warned that "it's illegal to conspire to break the law"). Evidence also indicates that AW was aware of and involved in unlawful *ex parte* contact between the RICO Defendants and the Lago Agrio judge. *See* Monagas Decl. Ex. 15 (Donziger says, "The perito [an expert with whom Donziger colluded] got sworn in after all those visits to the court" and congratulates AW, saying "that visit to the judge last week was a huge help"); *id.* Ex. 16 at DONZ-HDD-0113457 (AW's former Associate Director responds, "YAY! Guess getting smooched by the smarmy judge was worth it").

25    [3] *See, e.g., Chevron Corp. v. Donziger*, 768 F. Supp. 2d 581, 636 (S.D.N.Y. 2011); *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 454-55 (S.D.N.Y. 2011); *In re Appl. of Chevron Corp.*, 633 F.3d 153, 166 (3d Cir. 2011); *In re Chevron Corp.*, No. 11-cv-24599-MGC-WCT, 2012 WL 3636925 (S.D. Fla. June 12, 2012); *Chevron Corp. v. Page*, No. RWT-11-1942, Oral Arg. Tr. at 10:17-21, 11:13-23 (D. Md. Aug. 31, 2011); *In re Appl. of Chevron Corp.*, 749 F. Supp. 2d 141, 167 (S.D.N.Y. 2010); *In re Chevron Corp.*, No. 10-cv-1146-IEG(WMC), 2010 WL 3584520, at *6 (S.D. Cal. Sept. 10, 2010); *In re Chevron Corp.*, Nos. 1:10-mc-00021-22, Dkt. 173 at 11 (D.N.M. *(Cont'd on next page)*

1    as a co-conspirator in that fraud defeats any claimed First Amendment protection.

2         Even assuming, *arguendo*, that the First Amendment protects communications in support of

3    fraud, only "communications among the core group of persons engaged in the formulation of

4    campaign strategy and messages" would arguably be protected. *See Perry*, 591 F.3d at 1165 n.12.

5    AW asserts that its core group comprises nearly everyone within its organization and unspecified

6    other organizations, but refuses to identify those individuals, claiming that such information is itself

7    protected by the First Amendment. AW's refusal to provide "information from which a functional

8    interpretation of [an inter-organizational] core group . . . [can] be derived" makes it impossible to

9    substantiate its claims regarding First Amendment protection. *See Perry v. Schwarzenegger*, 602

10   F.3d 976, 981 (9th Cir. 2010). In all events, the requested discovery is "highly relevant" to

11   Chevron's claims, and Chevron's interest in evidence of the extortion scheme against it outweighs

12   any harm to AW's First Amendment interests, particularly where Chevron has offered to tailor its

13   requests to avoid interfering with arguably protected activities.[4] *See Perry*, 591 F.3d at 1161.

14        **3.    The Subpoena Does Not Seek Protectable Commercial Information.**

15        AW asserts that nearly every document request calls for the disclosure of confidential

16   commercial information, yet offers only "vague claims" that fail to satisfy its "burden of showing that

17   release of the information would impair their marketplace competitiveness." *See Falicia v. Advanced*

18   *Tenant Servs., Inc.*, 235 F.R.D. 5, 10 (D.D.C. 2006). AW relies on *Compaq Computer Corp. v.*

19   *Packard Bell Electronics, Inc.*, but *Compaq* involved a party requesting proprietary information from

20   a direct competitor, and the court nevertheless ordered production of the information because

21

_____

22   *(Cont'd from previous page)*

23   Sept. 2, 2010); *Chevron Corp. v. Champ*, Nos. 1:10-mc-27, 1:10-mc-28, 2010 WL 3418394, at *6
     (W.D.N.C. Aug. 30, 2010); *In re Appl. of Chevron Corp.*, No. cv-10-2675 (SRC), Hrg. Tr. at
24   43:13-44:16 (D.N.J. June 11, 2010).
     [4] For example, Chevron proposed to limit document requests concerning "CHEVRON or the
25   CHEVRON LITIGATIONS" to documents concerning the "CHEVRON LITIGATIONS."
     Chevron also clarified does not seek AW's mailing or fundraising lists; that it only seeks the
26   identities of donors who are named co-conspirators; that it only seeks communications with AW
     donors to the extent they discuss the underlying litigation or Lago Agrio litigation; and that it
27   does not seek copies of each individual fundraising communication when a form communication
     would suffice. Chevron also proposed redacting names of non-co-conspirator donors or potential
28   donors from individualized (as opposed to mass) fundraising communications.

1 "discovery is virtually always ordered once the movant has established that the secret information is

2 [both] relevant and necessary." 163 F.R.D. 329, 338 (N.D. Cal. 1995). Even assuming AW could

3 establish that the subpoena seeks commercially sensitive information disclosure of which would harm

4 its ability to compete (which it cannot), the requested discovery is both relevant and necessary to

5 Chevron's claims regarding AW's role in the extortionate public pressure campaign against Chevron.

6        **4.    Amazon Watch Must Log Documents It Claims Are Attorney-Client Privileged.**

7        Departing from established practice and precedent, AW claims that, to the extent it believes a

8 particular responsive document is a privileged attorney-client communication or is otherwise

9 protected against disclosure, it is not required to produce a privilege log. But producing a privilege

10 log is necessary to assert privilege. *See, e.g.*, Fed. R. Civ. P. 45(d)(2)(A); *Perry*, 591 F.3d at 1153

11 n.1. AW must log responsive communications it withholds under a claim of privilege in order for

12 Chevron to assess the claim—particularly given that the crime-fraud exception would defeat the

13 privilege with respect to communications that furthered AW's or its co-conspirators' fraudulent

14 activities (regardless of whether the attorney was aware of the illegality involved). *See, e.g.*, *In re*

15 *Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996).

16        **5.    The Time Period of the Requests Is Reasonable.**

17        The subpoena's time period (January 1, 2003 to the date of the subpoena) is reasonable. AW

18 has supported the alleged RICO enterprise—financially and otherwise—since at least 2002 to the

19 present. *See* S.D.N.Y. Dkt. 37-20 (Ex. 242). AW claims the time period is unreasonable and objects

20 to producing any documents dated after the filing of the RICO action. But the filing of the RICO

21 action predated the fraudulent and ghost-written Ecuadorian judgment that AW continues to

22 publicize, and AW has continued its involvement in the ongoing pressure campaign to this day.

23        **6.    Compliance with the Subpoena Is Not Unduly Burdensome.**

24        AW claims Chevron must show which documents it already possesses or could potentially

25 obtain from another source, so that AW can exclude them from any production. This position is

26 neither workable as a practical matter nor required by law, and in any event would *increase* the

27 claimed burden on AW. AW's burden assertions—which it has never articulated with any clarity—

28 are undermined by AW's refusal to produce even a single document in response to the subpoena.

Gibson, Dunn &
Crutcher LLP

CHEVRON CORPORATION'S MOTION TO ENFORCE AMAZON WATCH SUBPOENA TO PRODUCE
DOCUMENTS

1    Dated: February 25, 2013                    Respectfully submitted,

2

3                                                GIBSON, DUNN & CRUTCHER LLP

4
                                                 By: _____
5                                                                Ethan D. Dettmer

6                                                *Attorneys for Plaintiff Chevron Corporation*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5
CHEVRON CORPORATION'S MOTION TO ENFORCE AMAZON WATCH SUBPOENA TO PRODUCE
DOCUMENTS