ETHAN D. DETTMER, SBN 196046
  edettmer@gibsondunn.com
ENRIQUE A. MONAGAS, SBN 239087
  emonagas@gibsondunn.com
AIMEE M. HALBERT, SBN 279144
  ahalbert@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

Attorneys for Plaintiff Chevron Corporation

FILED
2013 FEB 25  P 3: 11
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHEVRON CORPORATION,<br><br>                    Plaintiff,<br><br>        v.<br><br>STEVEN DONZIGER, *et al.*,<br><br>                    Defendants. | Case No. CV 13-80038-MISC CRB<br><br>**CHEVRON CORPORATION'S MOTION TO TRANSFER CHEVRON'S MOTION TO ENFORCE AMAZON WATCH SUBPOENA TO PRODUCE DOCUMENTS**<br><br>**Hearing:**<br>Date: April 1, 2013<br>Time: 10:00 a.m.<br>Place: San Francisco Courthouse |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 1, 2013,[1] at 10:00 a.m. or as soon thereafter as counsel may be heard in the above-captioned court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Chevron Corporation ("Chevron") will and hereby does move for an order transferring Chevron's Motion to Enforce Amazon Watch Subpoena to Produce Documents to the Southern District of New York pursuant to 28 U.S.C. § 1404(a), effective immediately pursuant to Civil Local Rule 3-14.  This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Enrique A. Monagas, the Declaration of Ethan D. Dettmer, all other papers submitted in support of the Motion, the records on file in this case, the arguments of counsel, and any other matter that the Court may properly consider.

---

[1] This noticed hearing date is subject to change pursuant to Chevron's pending Motion to Shorten Time for Briefing and Hearing, which requests a hearing date of March 8, 2013.

# MEMORANDUM OF POINTS AND AUTHORITIES

Chevron Corporation ("Chevron") respectfully requests that the Court transfer this subpoena enforcement action to the Southern District of New York, where the underlying case to which the subpoena relates currently is pending (the "SDNY Action"), and where Amazon Watch has *already* contested the enforceability of this subpoena.[2] The Honorable Lewis A. Kaplan, who presides over the action in the Southern District of New York is intimately familiar with the facts of this case—having presided over this and related actions since July 2010—and indeed already has ruled on aspects of *this* subpoena's enforceability and stated his willingness to accept transfer or remittal of any motion practice associated with the subpoena served upon Amazon Watch ("Amazon Watch Subpoena"). The factual and procedural record in the underlying action is robust—several thousand exhibits have been submitted, and the docket contains approximately 850 entries, including three motions for summary judgment, half a dozen appeals, and nearly a dozen motions to compel. Judicial economy would be served by transfer, especially here where the close of discovery is just three months away, and the Southern District of New York is already actively managing all parties' discovery efforts and is familiar with the dispute over the Amazon Watch Subpoena.

# FACTUAL BACKGROUND

The gravamen of the RICO Action is the defendants' long-running scheme to defraud and extort Chevron out of billions of dollars, under the guise of a sham lawsuit for alleged environmental damage in Ecuador. As described by defendant Steven Donziger, the ringleader of the RICO enterprise, Amazon Watch is an "absolutely critical" participant in the scheme:

> [They have] played an absolutely critical role in this . . . [I]f it weren't for them, we would just be a legal case, but because of the work of people who care, you know, especially Amazon Watch, we're a campaign that has a legal case. And I think . . . that, um, the pain Amazon Watch can cause Chevron in many respects is greater than the pain we can cause . . . .

Declaration of Enrique A. Monagas ("Monagas Decl.") Ex. 23. Amazon Watch itself describes its

---

[2] Chevron noticed a Rule 30(b)(6) deposition of Amazon Watch, pursuant to a separate subpoena issued from this Court. On February 25, 2013, Amazon Watch filed a motion to enlarge time to respond to the deposition subpoena, and has indicated it will file a motion for a protective order based on the same essential legal arguments. Because Chevron's deposition subpoenas and document subpoena involve the same parties and the same issues, in the interest of judicial economy, both subpoenas should be transferred to the Southern District of New York.

Gibson, Dunn & Crutcher LLP

1

CHEVRON CORPORATION'S MOTION TO TRANSFER CHEVRON'S MOTION TO ENFORCE AMAZON WATCH SUBPOENA TO PRODUCE DOCUMENTS

role even more bluntly. In a proposal to Donziger, Amazon Watch offered to "leverage multiple pressure points on Chevron and its decision makers," such that they would be "put in a position where, to survive intact in American society as a reputable company with a competitive edge, they will be forced to settle the lawsuit." *Id.* Ex. 4. "Personal comfort levels must be threatened." *Id.*

Amazon Watch's role, which continues to this day, is to be a mouthpiece for Donziger and others (the "RICO Defendants"), part of a broader public pressure campaign intended to force Chevron to pay off the RICO Defendants in the form of a "settlement" of the fraudulent Ecuadorian lawsuit. *See id.* Ex. 1, at ¶¶ 214-25. Unbeknownst to those who received Amazon Watch communications—including Chevron shareholders, the SEC, and the general public—Donziger and his co-conspirators directed the scope, substance, timing, and tone of numerous Amazon Watch publications about Chevron and the Lago Agrio litigation. As Donziger stated in a November 2006 e-mail to Amazon Watch: "I . . . know the press releases on the Ecuador campaign are not a terrible work burden to AW because I am writing most of them." *Id.* Ex. 5. The RICO Defendants also paid Amazon Watch directly for what they called "propaganda." *See, e.g., id.* Ex. 6 ("FYI, a check is being sent today for $1,000 for p.r. newswire propaganda"). On multiple occasions, Amazon Watch declined to correct or retract falsehoods and misrepresentations in the documents prepared by the RICO Defendants. For example, after Amazon Watch learned it had published false statistics in its press releases claiming that Chevron dumped thirty times more oil than the Exxon Valdez, *see id.* Ex. 7 ("we are off by a factor of 10 it seems"), Donziger persuaded Amazon Watch not to correct the releases because it would have "HUGE implications for the legal case," *see id.* Ex. 8. And even after receiving a cease and desist letter from a former LAP consultant stating that his $6 billion damages estimate was invalid and vastly overstated, *see id.* Ex. 9, Donziger directed Amazon Watch to continue to disseminate that figure publicly, and Amazon Watch complied, *see, e.g., id.* Ex. 10. *Cf. In re Appl. of Chevron Corp.*, 749 F. Supp. 2d 141, 153 n.63 (S.D.N.Y. 2010). Amazon Watch sent letters to the SEC and DOJ demanding investigations of Chevron, all of which substantially were coordinated by Donziger and co-conspirators. *See* Monagas Decl. Exs. 11, 12, 13. *cf. id.* Ex. 14 (Donziger suggests that Amazon Watch submit a follow-up SEC letter "without disavowing or mentioning Russell's report"). Given this and other evidence of Amazon Watch's role in the

extortion scheme, the requested discovery is highly relevant to Chevron's claims.

## PROCEDURAL HISTORY

Amazon Watch is a non-party co-conspirator in Chevron's lawsuit against the RICO Defendants, which alleges claims related to a fraudulently obtained $19 billion judgment against Chevron in Ecuador. Pursuant to the RICO action, on November 28, 2012, Chevron issued out of the Northern District of California the Amazon Watch Subpoena, serving it on Amazon Watch's Program Director, Leila Salazar, who stated that she was authorized to and would receive service, on November 28, 2012 at 2:45 p.m. *Id.* Ex. 19; *see also id.* Ex. 3.

Subsequently, however, counsel for Amazon Watch contested service. Then, on December 7, 2012, purportedly consistent with its stance of not "hav[ing] any interest in wasting resources on service of process fights," Amazon Watch's counsel agreed to accept service on behalf of Amazon Watch. *Id.* Ex. 17, at 11. Since then, Amazon Watch has reversed course and maintains that service upon Ms. Salazar was not proper and refuses to comply with the subpoena.

On January 2, 2013, the RICO Defendants filed before Judge Kaplan a motion for a protective order over multiple subpoenas, including the Amazon Watch Subpoena. On January 23, 2013, counsel for Amazon Watch filed a letter and accompanying declaration with Judge Kaplan contesting service of the Amazon Watch Subpoena. That same day, Judge Kaplan granted the RICO Defendants' motion as to several of the subpoenas, including the Amazon Watch Subpoena, solely on the ground of untimeliness of service. *Id.* Ex. 20. Chevron moved for reconsideration of the order. *Id.* Ex. 24.

On February 13, counsel for Amazon Watch submitted a letter brief in opposition to Chevron's reconsideration motion, attaching yet another declaration. *Id.* Ex. 21. On February 19, 2013, Judge Kaplan granted Chevron's motion for reconsideration as to the Amazon Watch Subpoena and simultaneously denied the motion for a protective order as to the Amazon Watch Subpoena. *Id.* Ex. 3.

Judge Kaplan found that Chevron had properly served Ms. Salazar on November 28, 2012, and that Chevron's subpoena upon Amazon Watch therefore was therefore timely. Judge Kaplan noted that he originally granted the protective order as to Amazon Watch based on the court's

1  misunderstanding that the Amazon Watch Subpoena "concededly w[as] served after December 1,
2  2012 [the court-mandated deadline for subpoenas to produce documents]." *Id.* at 1. The court further
3  noted that it "drew that premise from a submission on behalf of A[mazon] W[atch] that asserted that
4  it and Chevron had "agreed . . . that service was effected as of December 7, 2012." *Id.*; *see also id.*
5  Ex. 17. Judge Kaplan concluded his order by indicating his willingness to accept transfer or remittal
6  of any motion practice regarding the Subpoena, instructing that "[i]n the event that there is motion
7  practice in the issuing court with respect to the AW subpoena, the Court hereby indicates its
8  willingness to accept transfer or remittal of the motion from the issuing court." *Id.* at 2.

9  On February 25, 2013, Chevron moved to enforce the Amazon Watch subpoena to produce
10 documents, initiating the instant action.

## ARGUMENT

District courts are authorized to transfer an action under 28 U.S.C. § 1404(a) "[f]or convenience of the parties and witnesses, in the interests of justice" and have broad discretion to do so. *Lou v. Belzberg*, 834 F.2d 730, 734 (9th Cir. 1987), *cert. denied*, 485 U.S. 993 (1988). Under § 1404(a), a district court has discretion adjudicate motions to transfer on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Moreover, section 1404(a)'s enumerated factors are not exclusive, and a court properly may "'consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (quoting 15 Wright, Miller & Cooper § 3487). And "[w]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Cheng v. Boeing Co.*, 708 F.2d 1406, 1409 (9th Cir.), *cert. denied*, 464 U.S. 1017 (1983).

The transferring court must consider both public factors, which go to the interests of justice, and private factors, which go to the convenience of the parties and witnesses. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). Those factors relevant to this case include: (1) the parties' respective contacts with the forum; (2) the contacts relating to the plaintiffs cause of action in the chosen forum; (3) the differences in the costs of litigation in the two forums; (4) the availability of

compulsory process to compel attendance of unwilling non-party witnesses; (5) the ease of access to sources of proof; and (6) the relevant public policy of the forum state, if any. *See San Francisco Tech., Inc. v. The Glad Products Co.,* 10-CV-00966 JF (PVT) 2010 WL 2943537, at *5 (N.D. Cal. July 26, 2010).

(1) *The parties' respective contacts with the forum.* Although both Amazon Watch and Chevron are residents of this district, the relevant inquiry here is the relation of the parties to the underlying action to which this subpoena enforcement proceeding relates. Chevron is the plaintiff in the Southern District, and counsel for Amazon Watch has made two submissions to Judge Kaplan in the Southern District, including two sworn declarations, regarding this very subpoena. *See* Monagas Decl. Exs. 17, 21. Further, both Chevron's counsel from Gibson Dunn in New York, and Amazon Watch's counsel from EarthRights International, in Washington, D.C., are far closer in geography to the Southern District of New York. Indeed, Amazon Watch's lawyer Richard Herz is a member of the New York State Bar and lives near New York City. *Id.* Ex. 18.

(2) *The contacts relating to the plaintiff's cause of action in the chosen forum.* The entirety of this subpoena enforcement action relates to litigation pending in the Southern District.

(3) *The differences in the costs of litigation in the two forums.* Again, given the proximity of counsel to the Southern District of New York, transferring this action there significantly would reduce potential costs.

(4) *The availability of compulsory process to compel attendance of unwilling non-party witnesses.* This is a non-party subpoena enforcement action, and non-party Amazon Watch is the only party needed to be served, and already has been so served with process.

(5) *The ease of access to sources of proof.* Again, counsel for Amazon Watch and Chevron, respectively, are the only likely witnesses in a dispute over the subpoena. Amazon Watch has already submitted evidence in connection with this very subpoena in the Southern District of New York. *Id.* Exs. 17, 21.

(6) *The relevant public policy of the forum state, if any.* The enforcement of this non-party subpoena and application of the crime-fraud exception and other issues related to privilege all are not unique or of particular interest to the Northern District of California. Rather, it is the court in the

Southern District of New York, before which the underlying action is pending, which has the interest in ensuring the efficient and expeditious administration of the action before it.

The analysis of factors under Section 1404(a) strongly favors transfer to the Southern District of New York. Without question, the most suitable venue for motion practice related to the Amazon Watch Subpoena is before Judge Kaplan, who is intimately familiar with the history of the litigation, including the issues surrounding the improper pressure campaign against Chevron and Amazon Watch's role therein and who already twice has ruled on a protective order related to the Amazon Watch Subpoena. And more generally, the Amazon Watch Subpoena relates to issues at the heart of the RICO litigation, including the RICO Defendants' engagement in a far-reaching pressure campaign to force Chevron to settle the fraudulent Ecuadorian litigation against it, at which Amazon Watch has been at the center. *See, e.g., id.* Exs. 1, 5, 7, 8. 10, 11–14.

## CONCLUSION

Accordingly, for the convenience of the parties, in the interests of justice, and for the sake of judicial economy, the Court should transfer Chevron's Motion to Enforce Amazon Watch Subpoena to Produce Documents to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). Given the upcoming deadlines in the Southern District of New York action, Chevron respectfully requests that this Court specify that the transfer be effective immediately, pursuant to Civil Local Rule 3-14.

Dated: February 25, 2013          Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: _____
        Ethan D. Dettmer

*Attorneys for Chevron Corporation*