Marco Simons [SBN #237314]
marco@earthrights.org
Richard Herz
rick@earthrights.org
Michelle Harrison
michelle@earthrights.org
Marissa Vahlsing
marissa@earthrights.org
EARTHRIGHTS INTERNATIONAL
1612 K Street NW, Suite 401
Washington, DC 20006
Telephone: (202) 466-5188
Facsimile: (202) 466-5189

Jose Luis Fuentes
jlf@siegelyee.com
Siegel & Yee
499 14th Street Ste 300
Oakland, CA 94612
Tele: (510) 839-1200
Facsimile: (510) 444-6698

Attorneys for Non-Party Amazon Watch

# UNITED STATES DISTRICT COURT

## FOR THE NOTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHEVRON CORP., | ) | Case No. C 13-80038-MISC CRB (NMC) |
| | ) | |
| Plaintiff, | ) | **NOTICE OF MOTION AND MOTION OF** |
| | ) | **NON-PARTY AMAZON WATCH TO** |
| v. | ) | **QUASH AND/OR MODIFY DEPOSITION** |
| | ) | **SUBPOENAS; MEMORANDUM OF** |
| STEVEN DONZIGER, *et al.* | ) | **POINTS AND AUTHORITIES** |
| | ) | |
| Defendants. | ) | Date: April 26, 2013 |
| | ) | Time: 10:00 a.m. |
| | ) | Location: Courtroom 6, 17th Floor |

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF CHEVRON CORP.:

**PLEASE TAKE NOTICE** that on April 26, 2013, at 10:00 a.m. at 450 Golden Gate Avenue, Courtroom 6, 17th Floor, San Francisco, California, or as soon thereafter as the matter may be heard, the Non-Party Movants Amazon Watch and Atossa Soltani hereby move the District Court for the Northern District of California to quash and/or modify, and/or for a protective order regarding, the Rule 30(b)(6) subpoena issued to Amazon Watch and the individual deposition subpoena issued to Atossa Soltani by Plaintiff Chevron Corporation. The subpoenas were issued in support of a civil action in the District Court for the Southern District of New York, captioned *Chevron Corp. v. Donziger, et al.,* Case No. 11-cv-0691 (LAK).

As discussed below, Chevron's subpoenas should be quashed or modified, or a protective order should be granted, because they violate Amazon Watch's and Ms. Soltani's constitutional rights of freedom of association, expression, and privacy in association, seek confidential business information and would impose an undue burden. This motion is based on the attached memorandum and on such oral argument as may be heard. Non-Parties Amazon Watch and Ms. Soltani respectfully request that this Court grant this motion and quash the subpoena in its entirety or modify the subpoena and issue an appropriate protective order.

Jurisdiction: This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 in that this matter arises under Federal Rule of Civil Procedure 45(c).

Case No. C 13-80038-MISC CRB (NMC)  MOTION TO QUASH DEPOSITION SUBPOENAS

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ii

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

II.  BACKGROUND ............................................................................................................ 3

    A.   Chevron's subpoenas issued to Amazon Watch and Ms. Soltani ............................ 3

    B.   Amazon Watch and Ms. Soltani have attempted to resolve their objections through an
        unsuccessful meet-and-confer ................................................................................ 4

III. ARGUMENT ................................................................................................................. 6

    A.   The subpoenas would impose an undue burden on Amazon Watch and Ms. Soltani.............. 6
        *1.   Chevron has not met its initial burden to show that the information it seeks is
                unavailable elsewhere* ..................................................................................... 7
        *2.   The subpoena is overly broad, vague, and seeks irrelevant information* ......................... 8
        *3.   The burden on Amazon Watch is not justified* ................................................. 9
        *4.   Chevron should not be permitted to depose Ms. Soltani twice* ....................... 10
        *5.   Chevron should pay reasonable costs* ............................................................. 11

    B.   Chevron's subpoenas violate the First Amendment ............................................... 11
        *1.   Discovery requests that infringe First Amendment rights are subject to heightened
                discovery standards* .......................................................................................... 12
        *2.   Disclosure would chill protected activity* ....................................................... 12
        *3.   Chevron cannot justify the deterrent effect on First Amendment right* ........................ 13

    C.   Chevron seeks to violate the Attorney-Client privilege ......................................... 14

    D.   Chevron seeks Confidential Business Information .................................................. 14

    E.   If depositions are allowed to go forward, the Court should issue an appropriate protective
        order .................................................................................................................... 15

IV.  CONCLUSION ............................................................................................................ 15

i

1

2

# <u>TABLE OF AUTHORITIES</u>

## FEDERAL CASES

3

*Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.,*
    231 F.R.D. 426 (M.D. Fla. 2005) ...................................................................................... 14

4

5

*Brown v. Socialist Workers '74 Campaign Comm.,*
    459 U.S. 87 (1982) ............................................................................................................ 13

6

*Chevron Corp. v. Donziger,*
    Case No. 11-cv-0691 (LAK) (S.D.N.Y.) ............................................................................ 1

7

8

*Chevron Corp. v. Salazar,*
    Case No. 11-0691-LAK, 2011 U.S. Dist. LEXIS 153066 (D. Or. Nov. 30, 2011) ............. 3, 6

9

*Cohen v. City of New York,*
    255 F.R.D. 110 (S.D.N.Y. 2008) ............................................................................... 15 n.22

10

11

*Dibel v. Jenny Craig, Inc.,*
    2007 WL 2220987 (S.D. Cal. 2007)............................................................................ 6–7, 8

12

*In re Chevron Corp.,*
    Order, No. 1:10-mc-00002-LAK (S.D.N.Y Jan. 13, 2011) ....................................... 7 n.7

13

14

*In re Chevron Corp.,*
    Order, No. 1:10-mc-00002-LAK (S.D.N.Y Jan. 21, 2011) ....................................... 7 n.7

15

*In re Chevron Corp.,*
    Order, No. 1:10-mc-00002-LAK (S.D.N.Y Aug. 16, 2011)...................................... 7 n.7

16

17

*In re Chevron Corp. (Uhl, Baron, Rana & Associates),*
    633 F.3d 153 (3d Cir. 2011)..................................................................................... 7 n.7

18

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.,*
    09-CV-01967 CW NC, 2012 WL 4846522 (N.D. Cal. Aug. 7, 2012)........................... 6

19

20

*In re Silicone Gel Breast Implants Products Liability Litig.,*
    No. 92-P-10000S, 1996 WL 1358526 (N.D. Ala. Apr. 11, 1996)..................................... 14 n.24

21

*Int'l Action Ctr. v. U.S.,*
    207 F.R.D. 1 (D.D.C. 2002) ............................................................................................ 14

22

23

*Int'l Union, Etc. v. Nat'l Right to Work Comm.,*
    590 F.2d 1139 (D.C. Cir. 1978) ...................................................................................... 13

24

*Klay v. All Defendants,*
    425 F.3d 977 (11th Cir. 2005) ................................................................................. 14 n.22

25

26

*NAACP v. Claiborne Hardware Co.,*
    458 U.S. 886 (1982) .................................................................... 1–2, 9, 9 n.12, 13 n.20

27

*Organization For a Better Austin v. Keefe,*
    402 U.S. 415 (1971) ........................................................................................... 9 n.12

28

ii

*Pallares v. Kohn (In re Chevron Corp.),*
        650 F.3d 276 (3d Cir. 2011) ........................................................................................2

*Perry v. Schwarzenegger,*
        591 F.3d 1126 (9th Cir. 2010) ..............................................1, 12, 12 n.18, 14

*Sabre v. First Dominion Capital, L.L.C.,*
        51 Fed. R. Serv. 3d (Callaghan) 1405, 2001 U.S. Dist. LEXIS 20637 (S.D.N.Y. Dec. 10, 2001)
        ........................................................................................................................................11

*Soto v. Castlerock Farming & Transp., Inc.,*
        282 F.R.D. 492 (E.D. Cal. 2012) ...........................................................................6, 7

*United States v. CBS., Inc.,*
        666 F.2d 364 (9th Cir.1982) ...................................................................................6

*Williams v. City of Weed,*
        CIVS07-1787 FCD EFB, 2008 WL 1733026 (E.D. Cal. Apr. 10, 2008) ...................................7

*Wyoming v. USDA*, 208 F.R.D. 449 (D.D.C. 2002) ...........................................................12 n.18

## FEDERAL RULES

Federal Rule of Civil Procedure 26.........................................................................6–7, 8

Federal Rule of Civil Procedure 30..............................................................................8

Federal Rule of Civil Procedure 45..............................................................6,, 9–10, 14

## OTHER AUTHORITIES

Patrick R. Keefe, *Reversal of Fortune*, The New Yorker (Jan. 9, 2012) ...................................7 n.7

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This motion seeks protection from two overly broad, duplicative, and unduly burdensome deposition subpoenas issued by Chevron in *Chevron Corp. v. Donziger*, No. 11-cv-0691 (LAK) (S.D.N.Y.),[1] to non-parties Amazon Watch ("AW") and Atossa Soltani, AW's Executive Director. Rule 45 requires a party to minimize the burden on a non-party. Chevron has not even tried to meet its Rule 45 obligation. Indeed, it has expressly refused to limit either subpoena in any way.

AW has publicly criticized Chevron's massive pollution in the Ecuadorian Amazon, which has harmed thousands of indigenous villagers (the "Lago Agrio Plaintiffs," or "LAPs"). AW is not a party to the underlying litigation, in which Chevron alleges that the LAPs and their lawyers ("defendants") conspired to obtain a fraudulent court judgment in Ecuador—but in which Chevron is not contesting the validity of the LAPs' pollution claims.

Chevron would require AW to testify about practically everything that it has done with regard to Chevron, AW's largest campaign for the last 10 years. Thus, it insists that AW should divulge confidential campaign strategy and communications regarding AW's exercise of its First Amendment right to criticize Chevron. The Ninth Circuit, however, has held that such information is itself protected by the First Amendment. *See Perry v. Schwarzenegger*, 591 F.3d 1126 (9th Cir. 2010).

Chevron has denied that AW is entitled to any First Amendment rights by wrongly claiming that AW was a participant in the conspiracy alleged in the underlying case—which, according to Chevron, also includes, *inter alia*, two Ecuadorian courts and the New York State Comptroller. But AW was no "co-conspirator"; indeed, it had no involvement in submitting evidence to the Ecuadorian court, nor has it "assist[ed] the court appointed expert in preparing his submissions to the court." Dkt. 37 at 43 ¶15, 51 ¶6, 59 ¶19. Chevron points to the fact that AW has at times coordinated its public message with those now accused of doing so. But that is protected speech, not conspiracy. AW's "right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct . . . that itself is not protected."

---

[1] A detailed overview of the procedural history of the underlying case is provided in Dkt. 3.

Case No. C 13-80038-MISC CRB (NMC)    MOTION TO QUASH DEPOSITION SUBPOENAS

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 908 (1982).

The subpoena is highly complex; it includes 24 topics and 18 sub-topics that are at times exceedingly vague, and is entirely overbroad in terms of subject matter and timeframe. Attempting to prepare would require Ms. Soltani to review potentially tens of thousands of documents, and to consult with numerous current and former staff, consultants, and partners. That is an undue burden to impose on a small non-profit organization that is not a party to this case.

Chevron cannot meet its initial Rule 45 and First Amendment burden to show that the information it seeks is unavailable elsewhere. Chevron has already engaged in a discovery expedition "unique in the annals of American judicial history." *Pallares v. Kohn (In re Chevron Corp.)*, 650 F.3d 276, 295 (3d Cir. 2011); *see* Dkt. 3 at 5 (providing description). Much of the information Chevron seeks is information that it likely could obtain—or has already obtained—from parties to the underlying litigation, or even from the many others from whom it has taken extensive discovery.

Although the Rule 30(b)(6) subpoena alone would be unduly burdensome for Ms. Soltani and AW unless significantly modified, Chevron would compound that burden. After AW identified Ms. Soltani as its 30(b)(6) representative, Chevron served another subpoena on Ms. Soltani in her personal capacity, demanding a second, duplicative deposition—and refusing to coordinate scheduling of that deposition with the 30(b)(6) deposition to minimize the burden. But Ms. Soltani has no conceivably relevant information that she did not acquire in her capacity as an AW employee. Thus, Chevron seeks two bites at the apple: It wants to depose Ms. Soltani as a 30(b)(6) representative before it receives documents, and then depose her again, on the same topics, thereafter. But that is not how discovery typically works, and Chevron cannot justify imposing such a burden on a non-party here.

AW sought to limit the burden and the infringement of its constitutional rights while accommodating Chevron's claimed need for information. It specifically asked Chevron to prioritize the subjects about which it seeks to question AW, with the hope that the parties could negotiate a compromise. Chevron refused, insisting it would not withdraw or narrow even a single subtopic. AW's offer refutes Chevron's claim that AW seeks delay; and Chevron's refusal to compromise one

Case No. C 13-80038-
MISC CRB (NMC)          MOTION TO QUASH DEPOSITION SUBPOENAS

iota negates its claim that its primary goal is to get needed information quickly rather than to harass one of its most ardent critics.

Chevron cannot show the information it seeks is relevant. Protected campaign activity is not evidence of a conspiracy. Furthermore, Chevron's revised position in the underlying litigation—it no longer contests the fact of pollution—has cast serious doubt on the relevance of the majority of the information sought. For these reasons, the subpoenas are overbroad, unduly burdensome, and infringe upon constitutional rights and other privileges and should be quashed or modified and/or a protective order issued.

This is not the first time in this case that Chevron has ignored its Rule 45 responsibility. In a similar discovery action where, as here, Chevron refused to limit the scope of a 30(b)(6) deposition of a non-party environmental organization, a district court found that the subpoena was "at least in part, meant to harass[,]" and sanctioned Chevron. *Chevron v. Salazar*, 2011 U.S. Dist. LEXIS 153066, at *8–9 (D. Ore. Nov. 30, 2011).

## II.    BACKGROUND

### A.    Chevron's subpoenas issued to Amazon Watch and Ms. Soltani.

Before Chevron served its 30(b)(6) subpoena, AW had accepted service of a Chevron document subpoena arising out of the same matter. A preliminary search of documents turned up an enormous universe of potentially responsive documents: over 46,000 electronic documents and files, over 32,000 emails, and at least 14 file boxes of hardcopy materials. Dkt. 1 at 44 ¶¶ 5-8.[2]

On February 12, 2013, Chevron delivered a Rule 30(b)(6) subpoena to AW. *See* Dkt. 1 at 44 ¶4. Two days later, AW determined that the most appropriate representative is its Executive Director, Atossa Soltani, and informed Chevron. Dkt. 1 at 46 ¶5; *Id.* at 7 ¶6. Chevron subsequently served Ms. Soltani with an individual subpoena.[3]

Due to the scope and complexity of Chevron's subpoena, the enormous volume of material

---

[2] From January 23 until February 19, 2013, Chevron was under an order from the court in the Southern District of New York preventing it from enforcing that subpoena. *See* Dkt. 4, Ex. X. AW moved to quash the reinstated subpoena in this Court on February 25. *See* Dkt. 3.
[3] Chevron has also issued, but has not yet served, another deposition subpoena for a former AW staff member. *See* Dkt. 27-1 at 23-4.

Case No. C 13-80038-    MOTION TO QUASH DEPOSITION SUBPOENAS
MISC CRB (NMC)

in AW's files, and the number of people that would need to be consulted, Ms. Soltani estimates that preparing for the deposition would require at least five full days; several days from two other staff members; and additional time from other staffers, former staffers, and consultants who must be paid. Dkt. 1 at 46 ¶6. Indeed, full preparation would likely require her to travel to Ecuador to consult with partners, staff, and consultants. *Id.* All of this is necessary because the subpoena, if not limited, would require that Ms. Soltani recreate chains of communication between current and former staffers and other individuals external to AW on subjects as broad as "Chevron Litigations" and all communications with the "Media." *See e.g.*, Dkt. 1 at 33.

**B.    Amazon Watch and Ms. Soltani have attempted to resolve their objections through an unsuccessful meet-and-confer.**

AW raised its objections to these subpoenas with Chevron in an attempt to avoid litigation. On a March 1st phone call, the parties concluded the meet-and-confer and agreed that they are at an impasse on AW's substantive objections. Dkt. 27-1 at 4-5 ¶28; Dkt. 31 at 7-8 ¶¶9-15. AW respectfully requests the Court's intervention, because Chevron refused to modify its overbroad and unconstitutional subpoenas in any meaningful respect. Dkt. 31 at 3; *Id.* at 7-8 ¶¶9-15.[4]

After determining that Ms. Soltani would be the 30(b)(6) representative, AW contacted Chevron expressing the need for time to meet and confer. Dkt. 27-1 at 21. Chevron's counsel stated that "[w]e do not see the value in prolonged meet-and-confers[.]" *Id.* at 20. AW explained that the prior meet-and-confer process about the document subpoena did not obviate the need to meet and confer about the issues unique to the deposition subpoenas. *Id.* AW sent a letter detailing AW's position and substantive objections to the Rule 30(b)(6) subpoena. *Id.* at 18, 29.

---

[4] Regrettably, in reaching this stage, Chevron has forced AW to engage in motion practice that should have been unnecessary. Prior to the March 1st phone call, AW did not know Chevron's position on AW's previously conveyed objections because Chevron did not provide it. Dkt. 27-1 at 15; Dkt. 31 at 2-3. Instead, Chevron insisted on doing so by phone, although it knew that the counsel handling the matter for AW was away. Dkt 1 at 3; Dkt. 31 at 3. And, although the substantive meet-and-confer was not complete, Chevron refused to meaningfully meet and confer regarding the schedule—as Local Rule 30-1 requires. Dkt. 1 at 3-4; Dkt. 31 at 1-2. Thus, to comply with the Rules requiring parties to meet and confer before resorting to the courts, and because AW could not even know what issues were in dispute, AW was forced to file a motion to enlarge time. *See* Dkt 1; Dkt. 31 at 2-3. Chevron sought to profit from its own intransigence by making a meritless and procedurally improper waiver argument in its opposition to that motion. Dkt. 31 at 1.

4

In that letter, AW objected to the breadth of the deposition subpoena, *id.* at 32-34, the burden on AW of preparing (including concerns about specific definitions in the subpoena, financial costs, and AW's non-party status), *id.* at 32-34*,* and Chevron's effort to depose Ms. Soltani twice. *Id.* at 30. AW also objected that Chevron sought information protected by the First Amendment, *id.* at 31, and the attorney-client privilege, *id.* at 31-32, as well as confidential business information. *Id.* at 34-35. AW further raised concern about the timeframe, *id.* at 32, whether Chevron would cover reasonable costs, and the need for an appropriate protective order. *Id.* at 35.[5]

AW proposed a number of ways that Chevron could limit the burden on AW, while allowing Chevron to receive information about the issues of highest priority to Chevron. For example, because the subpoena covers all aspects of AW's Chevron campaigning, and AW has at least tens of thousands of documents dealing with that subject, AW requested that Chevron give Ms. Soltani some indication of the documents with respect to which it expected Ms. Soltani to be prepared. Dkt. 27-1 at 16, 18-20, 31, 33. Chevron refused, asserting Ms. Soltani "must be prepared to answer questions on all of the topics listed in our notice. And to that end, she should review all documents necessary to adequately prepare[.]" *Id.* at 15-16; Dkt. 31 at 7 ¶11.  As for the amount of time Ms. Soltani should be expected to spend preparing, Chevron stated that "Ms. Soltani should spend as much time as is necessary to adequately prepare herself to answer questions relating to all of the topics listed in our notice." Dkt. 27-1 at 16.

AW asked Chevron to prioritize the list of topics. Dkt. 31 at 7 ¶11. Chevron refused. *Id.* AW asked Chevron if it would agree to limit examination of Ms. Soltani to one day, although Chevron would be free to depose her in both capacities. Dkt. 27-1 at 20, 21, 30. Chevron again refused. Dkt. 31 at 7 ¶9. AW proposed that if Ms. Soltani was required to sit for more than one day, her depositions be taken back-to-back. Dkt. 27-1 at 19, 30-31; Dkt. 31 at 7 ¶10. Chevron refused. Dkt. 27-1 at 20; Dkt. 31 at 7 ¶10.

---

[5] AW also sought Chevron's position as to whether, if more than one day was ordered, they would be scheduled back-to-back, *id.* at 30-31, whether Chevron would assert that answering questions in the deposition would waive rights and privileges with respect to the document production, *id.* at 31, and whether Chevron's new position in the underlying litigation that it no longer contests the fact of oil pollution renders information about AW drawing attention to oil pollution irrelevant.

To avoid the harms to AW that would result from revealing protected campaign strategy to its political opponent, AW proposed a protective order under which the information gained in the deposition would not be distributed beyond outside counsel, at least until introduced as evidence in the litigation. Dkt. 27-1 at 35; Dkt. 31 at 7 ¶12. Chevron refused. Dkt. 31 at 7 ¶¶12, 15.

AW acted in good faith to try to reach a mutually acceptable compromise, but was rebuffed at every turn.

## III.   ARGUMENT

A court must quash a subpoena that requires "disclosure of privileged or other protected matter" or that "subjects a person to an undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii), (iv). Chevron's subpoena fails in both respects. Although the subpoena would be burdensome under any standard, Chevron cannot meet Rule 45, which imposes a higher standard on parties serving subpoenas on non-parties. And it seeks information that is clearly protected by the First Amendment, which imposes an even stricter standard still.

### A.   The subpoenas would impose an undue burden on Amazon Watch and Ms. Soltani.

As non-parties to the underlying litigation, AW and Ms. Soltani are afforded special protection from unduly burdensome discovery since they "are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of litigation." *U.S. v. C.B.S., Inc.,* 666 F.2d 364, 371-72 (9th Cir. 1982) (footnotes omitted); *In re NCAA Student-Athlete Name & Likeness Licensing Litig.,* 09-CV-01967 CW NC, 2012 WL 4846522 (N.D. Cal. 2012); *see also Salazar,* 2011 WL 711297, at *3-4. Rule 45 requires that a party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." F.R.C.P. 45(c)(1); *see also Soto v. Castlerock Farming and Transport, Inc.,* 282 F.R.D. 492, 504 (E.D. Cal. 2012); *Dibel v. Jenny Craig, Inc.,* 06 CV 2533 GEN AJB, 2007 WL 2220987 * at 1 (S.D. Cal. 2007). Rule 26 provides that courts may limit discovery so as "to avoid cumulation, duplication, harassment, expense and burdensomeness.*" Dibel,* 2007 WL 2220987 * at 1 (citing Fed. R. Civ. P. 26(b)(1)).

Ignoring all of this, Chevron refused to limit the burden and expense on AW and Ms. Soltani in any way. Indeed, Chevron seeks to multiply that burden by insisting that Ms. Soltani appear for

6

two separate depositions, at entirely different times. And it has steadfastly declined to narrow, or even prioritize, the 30(b)(6) deposition's 24 topics and 18 subtopics. This suggests Chevron is more interested in harassing a political opponent by requiring extensive preparation—and by forcing AW to litigate this motion—than it is in getting information in a timely and cooperative fashion.

### 1. Chevron has not met its initial burden to show that the information it seeks is unavailable elsewhere.

Chevron improperly seeks information it could have—or already has—obtained from more appropriate sources. A court must limit discovery if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C)(i). This is especially true, where, as here, information is sought from a non-party. Where the issuing party has not shown that it attempted to obtain the information from the parties to the underlying litigation prior to seeking it from a non-party, the subpoena places an undue burden on the non-party. *See e.g. Dibel*, 2007 WL 2220987 at n.11 (quashing subpoenas seeking deposition testimony and documents where plaintiffs failed to demonstrate that no other means existed to obtain the information); *Williams v. City of Weed*, CIVS07-1787 FCD EFB, 2008 WL 1733026 (E.D. Cal. Apr. 10, 2008) (finding additional unusual circumstances where plaintiff sought to subpoena information from a non-party, much of which was likely obtainable directly from defendant); *Soto*, 282 F.R.D. at 505.

Chevron has already obtained extensive discovery from the parties to the litigation and a host of non-parties.[6] Much of the information sought here would clearly duplicate that discovery, or, at least, should be sought from the parties first. For example, Matters 15 and 20 both seek information on "COMMUNICATIONS" with the Lago Agrio Plaintiffs and the RICO defendants,

---

[6] Including the use of 28 U.S.C. § 1782 to bring "at least 25 requests to obtain discovery from at least 30 different [individuals or entities]," *In re Chevron Corp. (Uhl, Baron, Rana & Associates)*, 633 F.3d 153, 159 (3d Cir. 2011). It has successfully petitioned for discovery in courts in at least nine circuits. *See* Dkt. 3 at n.6. (detailing the extensive discovery from non-parties all over the country). Chevron has also obtained unfettered access to attorney Steven Donziger's hard drive, *In re Chevron Corp.*, Order, No. 1:10-mc-00002-LAK (S.D.N.Y Jan. 21, 2011), email accounts, *In re Chevron Corp.*, Order, No. 1:10-mc-00002-LAK (S.D.N.Y Jan. 13, 2011), personal diary, Patrick R. Keefe, *Reversal of Fortune*, The New Yorker (Jan. 9, 2012), and documents under his control from interns and attorneys with whom he worked. *In re Chevron Corp.*, No. 1:10-mc-00002-LAK (S.D.N.Y Aug. 16, 2011).

7

among others from whom Chevron has already obtained extensive discovery.[7] Yet, Chevron has

disavowed any obligation to demonstrate it could not obtain the information sought elsewhere. *See*

*e.g.*, Dkt. 3 at 17; Dkt. 4, Ex. J ¶6, Ex. M; Dkt. 27-1 at 16 (refusing to narrow depositions in any

way); Dkt. 31 at 7 ¶11. Having failed to provide any indication that it has tried and failed to obtain

this information from the parties, Chevron's subpoenas are unduly burdensome.

### 2.  The subpoena is overly broad, vague, and seeks irrelevant information

Rule 30(b)(6) requires that the party seeking discovery "describe with reasonable particularity

the matters upon which examination is requested." Fed. R. Civ. P. 30(b)(6). Chevron has not done

so here. The 30(b)(6) subpoena's 24 topics and 18 subtopics are overly broad and seek information

that is irrelevant. This makes preparation for this subpoena unduly burdensome.

For example, Matter 23(c) and (d), respectively, seek information on AW's communications

about the "CHEVRON LITIGATIONS" with "MEDIA"[8] and "Non-governmental organizations"

without any limitation. Dkt. 1 at 33. This would require Ms. Soltani to confer with all current and

former staff and consultants about every communication they have had with *anyone* from the media

or *any* non-governmental organization about the Chevron litigations, going back to 2000, four years

before Chevron even alleges any fraudulent conduct by the defendants. This is facially unreasonable

for an advocacy organization that uses engagement with media and other non-governmental

partners as a key component of its strategy.

Likewise, Matter 21 states "YOUR COMMUNICATIONS relating to the allegations set

forth in CHEVRON'S COMPLAINT." Dkt. 1 at 33. It is unclear what this would include, but it is

certainly unreasonable to expect Ms. Soltani to attempt to determine from the entire 172-page

amended complaint and 59 pages of attached exhibits, *see* Dkt. 14, Ex.1, which communications of

all current and former AW staff and consultants might "relate" to these allegations, and be prepared

to testify about all of them.[9]

---

[7] At a minimum, Matters 5, 9, 10, 11, 13, 14, and 23(a), 23(h) raise this concern. Dkt. 1 at 29, 31-33.
[8] Many of Chevron's definitions are also overly broad and vague. For example, "MEDIA" as
defined, "means and refers to any person in the press or publishing business, including journalists,
bloggers, news anchors, radio personalities, and reporters." Dkt. 1 at 23.
[9] As another example, Matter 20 ("COMMUNICATIONS with any of the RICO DEFENDANTS,
CO-CONSPIRATORS, LAGO AGRIO PLAINTIFFS, LAGO AGRIO PLAINTIFF ACTIVISTS,

8

Moreover, Chevron seeks information that is irrelevant. For example, Chevrons seeks to depose AW about public opposition to, and advocacy against, Chevron.[10] But even if the Defendants were engaged in a conspiracy to procure a fraudulent judgment, Defendants' public statements and those of others like AW who sought to call public attention to Chevron's massive pollution, are protected speech; they cannot be considered part of a conspiracy. *See Claiborne Hardware*, 458 U.S. at 926.[11] Indeed, it seeks communications between AW, a non-party, and its campaign partners, other non-parties, many of whom are not even alleged to be co-conspirators. This is far afield from the allegations against defendants, who purportedly directed the conspiracy, and has nothing to do with Chevron's core claim that the Ecuadorian judgment is fraudulent. Because Chevron has made no effort to distinguish between information regarding conduct that is actionable and conduct that is protected, its subpoena is overbroad.

Indeed, in the underlying litigation, Chevron does not even contest the fact that oil pollution occurred or the LAPs' factual claims about Chevron's operations. *See* Dkt. 4, Ex. EE. Chevron can hardly claim that AW's public campaign is relevant (let alone that it shows AW was a "co-conspirator"), when AW sought to inform the public of a fact Chevron does not deny.[12]

### 3. *The burden on Amazon Watch is not justified.*

Courts must quash a subpoena that subjects a non-party to undue burden. Fed. R. Civ. P.

---

LAGO AGRIO PLAINTIFF CONSULTANTS, LAGO AGRIO PLAINTIFF LAW FIRMS, and LAGIO AGRIO PLAINTIFF LOBBYISTS relating to the LAGO AGRIO JUDGMENT"), is overly broad, particularly when read with the relevant definitions, and covers an unbelievably wide range of people and organizations. Dkt. 1 at 32-33. *See also* Dkt. 3 (raising objections to document requests similar to the topics noticed in the 30(b)(6) deposition).

[10] *See* Matters 1, 2, 3, 5, 6, 7 ,8, 9, 10, 11, 12, 13, 14, 20, 21, 22, 23. Dkt. 1 at 29-33.

[11] Thus, Chevron's primary accusation against AW, that it sought through its public advocacy to force Chevron to settle the Lago Agrio litigation, is irrelevant. *See* Dkt. 18 at 3; Dkt. 13 at 2. "Speech does not lose its protected character . . . simply because it may . . . coerce [others] into action." *Claiborne Hardware*, 458 U.S. at 910; *accord Organization For a better Austin v. Keefe*, 402 U.S. 415 (1971) (holding that petitioners' purpose in distributing literature to "'force' respondent to sign a no-solicitation agreement . . . does not remove them from the reach of the First Amendment."). "[T]hreats of vilification" even when resulting in business losses, are "constitutionally protected." *Claiborne Hardware*, 458 U.S. at 926.

[12] As a result of Chevron's changed position, Judge Kaplan ordered limits on some of Chevron's subpoenas. Ex. T. Although this shift is equally significant here, and AW raised the issue, Dkt. 4, Ex. U at 5-6, Chevron refused to respond with its position and refused to discuss the implications of its position in the RICO suit. *See also* Dkt. 4, Simons Decl. ¶¶ 46-67, Ex. Z, Ex. Y.

9

45(c)(3)(A)(iv). The burden of preparing for the deposition as currently noticed would be immense. Chevron has not taken "reasonable steps to avoid imposing undue burden or expense" on Ms. Soltani and AW, *see* Fed. R. Civ. P., 45(c)(1), and simply cannot justify that burden.

With respect to the document subpoena issued to AW, a preliminary search for responsive documents found more than 46,000 potentially responsive documents and files on hard drives, 14 boxes of hard-copy files, and more than 32,000 emails. Dkt. 6 ¶¶46-49. These numbers were minimums, as they did not include a search of external hard drives, older computers, and hard drives no longer in use. *Id.* ¶¶49-50. As presently written, the deposition subpoena is even more burdensome than the documents subpoena. Amassing all of AW's knowledge of these topics would require both gathering all of these documents and learning the content of them, an enormous task that imposes substantial burdens on a small non-profit with limited resources. Even if Chevron is not limited in what it can ask in the deposition, it cannot impose an open-ended burden on Ms. Soltani to prepare on such broad topics. Ms. Soltani's preparation requirements should be limited to a reasonable amount of time, no more than eight hours. Chevron is free to identify the priorities for preparation within this time period.

### 4.  *Chevron should not be permitted to depose Ms. Soltani twice.*

Given the breadth of the topics in the 30(b)(6) deposition, it is hard to imagine what Chevron could ask Ms. Soltani in her personal capacity that would be relevant and not duplicative. Despite requests from AW to identify such material, Chevron has not done so.[13] Nor does it suggest that the 30(b)(6) deposition itself should last more than one day. Chevron thus provides no reason why it should be allowed to depose the same person about the same information in two entirely separate depositions. If Chevron were really as worried as it claims about completing discovery of AW as quickly as possible, it would not be wasting time litigating efforts to depose Ms. Soltani twice.

AW and Ms. Soltani do not seek to prevent Chevron from deposing Ms. Soltani in both capacities if it wishes. But since the information overlaps entirely, there is no need for two days of

---

[13] To the extent that Ms. Soltani has any knowledge apart from her role in AW, it is from prior to 1996, when she founded AW. But Chevron concedes this information is outside of any conceivably relevant timeframe, since it seeks to question Ms. Soltani about events going back to 2000. And that timeframe is itself overbroad, given that Chevron does not allege any fraud until at least 2004.

deposition. To reduce the burden on AW and Ms. Soltani, this Court should so order, if it does not

quash the subpoena. A deposing party does not have

> *carte blanche* to depose an individual for seven hours as an individual and seven hours as a
> 30(b)(6) witness. In the case of many closely held corporations, the knowledge of an
> individual concerning a particular subject also constitutes the total knowledge of the entity.
> In such a situation, the witness could simply adopt the testimony he or she provided in a
> former capacity, thereby obviating the need for a second deposition.

*Sabre v. First Dominion Capital, L.L.C.*, 51 Fed. R. Serv. 3d (Callaghan) 1405, 2001 U.S. Dist. LEXIS

20637, at *3-4 (S.D.N.Y. Dec. 10, 2001). If, however, the court permits two days of deposition, AW

and Ms. Soltani respectfully request that they be consecutive. This is reasonable to accommodate

Ms. Soltani's busy schedule, including substantial travel in the coming weeks, and particularly in light

of the already substantial time commitment that will be required to fully prepare. At a minimum, the

Court should require Chevron to meet and confer in good faith about scheduling the depositions.

### 5. *Chevron should pay reasonable costs.*

Given the substantial burden, including the potential need for Ms. Soltani to travel to Ecuador

to fully prepare, AW asked Chevron if it would cover the reasonable costs of preparation and travel

to the place of deposition; Chevron made it clear that it would not. *See* Dkt. 31 at 7-8 ¶13. If the

Court orders Ms. Soltani to sit for deposition, Chevron should cover the reasonable costs.

### B. Chevron's subpoenas violate the First Amendment.

The subpoena must be quashed or modified because it violates AW's First Amendment

rights to free speech and association.[14] Chevron's deposition subpoenas contravene First

Amendment protections in the same way as its document subpoena.[15] Indeed, many of the 30(b)(6)

topics are nearly identical to Requests in the document subpoena.[16]

Chevron's overbroad 30(b)(6) subpoena would compel disclosure of the internal campaign

strategies of one of Chevron's most vocal critics, chill advocacy and political speech concerning

environmental damage and serious human rights abuses, and infringe upon the associational rights

---

[14] At a minimum, Matters 1, 3-9, 10- 12, 14- 24 raise constitutional concerns. Dkt 1 at 29-34.

[15] AW's First Amendment arguments, including detailed evidence that AW's exercise of its first amendment rights would be chilled if disclosure were compelled, is provided in Dkt. 3 at 9-17.

[16] *Compare*, e.g., Request 17 *with* Matter 10; Requests 2 and 3 *with* Matters 13 and 14; Request 5 *with* Matter 22; Request 6 *with* Matter 12; Requests 7 and 8 *with* Matter 5; Request 7 with Matter 15 and 20; Request 21 *with* Matter 23(a)-(h). *See* Dkt. 4, Ex. E, *and* Dkt. 1 at 29-34.

of AW, its partners, and its supporters. Requiring an advocacy organization to disclose to the target of its campaign activities its campaign strategies, partnerships, and contributors may be justified only in exceptional circumstances simply not present in this case.[17]

### 1. *Discovery requests that infringe First Amendment rights are subject to heightened discovery standards.*

Where "disclosure *could* have a chilling effect on protected activities[,]" *Perry*, 591 F.3d at 1143 (emphasis added), the party seeking discovery must show that (1) the "information sought is *highly relevant* to the claims or defenses in the litigation," (2) the request is "carefully tailored to avoid unnecessary interference with protected activities," and, (3) the information sought is "otherwise unavailable." *Id.* at 1141 (emphasis added). Chevron can show none of these.

### 2. *Disclosure would chill protected activity.*

Disclosure of information about internal campaign communications can chill protected activities by deterring participation in advocacy campaigns, and deterring "the free flow of information within campaigns." *Perry*, 591 F.3d at 1141-42. Chevron seeks to do precisely that by demanding that AW disclose confidential information about its campaign communications and advocacy strategies to its political opponent.[18]

Disclosure would put AW's campaigns at risk; many "share a common strategy blueprint[,]" Dkt. 6 ¶21, which if revealed would "divulge [AW's] campaign playbook to those it is trying to influence, greatly compromising the effective execution of [AW's] strategy." *Id.* ¶23. Disclosure would also place the safety of AW staff at risk, *id.* ¶¶22, 23, 29; *see also* Dkt. 8 ¶¶9-12, 15, 16, and the possibility that information given to AW could be turned over to Chevron would deter communities from "sharing information with [AW], and even . . . from speaking up and denouncing rights abuses

---

[17] Revealing AW's activities and strategies to its political opponent would frustrate its policy goals and give Chevron an unfair advantage. *See Perry*, 591 F.3d at 1142 n.10. "Courts have held that the threat to First Amendment rights may be more severe in discovery than in other areas because a party may try to gain advantage by probing into areas an individual or a group wants to keep confidential." *Wyoming v. USDA*, 208 F.R.D. 449, 454 (D.D.C. 2002).

[18] AW proposed a protective order that would protect AW's strategy and tactics in its campaign while leaving Chevron's counsel free to use these documents in litigating the case, but Chevron refused, *see* Dkt 31 at 7 ¶12, confirming that discovery is more about obtaining its political opponents "playbook" than about finding information needed for the case in New York. *See also* Dkt. 4, Ex. K; Ex. M, Ex. N ¶ 6 (refusing AW's request for a protective order for documents).

in the first place." Dkt. 6 ¶25.

Compelled disclosure of communications and strategy would also deter "the open, free communication and exchange of ideas" among AW staff and between AW and it campaign partners, Dkt. 6 ¶¶26, 38, and "severely limit [their] ability to speak out and educate the general public about Amazon issues as per [their] mission." Dkt. 8 ¶14.

Disclosure of information about and communications with AW's contributors is also inconsistent with the First Amendment, *see e.g.*, *Brown v. Socialist Workers '74 Campaign Comm.,* 459 U.S. 87, 95 (1982); *Int'l Union, Etc. v. Nat'l Right to Work Comm.,* 590 F.2d 1139, 1147 (D.C.Cir. 1978), and may cause many current supporters to "cease to donate to or fund" AW. Dkt. 6 ¶¶ 32, 43.

AW staff, donors, and ally organizations, as well as communities with which AW works, have already been harassed by Chevron. *See* Dkt. 6 ¶¶ 36, 40, 41; Dkt. 8 ¶¶ 9-12, 14, 16. Forced disclosure to Chevron of AW's internal, non-public strategy information would only increase Chevron's ability to continue to harass and intimidate AW and its supporters, Dkt. 6 ¶¶37, 40, 41; Dkt. 8 ¶16, and could be used against AW to restrict funding, Dkt. 6 ¶42.

### 3.   *Chevron cannot justify the deterrent effect on First Amendment rights.*

First, Chevron cannot show the information it seeks is relevant, let alone *highly* relevant. It claims that AW was a member of the conspiracy it alleges, but it points only to AW's campaign activities; the exercise of First Amendment rights is not participation in or evidence of a conspiracy. *See Claiborne Hardware*, 458 U.S. at 908, 920; Dkt 41 at 5-8.[19] And the breadth of the noticed topics greatly exceeds anything that might be relevant to the alleged conspiracy. *Supra* Section III.A.2.

Second, Chevron has failed to tailor the subpoena to avoid infringing AW's First Amendment rights. *See* Dkt. 31 at 7 ¶12. Indeed, many of the topics specifically target protected expression. Illustrative examples include Matter 5, communications about *any* campaign AW was involved in

---

[19] AW did not participate in any scheme to obtain a fraudulent judgment, let alone specifically intend to help procure such a judgment. Dkt. 37 at 2-5. It is not sufficient, as Chevron suggests, that AW and certain Defendants at times worked together to craft a message in pursuit of a shared *legitimate* end: justice for the victims of Chevron's pollution. *See Claiborne Hardware*, 458 U.S. at 920 ("For liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims."); *see also* Dkt. 41 at 8 & n.20.

Case No. C 13-80038-     MOTION TO QUASH DEPOSITION SUBPOENAS
MISC CRB (NMC)

relating to the "Chevron Litigations", Matter 10, communications "in connection with protests, rallies, marches, demonstrations, petitions, social media campaigns" relating to the Chevron litigations, and Matter 12, communications with the U.S. Government. *See* Dkt. 1 at 31.[20]

Finally, as shown *supra* Section III.A.1, Chevron has failed to show that the information requested is otherwise unavailable. *See Perry*, 591 F.3d at 1144-45 (sufficient need to justify intrusion on First Amendment interests not shown where information was available from other sources); *Int'l Action Ctr. v. U.S.*, 207 F.R.D. 1, 3-4 (D.D.C. 2002) (First Amendment precluded discovery of information regarding political activities and affiliates where defendant did not show that it had pursued alternative sources). The information most relevant to the liability of the *defendants* is discoverable from other sources. To the extent Chevron seeks internal AW information or intra-organizational campaign information, it has not shown that it is relevant, given that the focus of the case is the judgment in Ecuador and that Chevron's argument is that AW was part of a conspiracy spearheaded by others.

Chevron cannot overcome the protections of the First Amendment.

**C. Chevron seeks to violate the Attorney-Client privilege.**

Some of the noticed topics, including but not limited to Matters 5, 8, 9, 21, and 23(d), would include privileged attorney-client communications and attorney work product. According to the definitions, "LAGO AGRIO PLAINTIFF LAW FIRMS" expressly includes any lawyer that assists alleged "CO-CONSPIRATORS." *See* Dkt. 1 at 21. The term "CO-CONSPIRATORS" is defined to include AW. It is not uncommon for AW to seek legal advice regarding its campaigns.

**D. Chevron seeks Confidential Business Information**

The Court should also quash the subpoena because it seeks confidential business information. *See* F.R.C.P. 45(c)(3)(B).[21] *See also* Dkt. 3 at 22-24 (discussing confidential business

---

[20] At a minimum, Matters 1, 3, 4, 6-9, 11, 13-24 also raise similar concerns. Dkt. 1 at *Id.* 29-34.
[21] This protection applies to non-profit organizations like AW. *E.g. Klay v. All Defendants*, 425 F.3d 977 (11th Cir. 2005); *In re Silicone Gel Breast Implants Products Liability Litig.*, No. 92-P-10000S, 1996 WL 1358526 (N.D. Ala. 1996). Confidential information may be protected from discovery because of its commercial value where (1) dissemination will place a non-party at a competitive disadvantage, (2) the producing party accumulated it "through its own time and effort" and it is "unjust" to require disclosure in discovery without adequate compensation, or (3) where dissemination will damage the producer's business in some other way. *Cohen v. City of New York*, 255 F.R.D. 110, 118-19 (S.D.N.Y.

information improperly sought by Chevron through its similar document subpoena to AW). Topics 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 21, 22, 23, and 24 call for the disclosure of confidential campaign blueprints, strategies, tactics, work plans, and relationships with anonymous donors that AW takes pain to keep confidential. *See e.g.*, Dkt. 6 ¶ 21, 22, 24, 31.

**E.  If depositions are allowed to go forward, the Court should issue an appropriate protective order.**

Protective orders are appropriate to protect against annoyance, embarrassment, oppression, undue burden, or expense. *See Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 428 (M.D. Fla. 2005). Chevron seeks information protected by the First Amendment, as well as confidential business information, that would include the internal strategies of campaigns directed against it. Chevron's adamant refusal to agree to a protective order restricting access to Chevron's outside counsel until used in the litigation raises serious questions as to the intended use of the information obtained. AW respectfully requests that the Court order information obtained from AW and/or Ms. Soltani be treated confidentially, and not be distributed beyond Chevron's outside counsel, at least until Chevron makes a showing that it is needed as exhibits in the litigation.

**IV.    CONCLUSION**

For the foregoing reasons, the 30(b)(6) subpoena should be quashed in its entirety, or in the alternative, modified and a protective order issued. Similarly, a protective order should be granted that limits any information obtained—particularly information protected by the First Amendment and confidential business information—to outside counsel only, at least until introduced in the underlying litigation. If the Court does not quash the 30(b)(6) deposition in its entirety, Chevron should be afforded a single deposition in which they may question Ms. Soltani in both her individual and representative capacity. If the Court believes two depositions are warranted, they should be conducted on successive days.

---

2008) (discussing enforcement of subpoena issued to the National Lawyer's Guild and a volunteer activist film organization). AW would suffer injuries in all three respects.

Case No.  C  13-80038-        MOTION TO QUASH DEPOSITION SUBPOENAS
MISC CRB (NMC)

DATED March 12, 2013

Respectfully submitted

EARTHRIGHTS INTERNATIONAL

/s/  Richard Herz
Richard Herz [admitted *pro hac vice*]
rick@earthrights.org
Marco Simons
marco@earthrights.org
Michelle C. Harrison
michelle@earthrights.org
Marissa A. Vahlsing
marissa@earthrights.org
1612 K Street NW, Suite 401
Washington, DC 20006
Telephone: (202) 466-5188
Facsimile: (202) 466-5189

*Counsel For Non-Party Amazon Watch*

Case No. C 13-80038-MISC CRB (NMC)

MOTION TO QUASH DEPOSITION SUBPOENAS