Richard Herz [admitted *pro hac vice*]
rick@earthrights.org
Marco Simons [SBN #237314]
marco@earthrights.org
Michelle Harrison
michelle@earthrights.org
Marissa Vahlsing
marissa@earthrights.org
EARTHRIGHTS INTERNATIONAL
1612 K Street NW, Suite 401
Washington, DC 20006
Telephone: (202) 466-5188
Facsimile: (202) 466-5189

Jose Luis Fuentes
jlf@siegelyee.com
Siegel & Yee
499 14th Street Ste 300
Oakland, CA 94612
Tele: (510) 839-1200
Facsimile: (510) 444-6698

Attorneys for Non-Party Amazon Watch

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEVRON CORP., | ) Case No. C 13-80038-MISC CRB (NMC) |
| Plaintiff, | ) |
| | ) **REPLY IN SUPPORT OF NON-PARTY** |
| v. | ) **AMAZON WATCH'S MOTION TO** |
| | ) **QUASH AND/OR MODIFY DEPOSITION** |
| | ) **SUBPOENAS; DECLARATION OF** |
| STEVEN DONZIGER, *et al.* | ) **RICHARD HERZ; DECLARATION OF** |
| | ) **ATOSSA SOLTANI** |
| Defendants. | ) |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

I.   INTRODUCTION AND SUMMARY OF ARGUMENT .................................................... 1

II.   ARGUMENT ........................................................................................................................ 2

    A.   Chevron's claim that Amazon Watch has waived its objections is meritless .................................. 2
        1.   *Amazon Watch's motion is not untimely* ............................................................................ 2
        2.   *Even if Amazon Watch's motion was untimely, waiver is unwarranted* ................................ 4

    B.   Chevron's subpoena would unduly burden Amazon Watch ............................................................ 5
        1.   *Chevron has not met its initial burden to show that the information it seeks is highly relevant* ................. 6
        2.   *Chevron cannot meet its burden to show that the testimony it seeks is otherwise unavailable* ................... 9

    C.   Amazon Watch was not a member of any conspiracy ................................................................ 10
        1.   *Chevron's attempt to smear Amazon Watch violates the First Amendment* ........................... 10
        2.   *Amazon Watch did not participate in, nor was it aware of, any conspiracy* ........................... 11

    D.   Chevron's subpoenas violate the First Amendment ................................................................ 13

    E.   Chevron seeks confidential business information ................................................................ 14

    F.   Chevron should pay the reasonable costs of any deposition ....................................................... 14

    G.   If the deposition is permitted, the Court should issue an appropriate protective order ............. 15

III.   CONCLUSION ................................................................................................................... 15

i

REPLY IN SUPPORT OF MOTION TO QUASH
DEPOSITION SUBPOENA

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Abercrombie & Fitch Stores Inc.,*
　No. 06-cv-991, 2007 WL 1994059 (S.D. Cal. July 2, 2007)....................................................3 n.1

*Cent. 21 Real Est., LLC v. All Prof. Realty, Inc.,*
　2:10-CV-2751 WBS GGH, 2012 WL 2090434 (E.D. Cal. 2012)................................................5

*Compaq Computer Corp. v. Packard Bell Electronics, Inc.,*
　163 F.R.D. 329 (N.D. Cal. 1995)..............................................................................................14

*E.E.O.C. v. Safeway Store, Inc.,*
　C-00-3155 TEH(EMC), 2002 WL 31947153 (N.D. Cal. 2002) ................................................5

*Gonzales v. Google, Inc.,*
　234 F.R.D. 674 (N.D. Cal. 2006)............................................................................................5–6

*Innomed Labs, LLC v. Alza Corp.,*
　211 F.R.D. 237 (S.D.N.Y. 2002) ..........................................................................................3 n.1

*Karr v. Napolitano,*
　C 11-02207 LB, 2012 WL 1965855 (N.D. Cal. 2012) ..............................................................5

*Mattel Inc. v. Walking Mt. Productions,*
　353 F.3d 792 (9th Cir. 2003) .....................................................................................................7

*McCoy v. S.W. Airlines Co., Inc.,*
　211 F.R.D. 381 (C.D. Cal. 2002) ...............................................................................................4

*NAACP v. Claiborne Hardware Co.,*
　458 U.S. 886 (1982) .......................................................................................................1, 10, 11

*Perry v. Schwarzenegger,*
　591 F.3d 1126 (9th Cir. 2010) ........................................................................................1, 11, 13

*Pioche Mines Consol Inc. v. Dolman,*
　333 F.2d 257 (9th Cir. 1964) .................................................................................................3 n.1

*Simplex Mfg. Co. v. Chien,*
　C12-835RAJ, 2012 U.S. Dist. LEXIS 124625 (W.D. Wash. Aug. 31, 2012) ..........................7

*U.S. ex rel. Pogue v. Diabetes Treatment Ctr. of Am., Inc.,*
　238 F. Supp. 2d 270 (D.D.C. 2002) ......................................................................................3 n.1

*Williams v. City of Weed,*
　CIVS07-1787 FCD EFB, 2008 WL 1733026 (E.D. Cal. Apr. 10, 2008) .............................4–5

## LOCAL RULES

Local Rule 30-1 .....................................................................................................................1, 2

ii

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

In arguing that AW has somehow waived its right to object to Chevron's burdensome and unconstitutional subpoena, Chevron seeks to profit from its own violation of Local Rule 30-1. That Rule required Chevron to meet and confer about the schedule. But it refused, and now claims waiver based on its assertion that AW did seek relief prior to Chevron's unilateral "deadline." Even that claim is false, because AW filed a motion to enlarge time. Thus, Chevron's argument that the Court should not even consider AW's burden, First Amendment, and other objections is nothing more than the claim that AW purportedly filed the wrong kind of motion.

It is no wonder that Chevron wants the Court to ignore the merits. Judge Kaplan recently denied discovery into the same issues Chevron seeks here, because *inter alia* it is not sufficiently important. Dkt. 48-1, Order at 65. That disposes of Chevron's claim that it is "highly relevant."

And given the vast, if not unprecedented amount of discovery Chevron has already received, Chevron cannot show that the evidence it seeks is unavailable elsewhere. Indeed, Chevron does not even attempt to show that it cannot otherwise obtain the *specific* evidence it seeks. Nor does it deny the huge burden preparing for this subpoena will place on AW, a small non-profit.

Chevron repeats its shameful and baseless claim that AW was a member of a conspiracy. That could not salvage its subpoena; in the Order referenced above, Judge Kaplan found "inferences" that the subpoena target, non-party Patton Boggs, knew of and was involved in the alleged conspiracy, Dkt 48-1, Order at 61, but still denied the kind of discovery Chevron wishes to impose on AW. Regardless, the "evidence" Chevron provides does not remotely support its false claim that AW joined or intended to further any conspiracy. Indeed, *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982), forecloses Chevron's effort to brand AW as a co-conspirator based on AW's exercise of its First Amendment rights.

Chevron's subpoena is constitutionally infirm because it seeks testimony regarding the internal campaign strategy of its political opponent. *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). Chevron does not seriously dispute this; rather it falls back on its bogus fraud argument. Thus, at bottom, it asks this Court to ignore the First Amendment protections in *Claiborne Hardware*

Case No. C 13-80038-
MISC CRB (NMC)

REPLY IN SUPPORT OF MOTION TO QUASH
DEPOSITION SUBPOENA

in order to violate the First Amendment protections in *Perry*.

Chevron has opted not to depose Ms. Soltani in her individual capacity, nor even listed her as a potential alternate. *See* Herz Decl., Ex. G. Thus, although Chevron forced AW to brief the issue, it is now moot. But because Chevron also claims that Ms. Soltani is still "under subpoena," Dkt. 52 at 1, n.1, whatever that means, Chevron's failure to oppose AW's objections here should preclude any attempt to depose her twice.

Last, the fact that Chevron is unwilling to agree to a protective order that would prevent Chevron itself from learning the campaign strategy of its critics, even though it has agreed to such protections for others, confirms that Chevron seeks this information at least in part for a non-litigation purpose that the Court should not allow.

## II.   ARGUMENT

### A.  Chevron's claim that Amazon Watch has waived its objections is meritless.

#### 1.  *Amazon Watch's motion is not untimely.*

According to Chevron, AW did not file a "timely motion" and has thus waived the right to even object to the subpoena. Dkt. 52 at 2-5. That is wrong.

First, what Chevron asserts to be a deadline that triggered waiver was no deadline at all. Local Rule 30-1 prohibits precisely what Chevron did: order a deponent to appear on the date of its choosing while refusing to meet and confer about scheduling. AW repeatedly informed Chevron that Ms. Soltani, AW's designated 30(b)(6) representative, did not have adequate time to prepare; reminded Chevron that AW had not received Chevron's position on the numerous objections AW raised in a detailed letter and that the substantive meet-and-confer had not concluded; and noted Chevron's Local Rule 30-1 obligation. Dkt. 27-1 at 15, 16, 19. Rather than working with AW to agree on a schedule that would allow the parties to finish the substantive meet-and-confer and either brief any disputes or allow Ms. Soltani time to prepare, Chevron declared that it could dictate the date of the deposition and the "deadline" for filing a motion to quash, Dkt. 27-1 at 15, 17, and unequivocally refused to extend the time. Dkt. 1 at 3-4; Dkt 27-1 at 18 ("we cannot grant an extension"); *Id.* at 17 ("your client's appearance is not excused."); *Id.* at 15-16 ("We will not extend

the time."). Since Chevron violated Rule 30-1, there was no "properly noticed deposition;" the cases Chevron cites are therefore irrelevant. *See* Dkt. 52 at 2-3.[1]

Second, AW *did* file a motion prior to the noticed date. In an abundance of caution, AW filed an ordinary motion to enlarge time, so the parties could finish the meet-and-confer. Chevron concedes that "Rule 45(c)(3)(A)(i) provides the vehicle for the *exact* type of challenge that underlies Amazon Watch's motion to enlarge time." Dkt. 27 at 3 (emphasis in original). Thus, their argument is that AW waived its rights, not because it impermissibly sought relief, but rather because it allegedly filed the wrong motion. Does a deponent's right to raise objections—including those asserting well-established First Amendment protections—really turn on such empty formalism?

Last, Chevron mischaracterizes the meet-and-confer. *See* Dkt. 52 at 3-5. The nub of Chevron's claim is that AW's arguments were somehow "available to them" prior to the completion of the meet-and-confer. *Id.* at 3. Chevron pretends that the deposition subpoena raised no different issues than the document subpoena. *Id.* But AW sent Chevron a detailed letter outlining its objections to the deposition subpoena, Dkt. 4, Ex. U, and while it is certainly true that both subpoenas suffer from many of the same infirmities, AW's February 20th letter identified a host of issues unique to the deposition subpoena. Dkt. 44 at 4-5 & n.5; Dkt. 27-1 at 30-35. Thus, prior to the March 1 meet-and-confer, AW did not know Chevron's position on these issues and, thus, could not know the need for, or scope of, a motion to quash. Dkt. 44 at 4, n.4; Dkt. 1 at 2-3; Dkt. 31 at 1-2, 6-8.[2]

---

[1] None of Chevron's cases, *see* Dkt. 52 at 2-3, address a motion to extend time filed prior to the noticed date. In contrast to AW's good faith effort to meet and confer, each of Chevron's cases involved improper behavior to evade discovery or failure to respond in any way. *See Pioche Mines Consol Inc. v. Dolman*, 333 F.2d 257, 269 (9th Cir. 1964) (finding deponent's repeated "failure to appear was willful" and "a direct flaunting of the authority of the court"); *Anderson v. Abercrombie & Fitch Stores Inc.*, No. 06-cv-991, 2007 WL 1994059 (S.D. Cal. July 2, 2007) (finding objections were waived where a party failed to respond to a document subpoena in any way prior to the noticed date of production); *U.S. ex rel. Pogue v. Diabetes Treatment Ctr. of Am., Inc.*, 238 F. Supp. 2d 270, 278 (D.D.C. 2002) (finding motion to quash untimely when originally filed in the wrong court 3 months after return date, and filed in the correct court 10 months after the return date); *Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002) (noting that even if the party seeking discovery had properly sought leave of court to re-depose, court would have denied request since subpoena lacked "reasonable particularity"—even though target of subpoena failed to respond by date of deposition).

[2] Under Chevron's view, every issuing party could, like Chevron, refuse to meet and confer about scheduling and force a deponent to seek a protective order based on a premature motion to quash, and claim waiver if she does not. Chevron's position would eviscerate Local Rule 30-1.

REPLY IN SUPPORT OF MOTION TO QUASH
DEPOSITION SUBPOENA

Chevron's assertion that AW sought delay is belied by the fact that the meet-and-confer was completed on March 1—a mere three days after Chevron's unilateral "deadline." And even that "delay" could easily have been shortened or avoided by Chevron. AW asked Chevron for a response in writing to AW's letter during the brief absence of its lead attorney—who was most familiar with the issues—so that counsel could ascertain Chevron's position, confer with its client, and then negotiate by phone upon lead counsel's return a few days later. *See* Dkt. 1 at 3; *see also* Dkt. 3 at 7 & n.12. That approach was exceedingly reasonable, since AW's counsel hoped that Chevron would be willing to engage in a real meet-and-confer involving compromise on both sides. Chevron, however, refused to provide a written response. Its refusal is particularly inexplicable, since Chevron ultimately refused to compromise one iota on any substantive issue. *See* Dkt. 31 at 7-8; Dkt. 44 at 4-6.[3]

In short, according to Chevron, AW should either have sat for the deposition with insufficient time to prepare, or filed a premature and potentially unnecessary motion to quash without knowing Chevron's position. In these circumstances, AW's motion to extend time was eminently reasonable, and procedurally proper, and the motion to quash was timely.

**2.      *Even if Amazon Watch's motion was untimely, waiver is unwarranted.***

Even if the Court finds that AW failed to timely object by filing a motion to enlarge time instead of a motion to quash, the circumstances do not warrant the extreme sanction of waiver. Courts have refused to find waiver where:

> (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged the legal basis for the subpoena.

*McCoy v. S.W. Airlines Co., Inc.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002). Moreover, where the subpoena is directed at a non-party and much of the information sought is likely obtainable from the parties,

---

[3] Chevron misleadingly cites AW's counsel's statement that there was not sufficient time for a call, Dkt. 52 at 4, without noting the reasons—that Chevron had not responded to AW's letter and that AW was on that day (Friday) finishing its motion to quash the document subpoena due Monday—and worse, without noting that AW tried to arrange a call for that Tuesday. Dkt 27-1 at 16. That is hardly "run[ning] out the discovery clock." Dkt. 52 at 4.
   What forced AW to file a motion to enlarge time was not, as Chevron claims, *id.* at 4, n.2, the need for a teleconference—both parties agreed on that—but rather Chevron's refusal to confer over the schedule and to provide its position in writing while AW's lead counsel was away and its insistence that AW seek relief before Chevron had provided its position. Dkt. 44 at 4, n.4.

4

that also weighs against waiver. *Williams v. City of Weed,* CIVS07-1787 FCD EFB, 2008 WL 1733026 at *3 (E.D. Cal. Apr. 10, 2008). All of these circumstances exist here.

First, the 24 topics and 18 subtopics are overly broad, exceedingly vague, and would cover *thirteen years.* Dkt. 44 at 6-10, n.8, n.9, Herz Decl., Ex. A. Moreover, Chevron seeks information that Judge Kaplan has already suggested is not central to Chevron's case. *See infra,* Section II.B.1.

Second, AW acted in good faith. AW reasonably asked for a short extension of Chevron's unilateral "deadline" to allow time to finish the meet-and-confer. In an effort to reach a mutually acceptable compromise on the merits, AW provided its objections and offered proposals that would allow AW to begin preparation on the issues of highest priority to Chevron. *See* Dkt. 44 at 5. AW never refused to sit for deposition, but asked for adequate time to prepare. *See* Dkt. 27-1 at 19, 35. Chevron refused to compromise at all. Dkt. 31 at 7-8.

Third, as the previous paragraph suggests, prior to the noticed date, AW was in frequent contact with Chevron regarding compliance with the subpoena. *See* Dkt 1; Dkt. 44; Dkt. 27-1 at 29, 31-35; *see, e.g., Cent. 21 Real Est., LLC v. All Prof. Realty, Inc.,* 2:10-CV-2751 WBS GGH, 2012 WL 2090434 at *4 (E.D. Cal. 2012); *Williams,* 2008 WL 1733026 at *3.

Fourth, as detailed below, Chevron almost certainly could obtain—or has already obtained—much of the information sought from parties to the underlying litigation, or the many non-parties that have been subpoenaed. *See infra* Section II.B.2. & n.7.

In short, waiver is a "harsh sanction" inappropriate here. *See E.E.O.C. v. Safeway Store, Inc.,* C-00-3155 TEH(EMC), 2002 WL 31947153 at *2 (N.D. Cal. 2002); *Karr v. Napolitano,* C 11-02207 LB, 2012 WL 1965855 at *6 (N.D. Cal. 2012) ("complete waiver" would be "disproportionately harsh"). AW did not "unjustifiably delay[] discovery," *E.E.O.C.,* 2002 WL 31947153 at *2, and there is no prejudice; Chevron only finalized its Rule 16 list of deponents days ago. *See* Herz Decl., Ex. G.

## B. Chevron's subpoena would unduly burden Amazon Watch.

Chevron does not dispute that the burden on AW to comply with its subpoena would be overwhelming. Dkt. 52 at 5. Instead, it suggests a sufficient showing of relevance and need necessarily overcomes any burden, no matter how large. *Id.* That is incorrect. Courts balance the

relevance of and need for the information with the potential hardship to the non-party. *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006). Thus, burden is no secondary consideration. The extreme burden placed on AW easily outweighs Chevron's need; indeed Chevron can show neither that the information it seeks is relevant nor that it is unobtainable from other sources.

Chevron's further claim that any burden is not undue because AW is a co-conspirator fails along with its conspiracy theory.

**1.    *Chevron has not met its initial burden to show that the information it seeks is highly relevant.***

Chevron fails to mention that its claim that the discovery it seeks in both the deposition and document subpoenas is central to its case has been rejected by Judge Kaplan.

According to Chevron, it needs from AW information about "how Donziger and his co-conspirators" allegedly "used AW's name and public relations pulpit" as part of an effort to compel Chevron to settle the Ecuador litigation. Dkt. 52 at 6. But in the underlying litigation, Chevron sought broad discovery from Patton Boggs ("PB"), one of the law firms representing the LAPs, based on the argument that the LAPs' Ecuadorian counsel and agents had resisted discovery. Dkt. 48-1. The discovery Chevron served on PB *explicitly* sought "communications relating to AMAZON WATCH" and many of the same topics as sought here, including: communications among any LAP "related parties" and any NGOs; communications with media, stock market analysts, energy industry journalists; all documents related to protests, rallies, marches, and demonstrations related to Chevron and all documents related to the entities involved; communications between LAP related parties and any US government official, agency, employee, Congress, and any State Attorney General or Comptroller's office. *See* Herz Decl., Ex. B (Requests 40-43, 45, 52-54).[4] PB objected to

_____

[4] Compare with the noticed topics from the 30(b)(6) subpoena: 15 (the LAPs, and AW's communications with the LAPs), 20 (communications with LAP related parties about the judgment), 21 (communications relating to the allegations in Chevron's complaint), 10 (communications related to protests, rallies, demonstrations), 12 (communications with U.S. government agencies, Congress, NYC Comptroller), 9 (communications with LAP related parties about publications, press releases, etc., including public relation campaigns), 11 (communications with owners, managers, content providers of related websites), 23(a)-(h) (communications with LAP activists, media, NGOs, energy industry analysts, stock analysts, investment professionals, authors, artists, filmmakers, etc.). *See* Dkt. 1, Ex. A (30(b)(6) subpoena). The document subpoena issued to AW includes many of the same requests, *e.g.*: 6 (communications with U.S. and state level government agencies, Congress), 7 (communications with LAP related parties, NGOs, etc.), 17 (documents concerning protests, rallies,

REPLY IN SUPPORT OF MOTION TO QUASH
DEPOSITION SUBPOENA

1    that discovery, Dkt. 48-1, Order at 2, and Judge Kaplan refused to order it, based in part on the

2    "desirability of focusing only on that which is most important." Dkt. 48-1, Order at 65.

3            The court limited discovery of PB to specific factual issues regarding Chevron's allegation

4    that the Ecuadorian *judgment was fraudulent*. *Id.* at 65-66 (limiting discovery to the alleged bribery of

5    the judge and authorship of the judgment; the submission of certain reports to the court; the

6    termination of the judicial inspection; the appointment of the expert and the preparation and

7    submission of his report; and the submission in U.S. courts of allegedly deceptive accounts of the

8    LAPs' relationship with the expert). Given Judge Kaplan's refusal to order the same discovery

9    Chevron seeks in the deposition and document subpoenas here, Chevron can hardly claim it is

10   relevant, let alone "highly relevant."

11           Regardless, Chevron misstates its burden. It suggests that if AW has *any* relevant

12   information, the subpoena in its entirety is valid. In fact, however, the relevance of each particular

13   topic must be assessed individually. Indeed, courts will quash an overbroad subpoena even if it seeks

14   some relevant information. *See Mattel Inc. v. Walking Mt. Productions*, 353 F.3d 792, 813 (9th Cir. 2003)

15   (upholding decision to quash subpoena where topics were "way too broad for the explanation

16   given"); *Simplex Mfg. Co. v. Chien*, C12-835RAJ, 2012 U.S. Dist. LEXIS 124625 at *7-8 (W.D. Wash.

17   Aug. 31, 2012) (quashing subpoena because although "it is possible that some of the requests . . . are

18   narrowly drawn to seek relevant information," the requesting party "has not given the court enough

19   information to reach that conclusion"). Chevron has refused to "tailor" the subpoena "to the

20   immediate needs of the case" and failed to provide a sufficient explanation to justify the breadth of

21   the subpoena. *See Mattel*, 353 F.3d at 813; *see also* Dkt. 44 at 6-10, 13-14. Chevron makes no attempt

22   to defend any particular topic. It has not met its burden.

23           Chevron's claim that AW has highly relevant evidence because it was a member of a

24   conspiracy fails because Chevron cannot show—and AW was not—a member of any conspiracy. *See*

25   *infra*, Section II.C.2. Chevron asserts that "AW played what Donziger described as 'an absolutely

26

27   marches, demonstrations), 21 (communications with any media professional or organization, stock
     market analysts, investment professionals, energy analysts), 22 (communications with owners,
28   managers, administrators of any related website). *See* Dkt. 4, Ex. E (document subpoena).

                                                          7

critical role' in the underlying RICO conspiracy." Dkt. 52 at 6 (quoting Dkt. 38-14). But, of course, Donziger did not say there was a conspiracy, let alone that AW was a part of it. Dkt. 38-14. AW's advocacy for justice for communities in Ecuador was not *because* of the legal case; it *preceded* the legal case. Dkt. 37 at 41-3 ¶¶6-11. And the Defendants did not control AW. *See* Dkt. 41 at 6-7 & n. 14; Dkt. 49 at 7-9; Dkt. 37 at 4. In short, AW's campaign about Chevron's history of environmental degradation is protected expression, not evidence of a conspiracy. Regardless, what Chevron claims makes AW a "co-conspirator" is AW's public campaign. But discovery on that topic is precisely what Judge Kaplan refused to order.

Nor can Chevron show that AW has evidence regarding the obtaining of the allegedly fraudulent Ecuadorian judgment—the core of Chevron's RICO action.[5] AW had nothing to do with litigating the case in Ecuador, and thus nothing to do with obtaining the judgment. *See* Dkt. 49 at 6-7.[6] Indeed, when Chevron sought documents from Patton Boggs regarding alleged fraud leading to the judgment, it told Judge Kaplan that "[f]ew of these documents will be in the hands of third parties," *explicitly including AW*. Herz Decl. Ex. D at 21. The court agreed, determining PB was the proper source because "it is doubtful that [the third parties Chevron has subpoenaed] will provide Chevron with the discovery it seeks from PB." Dkt 48-1, Order at 68.

Chevron's claim that AW witnessed "illegal acts" by Donziger is also meritless. Dkt. 52 at 6 (citing Dkt. 38-6). The discussion Chevron references did not involve "illegal acts." *See infra,* Section II.C.2. But even accepting Chevron's mischaracterization, that discussion had nothing to do with the alleged false reports or ghostwritten judgment.

Chevron notes that AW sometimes worked out of the same office space in Ecuador as members of the LAPs' legal team. Dkt. 52 at 7 (citing Dkt. 52-9 at 3-4). But the cited document refutes the very inference they seek to draw; Donziger specifically confirmed that "[AW] is not part

---

[5] Chevron's theory of the case is that *Defendants* forged reports submitted to the Ecuadorian court; pressured the Ecuadorian court to appoint a neutral expert, Cabrera, and then paid him and ghostwrote his reports; and ultimately paid the judge and ghostwrote the judgment. Dkt. 42 at 3-4.
[6] Chevron's own evidence proves that AW was not member of the legal team. Dkt. 52-9 at 3-4. AW never "submitted any evidence or findings to the court" or "assist[ed] the court appointed expert in preparing his submissions to the court." Dkt. 37 at 43 ¶15; *see also id.* at 51 ¶ 6, 59 ¶19.

8

of the legal team," and that, for precisely that reason, "there is a lot we do that we do not share with them." Dkt. 52-9 at 3-4.

Likewise, Chevron observes that an intern for the LAPs' legal team traveled to the jungle with an AW staffer "to examine the damage." Dkt. 52 at 7; Dkt. 52-9 at 4. But Chevron does not claim that it needs information about that trip, Donziger specifically warned the intern about sharing information with the AW staffer because he was not a member of the legal team, Dkt. 52-9 at 4, and the fact that an AW staffer traveled with an intern hardly suggests a conspiracy.

### 2.   *Chevron cannot meet its burden to show that the testimony it seeks is otherwise unavailable.*

Chevron also fails to meet its burden to prove that the evidence it seeks is unavailable from more appropriate sources, including the Defendants themselves. According to Chevron, the Defendants "relied on AW to bring the news of [their] corrupt efforts to Chevron's doorstep in the United States," and they therefore seek discovery regarding how Donziger and his co-defendants "used" AW for this purpose. Dkt. 52 at 6. Even assuming any of that is true, which it is not, evidence of Defendants' alleged effort to use AW would be in the Defendants' possession. But Chevron has already had vast discovery from the defendants and non-parties, including nearly unfettered access to anything in Donziger's possession or control, *see* Dkt. 44 at 7-8 & n.6; Dkt. 41 at 3-4 & n.6, and *16 days* of deposition from Donziger, *see* Herz Decl. Ex. E at 22, and has issued over *100* subpoenas.[7] Yet Chevron still has no evidence that AW had any intent to participate in a conspiracy (assuming the Defendants conspired), because AW did not.

Chevron claims that it needs evidence from AW because Defendants have resisted discovery. But it cannot meet its burden to show that it has been unable to obtain the *specific* evidence it seeks. As noted, Chevron seeks evidence about AW's political campaign *in the United States.* Dkt. 52 at 6. But the Orders Chevron cites refer, at least to the extent one can tell, largely to

---

[7] A January 2013 filing by PB in the underlying litigation shows that as of that date, Chevron had "issued 102 subpoenas" relating to the same topics as the PB subpoena, "issued 31 additional subpoenas on the eve of the discovery deadline[ ]", and "obtained approximately 320 hours of depositions," Herz Decl., Ex. E at 22, Ex. F, not including the 21 Rule 16 depositions it has yet to conduct. Herz Decl. Ex. G. At least 52 of the subpoenas have requested information related to the Cabrera report, 16 about the Calmbacher report, 17 regarding the alleged "ghostwriting", and 31 regarding alleged undue influence over the judiciary. Herz Decl. Ex. C at 16-17.

evidence located *in Ecuador*.[8] And Judge Kaplan required the Defendants to answer interrogatories, Dkt. 14, Ex. 22 at 1-2, and Patton Boggs to provide documents, Dkt 48-1, to afford Chevron even that information. Regardless, it makes no sense for Chevron to rely on Judge Kaplan's finding that Defendants have resisted discovery, given his further finding that the information Chevron seeks *here* was not sufficiently important to warrant discovery. *See supra,* Section II.B.1 (citing Dkt. 48-1, Order at 65).

Chevron also asserts that Donziger was unable to answer certain questions at deposition. Dkt. 52 at 7. But Chevron cites only three examples—and two are the same question. Donziger's alleged inability to answer *two* questions during 16 days of deposition cannot justify the 24 topics and 18 subtopics in this subpoena.[9]

Chevron's further claim that it cannot obtain communications with AW for which Donziger has claimed privilege is addressed to the wrong court. Dkt. 52 at 6-7. If Donziger's assertion of privilege is unwarranted, Chevron can obtain those documents by challenging it in the underlying litigation. If the assertion is meritorious, Chevron is not entitled to the documents here either, and cannot evade that limit by asking for the privileged information in deposition.

### C. Amazon Watch was not a member of any conspiracy.

#### 1. *Chevron's attempt to smear Amazon Watch violates the First Amendment.*

Chevron claims that AW is a member of a conspiracy largely based on AW's advocacy campaign. But as AW has explained in detail, Dkt. 49 at 3-6, individuals' First Amendment rights are not limited simply because their partners in expressive activity violated the law in furtherance of their joint campaign. *Claiborne Hardware*, 458 U. S. at 908, 915, 919–20, 934. To show that the First Amendment does not protect AW's political advocacy, Chevron must prove that AW had "a specific

---

[8] Dkt. 52 at 6, 14 citing Dkt. 38-2 at 1 ("[Defendants have] utterly refused to comply with court orders **directing them to comply with discovery of documents and information *in the possession of their Ecuadorian counsel.***") (emphasis added, language Chevron omits in bold); Dkt. 14, Ex. 22 at 1-2 (Defendants "refus[ed] to produce responsive documents *located in Ecuador*.") (emphasis added); Dkt. 48-1 at 46-47 (noting the RICO defendants' refusal to produce documents in the "control of their attorneys and agents *in Ecuador*") (emphasis added).

[9] The fact that Donziger did not know whether AW had communicated with the SEC confirms that Chevron's claim that Donziger controlled AW is false. And the notion that the answer to that question is somehow central to Chevron's claims has already been rejected by Judge Kaplan.

10

intent to further an unlawful aim." *Id.* at 925-26; *accord id.* at 920; *id.* at 933 (party must have "agreed to use unlawful means."). Chevron simply cannot show that AW had the requisite "specific intent" to further any illegal aims. *See infra,* Section II.C.2.

Chevron erroneously suggests that *Claiborne Hardware* somehow does not apply because this is a discovery dispute. Dkt. 52 at 13-14. But that case limits the conduct that can be defined as illegal. And defining AW's conduct as illegal is central to Chevron's argument. It claims that the subpoena reflects AW's "role in the conspiracy," Dkt. 52 at 1 (internal quotations omitted), and that "AW is an active co-conspirator," *id.* at 5, and that as a result, AW "is not . . . entitled to the protections of Rule 45 against undue burden," *id.*, or to the protections of the First Amendment. *Id.* at 10. Chevron cannot have it both ways. It cannot argue that its broad subpoena is justified and that AW can be stripped of constitutional and Rule 45 rights because AW was a conspirator, and then spin on its heel and argue that it need not meet the strict standards of *Claiborne Hardware*, which carefully limit who can be deemed a conspirator.

### 2. AW did not participate in, nor was it aware of, any conspiracy.

Chevron's latest attempt to tarnish AW by its association with the Defendants, Dkt. 52 at 10-13, proves no more effective than its previous efforts. Its conspiracy theory against AW cannot survive even the most cursory review, let alone review with the "extreme care" that *Claiborne Hardware* requires. 458 U. S. at 915-16, 926-27.

Chevron claims that the fact that Donziger and Ecuadorian lawyers for the LAPs are listed in the "core group" somehow suggests that AW was a member of the alleged conspiracy. Dkt. 52 at 10. Nonsense. They are so designated because AW worked with them, not on the case, but on the "formulation of *campaign* strategy and messages." *Perry*, 591 F.3d 1147, 1165 n.12 (emphasis added; original emphasis deleted); Dkt. 42-41. That advocacy campaign was designed to call public attention to Chevron's pollution in Ecuador and to ask Chevron to provide justice for the victims. Dkt. 37 at 2-3. It has nothing to do with Chevron's allegations of fraudulent evidence and ghostwritten judgments. As detailed above, AW was not a member of the legal team and was not involved in the legal case. Dkt. 52-9 at 3-4. Nor does AW's core group designation conflict, as Chevron suggests,

Case No. C 13-80038-
MISC CRB (NMC)

REPLY IN SUPPORT OF MOTION TO QUASH
DEPOSITION SUBPOENA

with AW's showing that the Defendants did not direct AW's campaign. Dkt. 52 at 10. That AW

worked on campaign strategy *with* others does not mean that it acted under their control.

Indeed, while Chevron cites Judge Kaplan's finding that there is probable cause to believe

that the Defendants engaged in fraudulent activity with respect to the Ecuadorian judiciary, Dkt. 52

at 10, Judge Kaplan refused to require the discovery Chevron sought that specifically related to AW

and its campaign. *See supra,* Section II.B.1.[10]

Chevron recycles selective quotes taken out of context. Dkt. 52 at 11-13.[11] AW has already

refuted Chevron's baseless assertion that AW acts at Donziger and the Defendants' direction. *See,*

*e.g.,* Dkt. 37 at 4; *id.* at 43, ¶¶12-13; *id.* at 45-46 ¶22; Dkt. 41 at 6-7 & n. 14.[12] Chevron claims that

AW published untrue information. Dkt. 52 at 12-13. Even accepting Chevron's mischaracterization

of the evidence, it would be an unwarranted leap of logic to conclude this means that AW was a

conspirator. Regardless, as AW has explained, once David Russell asked AW not to use his $6 billion

figure, AW stopped using it going forward. *See, e.g.,* Dkt. 49 at 8 & n.11; Dkt. 37 at 46 ¶25.[13]

Chevron's latest submission confirms just that. Dkt. 52-4 at 13 (Donziger affirms that AW stopped

using the Russell figure after Russell repudiated it).[14] Similarly, when doubt arose as to Bill Powers's

"Exxon Valdez" figure, AW stopped using that figure as well. Dkt. 37 at 4; Dkt. 49 at 12.[15] Thus,

---

[10] Judge Kaplan devoted 36 pages to Defendants' alleged criminal activities, but did not even mention AW. Dkt. 48-1 at 14-50. Indeed, Judge Kaplan "limited" discovery "to the subjects as to which Chevron has established probable cause to suspect fraud or criminal activity," Dkt 48-1, Order at 5, suggesting there has been no such showing with respect to the advocacy campaign.

[11] Chevron's reliance on quotes from the *Crude* outtakes continues its pattern of using such quotes to mislead; the director of *Crude,* who spent three years filming the LAPs legal team, was "dismayed at the level of mischaracterizations [by Chevron] . . . The footage citations are being taken out of context and not being presented to the court in its entirety, creating numerous false impressions." Dkt. 52-7 at 4.

[12] *See also* Dkt. 42 at 6; Dkt. 37 at 5 n.7 (addressing Chevron's "propaganda" argument); Dkt. 37 at 45 ¶21 (addressing the "press release" arguments); *id.* at 47 ¶30 (addressing the "propaganda" argument); *id.* at 51-52 ¶¶9-12 (addressing Chevron's "patently false" argument about "press releases" and "wholly misleading" "propaganda" argument).

[13] Chevron can cite only a single instance in which AW "continued to use" the figure, which was "a mistake on our part since we had previously decided not to reference Mr. Russell's report." Dkt. 37 at 47 ¶27. Chevron's claim that the figure continues to appear on AW's website refers to old, archived documents. Dkt. 37 at 46-47, ¶¶ 23-24, 27. Regardless, AW had reason to believe the figure was, if anything, too low. Dkt. 37 at 46 ¶26.

[14] That Donziger told Ms. Soltani the $6 billion figure was an overestimate, Dkt. 52 at 12 & n.9, makes no difference. That conversation took place in December, 2006, *after* AW decided to stop using this number. *See* Chevron's own submission in Case No. 11-00691-LAK, Dkt. 365 at ¶ 28.

[15] Chevron supports its tired claim that AW continues to use this figure with only an old

REPLY IN SUPPORT OF MOTION TO QUASH
DEPOSITION SUBPOENA

Chevron is reduced to arguing that "fail[ure] to correct" past, allegedly false statements or the failure to remove archived statements on AW's website is somehow evidence of conspiracy. It is not.

Chevron attempts the same gambit with respect to postings about the Cabrera report, Dkt. 52 at 11, but here the archived material, Dkt. 52-5; Dkt. 52-6, is on chevrontoxico.com, not AW's website. Dkt. 52-1, Monagas Decl. at 3 ¶¶17-19. And the most recent posting noted Chevron had accused the LAPs of fraud with respect to the report, and that as a result, the court had decided to order new assessments. Dkt. 52-7 at 2. This hardly shows conspiracy.[16]

Last, Chevron claims that AW "exert[ed] pressure" on the Ecuadorian judiciary, Dkt. 52 at 13, but *none* of the "evidence" Chevron cites shows that AW did any such thing, let alone that it had any intent to further any conspiracy. Chevron cites a public lunch prepared by local women for those participating in a site inspection, at which there is no indication Ms. Soltani and the judge even spoke to each other. Dkt. 42-2; Dkt. 49 at 6 & n.5. Chevron's latest submission reflects Ms. Soltani's account of a conversation in which "the judge came over to [her]," thanked her for coming to the trial, and made small talk—again without any indication that Ms. Soltani tried to "pressure" the judge. Dkt. 52-10; Soltani Decl. ¶ 7. And Chevron's further claim that "[t]hese interactions demonstrate that AW. . . served as the RICO defendants' agents" is a *non-sequitur.* Dkt. 52 at 13.[17]

There is nothing new or availing about Chevron's latest attempt to smear AW. It cannot show that AW knew of, or participated in, the alleged fraud at the heart of the underlying case.

___

posting by Karen Hinton on the CHEVRONTOXICO website, Dkt. 38-8, which posting AW had no authority to prevent, Dkt. 37 at 45 ¶21, and a 2010 web story posted by AW in which Powers, *affirms, under oath in a deposition by Chevron*, that "the amount of toxic liquids that should not have been in the environment in Ecuador was at least 30 times the quantity or the volume of crude that was spilled in the Exxon-Valdez disaster." Dkt. 38-10, Ex. 9; *see also* Dkt 37 at 52-53 ¶14.

[16] Chevron's claim that Ms. Soltani had reason to know that the Defendants planned to ghostwrite the global damages report is false; Donziger told her that the LAPs would be supporting the expert with work, Dkt. 52 at 11, n.7, but Ms. Soltani always understood that both sides supported experts with technical assistance and never understood this to mean that Cabrera's report would be the product of fraud. Soltani Decl. ¶4. *See also id.* ¶5-6.

[17] The meetings to which Chevron refers are permitted under Ecuadorian law and the judge also met with Chevron. Dkt. 37 at 44 ¶17. Nor is Ms. Soltani's presence in a meeting during which the Defendants joked about "raising a private army" relevant: it is crystal clear Donziger was kidding about an "army," as such statements were made amidst continuous laughter. *E.g.*, Dkt. 38-6 at 7 ("And we need our own army. No! I'm just kidding [laughter]"). And, of course, no army was ever raised. Unarmed groups of *campesinos* and indigenous people stood outside the court in peaceful vigils, but people affiliated with Chevron outnumbered them. Dkt. 41 at 43-4, ¶¶ 14-19. Moreover, during that meeting, Ms. Soltani *repudiated* the statements of the RICO defendant. Dkt. 41 at 32, ¶4.

13

REPLY IN SUPPORT OF MOTION TO QUASH
DEPOSITION SUBPOENA

**D.  Chevron's subpoenas violate the First Amendment.**

Chevron does not deny that it seeks information into the formulation of campaign strategy—which is protected under *Perry*, 591 F.3d at 1165 n.12. Dkt. 44 at 11–13. Its claims that the information is highly relevant and otherwise unavailable, Dkt. 52 at 14, are refuted above. *See supra*, Sections II.B.1 and 2. Chevron's assertion that "the subpoena topics are narrowly tailored to address AW's long-standing partnership with the RICO defendants," *id.* at 14, is untrue. Chevron seeks testimony about issues far beyond the interactions between AW and the Defendants. Dkt. 44 at 8-9.

**E. Chevron seeks confidential business information.**

AW has shown that 17 subpoena topics demand important proprietary information—AW's campaign strategies—which AW has always sought to keep confidential, and that disclosure would irreversibly impair AW's primary function: public advocacy campaigning. Dkt. 44 at 14–15 & n.22; Dkt. 3 at 11-14, 22-24; *see Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995). Chevron has not shown relevance and need sufficient to overcome AW's showing.

**F. Chevron should pay the reasonable costs of any deposition.**

Chevron cites Judge Kaplan's recent Order regarding PB, which denied costs to PB because "[m]any of the events in which it was involved underlie Chevron's main allegations." Dkt. 52 at 8-9 (quoting Dkt. 48-1 at 71). But Chevron can hardly claim that is true of AW; its alleged involvement is based on its campaign activity, exactly the subject about which Judge Kaplan *denied* discovery because it was not sufficiently important. *See supra,* Section II.B.1.[18]

Chevron's suggestion that the fact that AW has so many documents potentially responsive to the document subpoena means AW must have been a conspirator is just another iteration of Chevron's effort to brand protected First Amended expression as conspiracy. Dkt. 52 at 8.

Likewise, Chevron's notion that AW could anticipate that ordinary campaign activities would give rise to litigation erroneously assumes that AW could predict Chevron would ignore the First Amendment. The claim that AW did in fact anticipate that its actions could give rise to

---

[18] Judge Kaplan also noted that PB is actively involved in the underlying litigation, has a stake in the outcome potentially worth "hundreds of millions of dollars," and has initiated lawsuits against Chevron arising out of the same facts. Dkt. 48-1 at 69, 71 n.261. AW has brought no suit, has no financial interest in the case, and has limited resources. *See* Soltani Decl. ¶8.

14

litigation is meritless. Once again, Chevron entirely mischaracterizes the discussion, *see* Dkt. 41 at 32 ¶4 (Ms. Soltani explaining she did not feel comfortable with jokes being made on film, for fear they would be used against them later), but for present purposes, it is enough to note that the "private army" comment was not made by Ms. Soltani; there was no *act by AW* that could foreseeably lead to discovery of AW. Regardless, even if AW could somehow foresee discovery into that discussion, that would not suggest AW could foresee Chevron's broad subpoena addressing unrelated topics.

Chevron claims that efforts to reduce the extreme burden on AW amount to a request for a "special exemption" from Rule 30(b)(6). Dkt. 52 at 9. But as Chevron concedes, the Rule requires only that a witness take "reasonable measures to prepare." Dkt. 52 at 9. There is nothing reasonable about expecting the representative of a small, non-profit, non-party to amass and learn the content of tens of thousands of documents without any limit on the required preparation time or any guidance from Chevron about which of the 24 topics and 18 subtopics are its priority. Thus, it is Chevron that seeks a special exemption from the protections Rule 45 affords non-parties.

### G. If the deposition is permitted, the Court should issue an appropriate protective order.

Any deposition should be subject to a protective order that prevents Chevron itself from learning AW's internal strategy and tactics. With respect to other third-parties in this case, Chevron has agreed to "a protective order limiting access to confidential documents to outside counsel until such time as those documents are introduced at trial or as exhibits in court filings." Dkt 49-2 at 2. That Chevron is unwilling to do likewise here confirms that it seeks information from AW at least in part for improper purposes, and highlights AW's need for the Court's protection.

## IV.   CONCLUSION

For the forgoing reasons, the 30(b)(6) subpoena should be quashed in its entirety, or in the alternative, modified and a protective order issued.

DATED: April 1, 2013

Respectfully submitted

EARTHRIGHTS INTERNATIONAL

/s/  Richard Herz
Richard Herz [admitted *pro hac vice*]
rick@earthrights.org
Marco Simons
marco@earthrights.org
Michelle C. Harrison
michelle@earthrights.org
Marissa A. Vahlsing
marissa@earthrights.org
1612 K Street NW, Suite 401
Washington, DC 20006
Telephone: (202) 466-5188
Facsimile: (202) 466-5189

*Counsel For Non-Party Amazon Watch*

Case No. C 13-80038-
MISC CRB (NMC)

REPLY IN SUPPORT OF MOTION TO QUASH
DEPOSITION SUBPOENA

1   Marco Simons [SBN #237314]
    marco@earthrights.org
2   Richard Herz [admitted *pro hac vice*]
    rick@earthrights.org
3   Michelle Harrison
    michelle@earthrights.org
4   Marissa Vahlsing
    marissa@earthrights.org
5   EARTHRIGHTS INTERNATIONAL
6   1612 K Street NW, Suite 401
    Washington, DC 20006
7   Telephone: (202) 466-5188
    Facsimile: (202) 466-5189
8
9   Jose Luis Fuetes
    jlf@siegelyee.com
10  Siegel & Yee
    499 14th Street Ste 300
11  Oakland, CA 94612
    Telephone: (510) 839-1200
12  Facsimile: (510) 444-6698

13  Attorneys for Non-Party Amazon Watch

14              **UNITED STATES DISTRICT COURT**

15          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

16

17  CHEVRON CORP.,                          ) Case No. C 13-80038-MISC CRB (NMC)
                                            )
18      Plaintiff,                          )
                                            ) **DECLARATION OF RICHARD HERZ IN**
19                                          ) **SUPPORT OF NON-PARTY AMAZON**
        v.                                  ) **WATCH'S REPLY IN SUPPORT OF**
20                                          ) **AMAZON WATCH'S MOTION TO**
    STEVEN DONZIGER, *et al.*               ) **QUASH AND/OR MODIFY DEPOSITION**
21                                          ) **SUBPOENAS**
                                            )
22      Defendants.                         )
                                            )
23                                          )
                                            )
24                                          )
                                            )
25                                          )
                                            )
26                                          )
                                            )
27                                          )
                                            )
28                                          )

Case  No.  C  13-80038-        DECLARATION OF RICHARD HERZ
MISC CRB (NMC)

# DECLARATION OF RICHARD HERZ

I, Richard Herz, hereby declare as follows:

1.    I am over the age of 18 and am competent to make this declaration.

2.    I have personal knowledge of all matters set forth in this declaration. If called upon to do so I could and would testify to all matters set forth herein.

3.    I am an attorney duly licensed to practice law in the State of New York. I serve as counsel for Amazon Watch with respect to the subpoena at issue, and am admitted *pro hac vice* in this Court.

4.    Attached hereto as Exhibit A is a true and correct copy of an email I received from Enrique Monagas on March 12, 2013.

5.    Attached hereto as Exhibit B is a true and correct copy of the modified document requests in Chevron's subpoena issued to non-party Patton Boggs.

6.    Attached hereto as Exhibit C is a true and correct copy of relevant excerpts from Patton Boggs' Memorandum of Law in Support of its Motion to Quash the document subpoena. *Chevron v. Donziger*, Memorandum of Law in Support of Motion to Quash Subpoena for Documents and For Other Relief, No. 11-cv-0691, Dkt. 527 (S.D.N.Y. July 20, 2012).

7.    Attached hereto as Exhibit D is a true and correct copy of relevant excerpts from Chevron's Opposition to Patton Boggs' Supplemental Submission with respect to the modified document subpoena. *Chevron v. Donziger,* Opposition to Patton Boggs LLP's Supplemental Submission, No. 11-cv-0691, Dkt. 713 (S.D.N.Y. Jan. 7, 2013).

8.    Attached hereto as Exhibit E is a true and correct copy of relevant excerpts from Patton Boggs' Response to Chevron's Supplemental brief with respect to the document subpoena. *Chevron v. Donzige*, Response to Chevron Corporation's Supplemental Brief, No. 11-cv-0691, Dkt. 718, (S.D.N.Y. Jan. 7, 2013).

9.    Attached hereto as Exhibit F is a true and correct copy of two exhibits submitted with Patton Boggs' Response listing all discovery actions noticed by Chevron and all depositions carried out by Chevron across all proceedings.

---

Case No. C 13-
80038-MISC CRB
(NMC)
                          1
                 DECLARATION OF RICHARD HERZ

10.   Attached hereto as Exhibit G is a true and correct copy of a letter from Andrea Neuman, Counsel for Chevron, to Counsel for Defendants, dated March 24, 2013, which lists the fact witnesses Chevron intends to depose, pursuant to Judge Kaplan's Rule 16 Order, and lists the alternate deponents.

I declare under penalty of perjury of the laws of the United States and the State of California that the foregoing is true and correct. Executed on March 31, 2013.

Richard Herz

2

Case  No.  C  13-80038-
MISC CRB (NMC)                          DECLARATION OF RICHARD HERZ

# EXHIBIT A

**From:** Monagas, Enrique A. [mailto:EMonagas@gibsondunn.com]
**Sent:** Tuesday, March 12, 2013 7:12 PM
**To:** rick@earthrights.org
**Cc:** Blume, Robert C.; Partridge, John D.W.; Halbert, Aimee M.
**Subject:** Amazon Watch Deposition Subpoena

Rick,

Following up on our meet and confer regarding the deposition subpoena directed at Amazon Watch ("AW"), below are answers to the three questions you posed.

1) COSTS: You asked "whether Chevron would cover reasonable costs." Dkt. 31 at 3 n. 3. Because AW is a co-conspirator in fraudulent activity, Chevron will not cover the costs incurred by AW.

2) WAIVER: You asked "whether Chevron would assert that answering questions in the deposition would waive rights and privileges with respect to the document production." Dkt. 31 at 2 n. 3. Chevron proposes that the parties engage a special master to oversee the deposition. This will ensure that AW's objections are properly noted and evaluated before deposition testimony is elicited, thus avoiding inadvertent disclosure.

3) TIME PERIOD: You asked "the applicable time frame about which Chevron intends to question the deponent." Dkt. 31 at 2 n. 3. We intend to ask questions within the date range from January 1, 2000, to the time of the deposition. This timeframe is reasonable given the timeframe of the conspiracy alleged in the amended complaint. Indeed, you acknowledged in your previous letters that AW "worked for decades on advocacy for Amazonian communities living in the areas impacted by Chevron and its subsidiaries." Although Amazon Watch was founded in 1996 and admittedly has worked on "advocacy" relating to "Chevron and its subsidiaries" for "decades," we narrowed the timeframe to January 1, 2000, through the present.

Let us know if you have any questions.

Best,

Enrique

**Enrique A. Monagas**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8353 • Fax +1 415.374.8403
EMonagas@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

---

# EXHIBIT B

# EXHIBIT 3016

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| 1 | **Text of Request**:<br><br>All DOCUMENTS RELATED TO the scope of YOUR authority to represent or act on behalf of the LAGO AGRIO PLAINTIFFS in Ecuador, the United States, Canada or any other jurisdiction in which the LAGO AGRIO PLAINTIFFS are now seeking or plan to seek enforcement of the LAGO AGRIO JUDGMENT.<br><br>**Request as Modified**:<br><br>All DOCUMENTS discussing, referring to, or evidencing YOUR authority or YOUR authority to represent or act on behalf of the LAGO AGRIO PLAINTIFFS in Ecuador, the United States, Canada or any other jurisdiction in which the LAGO AGRIO PLAINTIFFS are now seeking or plan to seek enforcement of the LAGO AGRIO JUDGMENT.<br><br>Patton Boggs is also required to produce executed retention agreements. | • Purported authority to act on behalf of the LAPs (and the extent to which the lack of authority would be fraud on the court);<br><br>• Management and control of RICO enterprise;<br><br>• Role in procurement and enforcement of fraudulent judgment;<br><br>• Illicit pressure campaign |
| 2 | **Text of Request**:<br><br>All DOCUMENTS RELATED TO YOUR actual or potential involvement in the PREPARATION of any brief, motion, or pleading in connection with the LAGO AGRIO LITIGATION or the appeal of the LAGO AGRIO JUDGMENT.<br><br>**Request as Modified**:<br><br>All DOCUMENTS RELATED TO YOUR involvement in the PREPARATION of any brief, motion, or pleading in connection with the LAGO AGRIO LITIGATION, the alegato, the cleansing motions, and any post-judgment motion or application. | • Judgment fraud;<br><br>• Extortion;<br><br>• Role in procurement and enforcement of fraudulent judgment;<br><br>• Illicit pressure campaign. |

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| 3 | **Text of Request**: <br><br> All DOCUMENTS RELATED TO YOUR travel to Ecuador RELATED TO CHEVRON or the CHEVRON LITIGATIONS, including but not limited to passports, itineraries, credit card bills, receipts, invoices, expense reports, notes, sketches, diaries, calendars, trip logs, photographs, and video recordings. <br><br> **Request as Modified**: <br><br> A single travel log relating to YOUR travel to Ecuador, including the identity of each attorney, the arrival and departure dates of each trip and, with respect to each meeting relating to the Chevron litigations in any way, the dates, times, durations, and participants of such meetings. | • Role in procurement and enforcement of fraudulent judgment; <br><br> • Travel log would corroborate key dates and meetings with judges, experts, others in Ecuador. |
| 5 | All DOCUMENTS RELATED TO any travel by any of the LAGO AGRIO PLAINTIFFS, any of the non-U.S. resident RICO DEFENDANTS or any of the non-U.S. resident CO-CONSPIRATORS to the United States RELATED TO CHEVRON or the CHEVRON LITIGATIONS, including but not limited to passports, itineraries, credit card bills, receipts, invoices, expense reports, notes, sketches, diaries, calendars, trip logs, photographs, and video recordings. | • Judgment fraud; <br><br> • Extortion; <br><br> • Illicit pressure campaign. |
| 8 | All DOCUMENTS RELATED TO any power of attorney granted by any LAGO AGRIO PLAINTIFF to anyone, including but not limited to YOU, Pablo Fajardo Mendoza, Luis Yanza, Julio Prieto Mendéz, Juan Pablo Sáenz, or Ermel Chávez, related to the LAGO AGRIO LITIGATION. | • Patton Boggs's and others' purported authority to act on behalf of the LAPs (and the extent to which the lack of authority would be fraud on the court); <br> • Management and control of RICO enterprise; <br> • Role in enforcement of fraudulent |

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| | | judgment. |
| 9 | **Text of Request**: <br><br> All DOCUMENTS RELATED TO the funding of the LAGO AGRIO LITIGATION or the CRIMINAL CASES. <br><br> **Request as Modified**: <br><br> All final executed funding agreements relating to the LAGO AGRIO LITIGATION or the CRIMINAL CASES. | • Extortion; procurement and enforcement of fraudulent judgment; <br><br> • Management of RICO enterprise; <br><br> • Money laundering; <br><br> • Fraud on third-party funders of litigation. |
| 13 | All DOCUMENTS RELATED TO meetings or COMMUNICATIONS between any PERSON on the one hand, and the ROE, on the other hand, REGARDING CHEVRON or the CHEVRON LITIGATIONS, including but not limited to meetings or COMMUNICATIONS with President Rafael Correa and his staff, all government ministries (including the Ministry of Environment), all executive branch agencies, prosecutors, legislators, judicial bodies, and judges. | • Extortion; <br><br> • Procurement and enforcement of fraudulent judgment; <br><br> • Unlawful threats to and intimidation of members of judiciary; <br><br> • Bribery; <br><br> • Improper government influence over result of Lago Agrio litigation. |
| 14 | All DOCUMENTS RELATED TO the writing, drafting, creation, editing, advance knowledge of, or revision by any of the LAGO AGRIO PLAINTIFF RELATED PARTIES of any official communication, order, statement, ruling, report, judgment, sentencia, escrito, providencia, edict, or other writing issued by the LAGO AGRIO COURT, any appellate court reviewing any ruling of the LAGO | • Extortion; <br><br> • Role in procurement and enforcement of fraudulent judgment; <br><br> • Unlawful threats to and intimidation |

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| | AGRIO COURT, or ROE REGARDING CHEVRON or the CHEVRON LITIGATIONS. | of members of judiciary;<br><br>• Illicit pressure campaign;<br><br>• Bribery. |
| 16 | All DOCUMENTS RELATED TO the CRIMINAL CASES and any purported basis for the CRIMINAL CASES, including documents PROVIDED to the Ecuadorian Attorney General in support of criminal prosecution. | • Extortion;<br><br>• Judgment fraud;<br><br>• Role in procurement and enforcement of fraudulent judgment;<br><br>• Illicit pressure campaign. |
| 17 | All DOCUMENTS RELATED TO any suspected, purported, or actual fraudulent testing, sampling, or measuring of samples by the LAGO AGRIO PLAINTIFFS, the LAGO AGRIO PLAINTIFF RELATED PARTIES, the LAGO AGRIO PLAINTIFF CONSULTANTS, the LAGO AGRIO PLAINTIFF LABORATORIES or CHEVRON. | • Extortion;<br><br>• Procurement and enforcement of fraudulent judgment;<br><br>• Illicit pressure campaign;<br><br>• Manufacturing of evidence in Lago Agrio litigation. |
| 18 | All DOCUMENTS RELATED TO Dr. Charles Calmbacher including but not limited to:<br><br>a.      All DOCUMENTS RELATED TO the PREPARATION or filing of any DOCUMENT purportedly submitted to the LAGO AGRIO COURT by Dr. Charles Calmbacher or in the name of Dr. Charles Calmbacher;<br><br>b.      All DOCUMENTS RELATED TO any payments to Dr. Charles | • Procurement and enforcement of fraudulent judgment;<br><br>• Manufacturing of evidence in Lago Agrio litigation;<br><br>• Witness tampering |

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| | Calmbacher in connection with the LAGO AGRIO LITIGATION; and<br><br>c.  All DOCUMENTS RELATED TO COMMUNICATIONS with Dr. Charles Calmbacher RELATING TO his [March] 29, 2010 deposition. | |
| 19 | All DOCUMENTS RELATED TO any COMMUNICATIONS between any of the LAGO AGRIO PLAINTIFF RELATED PARTIES and the COURT EXPERTS, including but not limited to all AGREEMENTS with, payments or benefits conferred or to be conferred upon, the COURT EXPERTS, whether before, during, or after the COURT EXPERT's appointment by the LAGO AGRIO COURT. | • Extortion;<br><br>• Procurement and enforcement of fraudulent judgment;<br><br>• Bribery of court officials;<br><br>• Illicit pressure campaign<br><br>• Money laundering. |
| 20 | All DOCUMENTS RELATED TO the writing, drafting, creation, editing, or revision of any DOCUMENT or draft DOCUMENT or other writing filed with the LAGO AGRIO COURT, including but not limited to any DOCUMENT or draft DOCUMENT or other writing filed with the LAGO AGRIO COURT under the signature of or in the name CABRERA. | • Extortion;<br><br>• Procurement and enforcement of fraudulent judgment;<br><br>• Illicit pressure campaign<br><br>• Manufacturing evidence. |
| 21 | All DOCUMENTS RELATED TO CABRERA or the PURPORTED CABRERA TEAM, including but not limited to:<br><br>    a.    All DOCUMENTS RELATED TO the selection and appointment of CABRERA as an expert in the LAGO AGRIO LITIGATION; | • Extortion;<br><br>• Procurement and enforcement of fraudulent judgment;<br><br>• Illicit pressure campaign; |

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| | b.      All DOCUMENTS RELATED TO the inclusion of any PERSON in Annex V of the CABRERA REPORT; <br><br> c.      All COMMUNICATIONS with CABRERA or any member of the PURPORTED CABRERA TEAM; <br><br> d.      All DOCUMENTS RELATED TO meetings with CABRERA or any member of the PURPORTED CABRERA TEAM; <br><br> e.      All DOCUMENTS RELATED TO the planning, drafting, writing, revision, finalization, translation, and submission of THE CABRERA REPORTS, including but not limited to Annex H-1 of the CABRERA REPORT; <br><br> f.      All DOCUMENTS RELATED TO the CABRERA WORKPLAN; <br><br> g.      All DOCUMENTS RELATED TO the planning, drafting, writing, revision, finalization, translation, and submission of any and all filings submitted in the LAGO AGRIO LITIGATION purportedly by or in the name of CABRERA; <br><br> h.      All DOCUMENTS RELATED TO payments or compensation to CABRERA or any member of the PURPORTED CABRERA TEAM, including but not limited to payments made through the bank account referred to as the "secret account" in DONZ-HDD-0124585; <br><br> i.      All DOCUMENTS RELATED TO WORK by any of the LAGO AGRIO PLAINTIFF CONSULTANTS appearing in whole or in part in THE CABRERA REPORTS or any DOCUMENT filed in the LAGO AGRIO LITIGATION by CABRERA; <br><br> j.      All DOCUMENTS RELATED TO revisions, edits, modifications or changes made by any and all lawyers to THE CABRERA REPORTS, including | •   Manufacturing evidence; <br><br> •   Money laundering. |

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| | but not limited to changes made by or at the direction of any LAGO AGRIO PLAINTIFF RELATED PARTY who is or purports to be a lawyer;<br><br>    k.      All DOCUMENTS RELATED TO CABRERA's independence or lack thereof or claims or statements made by any PERSON or entity relating to CABRERA's independence or lack thereof;<br><br>    l.      All DOCUMENTS RELATED TO any claims that any member of the PURPORTED CABRERA TEAM acted independent of the LAGO AGRIO PLAINTIFF RELATED PARTIES;<br><br>    m.      All DOCUMENTS RELATED TO the independence or lack of independence of any member of the PURPORTED CABRERA TEAM;<br><br>    n.      All DOCUMENTS RELATED TO public comments on the CABRERA REPORT;<br><br>    o.      All COMMUNICATIONS with the ROE RELATED TO CABRERA or THE CABRERA REPORTS;<br><br>    p.      All COMMUNICATIONS RELATED TO CABRERA or the CABRERA REPORT with any PERSON who financially supported or invested in, was asked to financially support or invest in, or offered to financially support or invest in the LAGO AGRIO LITIGATION;<br><br>    q.      All DOCUMENTS RELATED TO samples taken for THE CABRERA REPORTS; and<br><br>    r.      All DOCUMENTS RELATED TO CABRERA's scheduled deposition, including but not limited to COMMUNICATIONS among any of the LAGO AGRIO PLAINTIFF RELATED PARTIES REGARDING pressuring the | |

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| | LAGO AGRIO COURT to prevent the deposition | |
| 22 | All DOCUMENTS RELATED TO the work of Uhl, Baron, Rana & Associates for the LAGO AGRIO PLAINTIFFS, or any attempts to pass off that work as being on behalf of CABRERA or to conceal any facts related to that work. | • Extortion; <br><br> • Procurement and enforcement of fraudulent judgment; <br><br> • Illicit pressure campaign; <br><br> • Manufacturing evidence. |
| 23 | All DOCUMENTS RELATED TO the work of the POST-CABRERA CLEANSING CONSULTANTS, including but not limited to the Weinberg Group, Douglas C. Allen, P.A.; Jonathan Shefftz; JShefftz Consulting; Lawrence W. Barnthouse; Carlos E. Picone; Daniel L. Rourke; R. Paolo Scardina; Alejandro Garro; Dagmar Schmidt Etkin; Environmental Research Consultants; Industrial Economics, Inc.; and any other PERSONS whose work was sought for the purpose of submitting reports to the LAGO AGRIO COURT REGARDING damages assessments in 2010, or any attempts to pass off their work as not being dependent on any of CABRERA's alleged work product or to conceal any facts related to their work. | • Extortion; <br><br> • Role in procurement and enforcement of fraudulent judgment; <br><br> • Illicit pressure campaign; <br><br> • Manufacturing evidence. |
| 24 | All DOCUMENTS RELATED TO the writing, drafting, creation, editing, or revision of any DOCUMENT or draft DOCUMENT or other writing filed with the LAGO AGRIO COURT under the signature of, in the name of, or purported to be authored by, any of the POST-CABRERA CLEANSING CONSULTANTS. | • Extortion; <br><br> • Procurement and enforcement of fraudulent judgment; <br><br> • Manufacturing evidence; <br><br> • Illicit pressure campaign. |

8

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| 26 | **Text of Request**:<br><br>All DOCUMENTS RELATED TO COMMUNICATIONS between the LAGO AGRIO PLAINTIFFS or any of the LAGO AGRIO PLAINTIFF RELATED PARTIES, on the one hand, and any judge, official, or employee of the LAGO AGRIO COURT, or any judge, official, or employee of any other court in the ROE, on the other hand, RELATED TO the CHEVRON LITIGATIONS.<br><br>**Request as Modified**:<br><br>All DOCUMENTS RELATED TO COMMUNICATIONS between the LAGO AGRIO PLAINTIFFS or any of the LAGO AGRIO PLAINTIFF RELATED PARTIES, on the one hand, and any judge, official, or employee of the LAGO AGRIO COURT, or any judge, official, or employee of any other court in the ROE, on the other hand, RELATED TO the CHEVRON LITIGATIONS.<br><br>The term "LAGO AGRIO PLAINTIFF RELATED PARTIES" shall mean the "RICO DEFENDANTS, COCONSPIRATORS, FRONT, ASSEMBLY OF THE AFFECTED; LAGO AGRIO PLAINTIFF LAW FIRMS; LAGO AGRIO PLAINTIFF CONSULTANTS; LAGO AGRIO PLAINTIFF LOBBYISTS; LAGO AGRIO PLAINTIFFS PUBLIC RELATIONS CONSULTANTS," for purposes of this Specification. [Tr. 95:15-22.]." | • Extortion;<br><br>• Procurement and enforcement of fraudulent judgment;<br><br>• Unlawful threats to and intimidation of members of the judiciary;<br><br>• Bribery;<br><br>• Money laundering. |
| 27 | **Text of Request**:<br><br>All DOCUMENTS RELATED TO Judge Alberto Guerra Bastidas; Judge Efrain Novillo Guzmán; Judge Germán Yánez Ricardo Ruiz; Judge Juan Evangelista Núñez Sanabria; Judge Leonardo Ordóñez Pina; and Judge Nicolás Augusto Zambrano Lozada in both their judicial and nonjudicial capacities. | • Extortion;<br><br>• Procurement and enforcement of fraudulent judgment;<br><br>• Unlawful threats to and intimidation of members of the judiciary; |

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| | **Request as Modified**:<br><br>All DOCUMENTS RELATED TO communications, actual or proposed, with Judge Alberto Guerra Bastidas; Judge Efrain Novillo Guzmán; Judge Germán Yánez Ricardo Ruiz; Judge Juan Evangelista Núñez Sanabria; Judge Leonardo Ordóñez Pina; and Judge Nicolás Augusto Zambrano Lozada in both their judicial and nonjudicial capacities relating to the LAGO AGRIO LITIGATION. | • Bribery;<br><br>• Illicit pressure campaign;<br><br>• Money laundering. |
| 28 | All DOCUMENTS RELATED TO the drafting, use, and distribution of the UNFILED LAGO AGRIO PLAINTIFFS' WORK PRODUCT in connection with the LAGO AGRIO JUDGMENT or any appellate court review of the LAGO AGRIO JUDGMENT. | • Extortion;<br><br>• Procurement and enforcement of fraudulent judgment;<br><br>• Manufacturing evidence;<br><br>• Unlawful threats and intimidation of members of judiciary;<br><br>• Money laundering;<br><br>• Bribery. |
| 29 | All DOCUMENTS RELATED TO the writing, drafting, editing, advance knowledge of, or revision of the LAGO AGRIO JUDGMENT by any of the LAGO AGRIO PLAINTIFF RELATED PARTIES. | • Extortion;<br><br>• Procurement and enforcement of fraudulent judgment;<br><br>• Manufacturing evidence;<br><br>• Unlawful threats and intimidation of |

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| | | members of judiciary;<br><br>• Money laundering;<br><br>• Bribery. |
| 30 | All DOCUMENTS PROVIDED by any LAGO AGRIO PLAINTIFF RELATED PARTY for use in any way by the author(s) of the LAGO AGRIO JUDGMENT, but not contained in the RECORD. | • Extortion;<br><br>• Procurement and enforcement of fraudulent judgment;<br><br>• Manufacturing evidence;<br><br>• Unlawful threats and intimidation of members of judiciary;<br><br>• Money laundering;<br><br>• Illicit pressure campaign;<br><br>• Bribery. |
| 31 | **Text of Request**:<br><br>All DOCUMENTS and COMMUNICATIONS of the LAGO AGRIO PLAINTIFF RELATED PARTIES RELATED TO the proposing, writing, drafting, creation, editing, advance knowledge, or revision of any order, statement, ruling, report, or other writing RELATED TO the LAGO AGRIO LITIGATION and issued by the LAGO AGRIO COURT, including any commenting or advising as to the content of the same.<br><br>**Request as Modified**: | • Extortion;<br><br>• Procurement and enforcement of fraudulent judgment;<br><br>• Manufacturing evidence;<br><br>• Unlawful threats and intimidation of members of judiciary;<br><br>• Money laundering; |

11

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| | All DOCUMENTS and COMMUNICATIONS of the LAGO AGRIO PLAINTIFF RELATED PARTIES RELATED TO the proposing, writing, drafting, creation, editing, advance knowledge, or revision of any order, statement, ruling, report, or other writing RELATED TO the LAGO AGRIO LITIGATION and issued by the LAGO AGRIO COURT, including but not limited to the LAGO AGRIO JUDGMENT, including any commenting or advising as to the content of the same.<br><br>"Specification 31 is modified by limiting the term 'LAGO AGRIO PLAINTIFF RELATED PARTIES' as used therein to the 'RICO DEFENDANTS, COCONSPIRATORS, FRONT, ASSEMBLY OF THE AFFECTED; LAGO AGRIO PLAINTIFF LAW FIRMS; LAGO AGRIO PLAINTIFF CONSULTANTS; LAGO AGRIO PLAINTIFF LOBBYISTS; LAGO AGRIO PLAINTIFFS PUBLIC RELATIONS CONSULTANTS'" | • Illicit pressure campaign;<br><br>• Bribery. . |
| 32 | **Text of Request**:<br><br>All DOCUMENTS and COMMUNICATIONS with the ROE RELATED TO the proposing, writing, drafting, creation, editing, advance knowledge, or revision of any order, statement, ruling, report, or other writing issued in the Lago Agrio litigation, including any commenting or advising as to the content of the same.<br><br>**Request as Modified**:<br><br>All DOCUMENTS and COMMUNICATIONS with the ROE RELATED TO the proposing, writing, drafting, creation, editing, advance knowledge, or revision of any order, statement, ruling, report, or other writing issued in the Lago Agrio litigation by the LAGO AGRIO COURT or the LAGO AGRIO APPELLATE PANEL, including but not limited to the LAGO AGRIO JUDGMENT, including any commenting or advising as to the content of the same. | • Extortion;<br><br>• Procurement and enforcement of fraudulent judgment;<br><br>• Manufacturing evidence;<br><br>• Unlawful threats and intimidation of members of judiciary;<br><br>• Bribery;<br><br>• Money laundering;<br><br>• Illicit pressure campaign;<br><br>• Improper government influence over |

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| | | result of Lago Agrio litigation. |
| 33 | All DOCUMENTS RELATED TO the constitution or make-up of the LAGO AGRIO APPELLATE COURT or LAGO AGRIO APPELLATE PANEL in connection with the LAGO AGRIO LITIGATION, including but not limited to the nomination, appointment, removal, dismissal, or recusal of Judge Wilfrido Enrique Erazo Araujo, Judge Luis Alberto Legña Zambrano, Judge Juan Carlos Encarnación Sanchez, Judge Cruz María Ávila Delgado, Judge Marco Antonio Yaguache Mora, Judge Milton David Rafael Toral Zevallos, and Judge Alejandro Kleber Orellana Pineda, including any "sorteos" (lotteries) and COMMUNICATIONS between the LAGO AGRIO PLAINTIFF RELATED PARTIES and the ROE REGARDING the same. | • Extortion;<br><br>• Procurement and enforcement of fraudulent judgment;<br><br>• Manufacturing evidence;<br><br>• Unlawful threats and intimidation of members of judiciary;<br><br>• Bribery;<br><br>• Money laundering;<br><br>• Improper government influence over result of Lago Agrio litigation. |
| 34 | **Text of Request**:<br><br>All DOCUMENTS RELATED TO Judge Milton David Toral Cevallos, Judge Luis Alberto Legña Zambrano, Judge Alejandro Kleber Orellana Pineda, Judge Juan Carlos Encarnación Sanchez, Judge Cruz María Ávila Delgado, Judge Wilfrido Enrique Erazo Araujo or Judge Marco Antonio Yaguache Mora in both their judicial and nonjudicial capacities.<br><br>**Request as Modified**:<br><br>All DOCUMENTS RELATED TO communications actual or proposed with | • Extortion;<br><br>• Procurement and enforcement of fraudulent judgment;<br><br>• Manufacturing evidence;<br><br>• Unlawful threats and intimidation of members of judiciary;<br><br>• Money laundering; |

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| | Judge Milton David Toral Cevallos, Judge Luis Alberto Legña Zambrano, Judge Alejandro Kleber Orellana Pineda, Judge Juan Carlos Encarnación Sanchez, Judge Cruz María Ávila Delgado, Judge Wilfrido Enrique Erazo Araujo or Judge Marco Antonio Yaguache Mora in both their judicial and nonjudicial capacities relating to the LAGO AGRIO LITIGATION. | • Bribery. |
| 37 | All DOCUMENTS RELATED TO Steven Donziger's allocation or distribution of any of the proceeds RELATED TO the LAGO AGRIO JUDGMENT including all COMMUNICATIONS RELATING TO the same. | • Extortion;<br><br>• Role in procurement and enforcement of fraudulent judgment;<br><br>• Money laundering;<br><br>• Bribery;<br><br>• Role in RICO enterprise. |
| 40 | All DOCUMENTS RELATED TO any COMMUNICATIONS by any of the LAGO AGRIO PLAINTIFF RELATED PARTIES with any current or former elected or appointed government official of the government of the United States or any state, territory, or possession thereof including any city or town RELATED TO CABRERA, alleged remediation costs or remediation damages in the Oriente attributable to CHEVRON, the extent of alleged environmental harms in the Oriente attributable to CHEVRON, any alleged fraud in connection with the TEXPET REMEDIATION AND RELEASE, the supposed independence of the LAGO AGRIO PLAINTIFFS from the Ecuadorian Government, and the supposed independence or integrity of the Ecuadorian judiciary in adjudicating the CHEVRON LITIGATIONS. This includes but is not limited to the President, any ambassador, governor, attorney general, mayor, legislator, controller, or | • Extortion;<br><br>• Procurement and enforcement of fraudulent judgment;<br><br>• False statements in judicial proceedings;<br><br>• Illicit pressure campaign;<br><br>• False statements to public officials. |

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| | comptroller.<br><br>**Note**:<br><br>The parties addressed this request at a subsequent meet-and-confer. Chevron has agreed to modify the definition of "Lago Agrio Plaintiff Related Parties" so as to exclude "PURPORTED CABRERA TEAM;" "POST-CABRERA CLEANSING CONSULTANTS;" LAGO AGRIO PLAINTIFF LABORATORIES;" LAGO AGRIO PLAINTIFF ACTIVISTS;" "and any other PERSON working for or on behalf of the LAGO AGRIO PLAINTIFFS." Chevron has also added language seeking communications relating to "AMAZON WATCH; RAINFOREST ACTION NETWORK; Acción Ecológica, including employees of Acción Ecológica; Simon Billenness;" and "any other PERSON employed, paid or contracted with to perform services for the LAGO AGRIO PLAINTIFFS." | |
| 41 | All DOCUMENTS RELATED TO any COMMUNICATION by any of the LAGO AGRIO PLAINTIFF RELATED PARTIES with any United States Government Agency or its employees including the Securities and Exchange Commission, the Department of Justice, the Department of State, and the Office of the United States Trade Representative RELATED TO CABRERA, the extent of the alleged remediation costs or remediation damages in the Oriente attributable to CHEVRON, the extent of alleged environmental harms in the Oriente attributable to CHEVRON, any alleged fraud in connection with the TEXPET REMEDIATION AND RELEASE, the supposed independence of the LAGO AGRIO PLAINTIFFS from the Ecuadorian Government, the supposed independence of the Ecuadorian judiciary in adjudicating the CHEVRON LITIGATIONS, the LAGO AGRIO JUDGMENT, the LAGO AGRIO APPELLATE DECISION, the LAGO AGRIO APPELLATE CLARIFICATION ORDER, enforcement of the LAGO AGRIO JUDGMENT, and attachment of CHEVRON'S assets. | • Extortion;<br><br>• Procurement and enforcement of fraudulent judgment;<br><br>• False statements in judicial proceedings;<br><br>• Illicit pressure campaign;<br><br>• False statements to public officials. |

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| | **Note**: <br><br> The parties addressed this request at a subsequent meet-and-confer. Chevron has agreed to modify the definition of "Lago Agrio Plaintiff Related Parties" so as to exclude "PURPORTED CABRERA TEAM;" "POST-CABRERA CLEANSING CONSULTANTS;" LAGO AGRIO PLAINTIFF LABORATORIES;" LAGO AGRIO PLAINTIFF ACTIVISTS;" "and any other PERSON working for or on behalf of the LAGO AGRIO PLAINTIFFS." Chevron has also added language seeking communications relating to "AMAZON WATCH; RAINFOREST ACTION NETWORK; Acción Ecológica, including employees of Acción Ecológica; Simon Billenness;" and "any other PERSON employed, paid or contracted with to perform services for the LAGO AGRIO PLAINTIFFS." | |
| 42 | All DOCUMENTS RELATED TO any COMMUNICATION by any of the LAGO AGRIO PLAINTIFF RELATED PARTIES with any State Attorney General's Office or its employees REGARDING CHEVRON or the CHEVRON LITIGATIONS. <br><br> **Note**: <br><br> The parties addressed this request at a subsequent meet-and-confer. Chevron has agreed to modify the definition of "Lago Agrio Plaintiff Related Parties" so as to exclude "PURPORTED CABRERA TEAM;" "POST-CABRERA CLEANSING CONSULTANTS;" LAGO AGRIO PLAINTIFF LABORATORIES;" LAGO AGRIO PLAINTIFF ACTIVISTS;" "and any other PERSON working for or on behalf of the LAGO AGRIO PLAINTIFFS." Chevron has also added language seeking communications relating to "AMAZON WATCH; RAINFOREST ACTION NETWORK; Acción Ecológica, including employees of Acción Ecológica; Simon Billenness;" and "any other PERSON employed, paid or contracted with to perform services for the LAGO AGRIO PLAINTIFFS." | • Extortion; <br><br> • Procurement and enforcement of fraudulent judgment; <br><br> • Illicit pressure campaign; <br><br> • False statements to public officials. |

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| 43 | All DOCUMENTS RELATED TO any COMMUNICATION by any of the LAGO AGRIO PLAINTIFF RELATED PARTIES with any State's Office of the Comptroller or its employees including the Office of the New York State Comptroller, and the California State Controller's Office REGARDING CHEVRON or the CHEVRON LITIGATIONS.<br><br>**Note**:<br><br>The parties addressed this request at a subsequent meet-and-confer. Chevron has agreed to modify the definition of "Lago Agrio Plaintiff Related Parties" so as to exclude "PURPORTED CABRERA TEAM;" "POST-CABRERA CLEANSING CONSULTANTS;" LAGO AGRIO PLAINTIFF LABORATORIES;" LAGO AGRIO PLAINTIFF ACTIVISTS;" "and any other PERSON working for or on behalf of the LAGO AGRIO PLAINTIFFS." Chevron has also added language seeking communications relating to "AMAZON WATCH; RAINFOREST ACTION NETWORK; Acción Ecológica, including employees of Acción Ecológica; Simon Billenness;" and "any other PERSON employed, paid or contracted with to perform services for the LAGO AGRIO PLAINTIFFS." | • Extortion;<br><br>• Procurement and enforcement of fraudulent judgment;<br><br>• Illicit pressure campaign;<br><br>• False statements to public officials |
| 44 | All DOCUMENTS RELATED TO any submission of letters, requests, complaints, or petitions on behalf of any of the LAGO AGRIO PLAINTIFF RELATED PARTIES to any international agency, including the International Commission of Jurists, the Inter-American Commission on Human Rights, the Organization of American States, Hina Jilani, or the United Nations and sub-agencies, commissions, and committees thereof RELATED TO CHEVRON or the CHEVRON LITIGATIONS.<br><br>**Note**:<br><br>The parties addressed this request at a subsequent meet-and-confer. Chevron has | • Extortion;<br><br>• Procurement and enforcement of fraudulent judgment;<br><br>• Illicit pressure campaign;<br><br>• False statements to public officials. |

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| | agreed to modify the definition of "Lago Agrio Plaintiff Related Parties" so as to exclude "PURPORTED CABRERA TEAM;" "POST-CABRERA CLEANSING CONSULTANTS;" LAGO AGRIO PLAINTIFF LABORATORIES;" LAGO AGRIO PLAINTIFF ACTIVISTS;" "and any other PERSON working for or on behalf of the LAGO AGRIO PLAINTIFFS." Chevron has also added language seeking communications relating to "AMAZON WATCH; RAINFOREST ACTION NETWORK; Acción Ecológica, including employees of Acción Ecológica; Simon Billenness;" and "any other PERSON employed, paid or contracted with to perform services for the LAGO AGRIO PLAINTIFFS." | |
| 45 | All DOCUMENTS RELATED TO any statement or testimony prepared or given to any committee within the United States Congress RELATED TO CHEVRON or the CHEVRON LITIGATIONS.<br><br>**Note**:<br><br>The parties addressed this request at a subsequent meet-and-confer. Chevron has agreed to modify the definition of "Lago Agrio Plaintiff Related Parties" so as to exclude "PURPORTED CABRERA TEAM;" "POST-CABRERA CLEANSING CONSULTANTS;" LAGO AGRIO PLAINTIFF LABORATORIES;" LAGO AGRIO PLAINTIFF ACTIVISTS;" "and any other PERSON working for or on behalf of the LAGO AGRIO PLAINTIFFS." Chevron has also added language seeking communications relating to "AMAZON WATCH; RAINFOREST ACTION NETWORK; Acción Ecológica, including employees of Acción Ecológica; Simon Billenness;" and "any other PERSON employed, paid or contracted with to perform services for the LAGO AGRIO PLAINTIFFS." | • Extortion;<br><br>• Procurement and enforcement of fraudulent judgment;<br><br>• Illicit pressure campaign;<br><br>• False statements to public officials. |
| 47 | All DOCUMENTS RELATED TO COMMUNICATIONS with Karen Hinton REGARDING CHEVRON, the CHEVRON LITGATIONS, or consideration of | • Extortion;<br><br>• Procurement and enforcement of |

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| | enforcing or attempting to enforce the LAGO AGRIO JUDGMENT. | fraudulent judgment; <br><br>• Illicit pressure campaign; <br><br>• False statements to public officials. |
| 49 | All DOCUMENTS RELATED TO payments of any kind made or given by any person or entity to any official, court expert, employee, representative or agent of the LAGO AGRIO COURT, including but not limited to compensation, bonuses, bribes, awards, honorariums, or gifts or exchanges of money, goods or services, regardless of form and regardless of whether such payments were ever actually offered or delivered. | • Extortion; procurement and enforcement of fraudulent judgment; <br><br>• Manufacturing evidence; <br><br>• Unlawful threats and intimidation of members of judiciary; <br><br>• Bribery; <br><br>• Money laundering; <br><br>• Improper government influence over result of Lago Agrio litigation. |
| 52 | All DOCUMENTS RELATED TO COMMUNICATIONS with stock market analysts, energy industry analysts, energy industry journalists, or other MEDIA professionals RELATED TO CABRERA, alleged remediation costs or remediation damages in the Oriente attributable to CHEVRON, the extent of alleged environmental harms in the Oriente attributable to CHEVRON, any alleged fraud in connection with the TEXPET REMEDIATION AND RELEASE, the supposed independence of the LAGO AGRIO PLAINTIFFS from the | • Extortion; <br><br>• Illicit pressure campaign. |

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| | Ecuadorian Government, and the supposed independence or integrity of the Ecuadorian judiciary in adjudicating the CHEVRON LITIGATIONS. | |
| 53 | All DOCUMENTS RELATED TO any protests, rallies, marches, demonstrations, or other events (as well as all DOCUMENTS RELATED TO the entities which have organized, promoted, financed, or otherwise furthered these activities) REGARDING CHEVRON or the CHEVRON LITIGATIONS.<br><br>**Note**:<br><br>The parties addressed this request in a subsequent meet-and-confer.  Chevron has agreed to delete the phrase "or other events." | • Judgment fraud;<br><br>• Extortion;<br><br>• Role in procurement or enforcement of fraudulent judgment;<br><br>• Obstruction of justice;<br><br>• Unlawful threats and intimidation of members of judiciary. |
| 54 | All DOCUMENTS RELATED to any COMMUNICATIONS between any of the LAGO AGRIO PLAINTIFF RELATED PARTIES, on the one hand, and any non-governmental organization ("NGO") or its employees, on the other hand, REGARDING CHEVRON or the CHEVRON LITIGATIONS.<br><br>**Note**:<br><br>The parties addressed this request at a subsequent meet-and-confer.  Chevron has agreed to modify the definition of "Lago Agrio Plaintiff Related Parties" so as to exclude "PURPORTED CABRERA TEAM;" "POST-CABRERA CLEANSING CONSULTANTS;" LAGO AGRIO PLAINTIFF LABORATORIES;" LAGO AGRIO PLAINTIFF ACTIVISTS;" "and any other PERSON working for or on behalf of the LAGO AGRIO PLAINTIFFS." Chevron has also added language seeking communications relating to "AMAZON WATCH; RAINFOREST ACTION NETWORK; Acción Ecológica, including employees of Acción | • Judgment fraud;<br><br>• Extortion;<br><br>• Role in procurement or enforcement of fraudulent judgment;<br><br>• Obstruction of justice; |

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| | Ecológica; Simon Billenness;" and "any other PERSON employed, paid or contracted with to perform services for the LAGO AGRIO PLAINTIFFS." **Note**: The term NGO shall be defined to encompass the organizations listed in the 2012.11.27 letter from R. Mastro to A. Young. | |
| 55 | All DOCUMENTS RELATED TO COMMUNICATIONS among the LAGO AGRIO PLAINTIFF RELATED PARTIES REGARDING any plan on the part of any LAGO AGRIO PLAINTIFF RELATED PARTIES, COURT EXPERTS, or other deponents, to avoid providing responsive answers to questioning during depositions conducted in the CHEVRON LITIGATIONS, including but not limited to the 1782 ACTIONS. | • Extortion;<br><br>• Procurement and enforcement of fraudulent judgment;<br><br>• Manufacturing evidence;<br><br>• Suborning perjury;<br><br>• Obstruction of justice;<br><br>• Witness tampering. |
| 56 | All DOCUMENTS RELATED TO any tampering or influencing of any witness' testimony in any of the CHEVRON LITIGATIONS whether made or contemplated, including the discouragement of witnesses from appearing for their depositions. | • Extortion;<br><br>• Procurement and enforcement of fraudulent judgment;<br><br>• Manufacturing evidence;<br><br>• Suborning perjury;<br><br>• Obstruction of justice;<br><br>Witness tampering. |

| Request Number | Text of Request (as modified where applicable) | Areas of Crime, Fraud, or Other Misconduct at Issue |
|---|---|---|
| 57 | All DOCUMENTS RELATED TO any THREATS made by any of the LAGO AGRIO PLAINTIFF RELATED PARTIES to any individual who has testified, or been deposed during the LAGO AGRIO LITIGATION or the 1782 Actions. | <ul><li>Extortion;</li><li>Procurement and enforcement of fraudulent judgment;</li><li>Manufacturing evidence;</li><li>Suborning perjury;</li><li>Obstruction of justice;</li><li>Witness tampering.</li></ul> |
| 58 | All DOCUMENTS RELATED TO COMMUNICATIONS between and among the LAGO AGRIO PLAINTIFF RELATED PARTIES, whether or not including any third party, REGARDING efforts to delay or obstruct CHEVRON'S discovery efforts in any of the CHEVRON LITIGATIONS. | <ul><li>Extortion;</li><li>Procurement and enforcement of fraudulent judgment;</li><li>Manufacturing evidence;</li><li>Suborning perjury;</li><li>Obstruction of justice;</li><li>Witness tampering.</li></ul> |

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CHEVRON CORPORATION,

     Plaintiff,

    v.          11 Civ. 0691 (LAK)

STEVEN DONZIGER et al.,

     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

---

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY PATTON BOGGS LLP'S MOTION TO QUASH SUBPOENA FOR DOCUMENTS AND FOR OTHER RELIEF**

---

after the events depicted in the outtakes from the 2009 film *Crude*, on which Chevron's Complaint relies so heavily. These events and the allegations surrounding them unmistakably form the core of Chevron's claims. In comparison, Chevron's accusations against Patton Boggs—*i.e.*, that the firm coordinated additional expert reports that cited to the Cabrera Report; that the firm fought Chevron's efforts to obtain discovery by defending against § 1782 proceedings; and that the firm is involved in enforcing the Ecuadorian judgment—are derivative of and secondary to Chevron's fraud allegations.

Indeed, this Court's stated reasoning for upholding Chevron's subpoena to Steven Donziger illustrates why the Patton Boggs subpoena must be, in contrast, quashed:

> Nor is this a case in which the applicants have sought discovery of Donziger to gain access to information that he gathered in the manner in which litigating counsel . . . normally gather information. . . . Rather, the proposed discovery focuses on matters concerning which Donziger is a percipient witness and a principal actor. In other words, the discovery is sought to shed light on what Donziger and those working with him did, allegedly in corrupting the process in Ecuador. The special solicitude ordinarily shown to litigation counsel with respect to discovery in the cases that they handle is unwarranted in these circumstances.

*In re Chevron Corp.*, 749 F.Supp.2d at 163. According to Chevron, Patton Boggs is and was a "witness and a principal actor" only in helping its clients respond to allegations of fraud regarding the Cabrera Report, and to obtain international recognition of a judgment through the prosecution of legal proceedings in countries where Chevron conducts business. In short, Patton Boggs is not a "witness" at all. It is entitled to the "special solicitude" identified by this Court.

### C.    The Subpoena Demands Largely Cumulative Discovery

Over the past two-and-a-half years, Chevron filed over 20 discovery actions pursuant to 28 U.S.C. § 1782 in 16 different jurisdictions throughout the United States. These proceedings resulted in the production of hundreds of thousands of pages of documents and roughly 320 hours of depositions. In fact, between its § 1782 proceedings and the *Salazar* proceedings,

Chevron has served 73 subpoenas, not counting the Patton Boggs Subpoena.  These prior subpoenas have the issues central to Chevron's Complaint well-covered indeed:

- *52 respondents received demands regarding the Cabrera Report*:  3TM Consulting; 3TM International; Douglas Allen, P.A.; Christopher Arthur; Banco Pichincha; Lawrence Barnthouse; Laura Belanger; Douglas Beltman; Cristobal Bonifaz; Charles Calmbacher; Charles Champ; David Chapman; Richard Clapp; Ted Dunkelberger; Steven Donziger; ELAW; E-Tech International; Laura Garr; Thomas Golojuch; Katia Fach Gomez; Google; H5; Hotmail; Peter Jones; Richard Kamp; Joseph Kohn; Kohn, Swift & Graft; Orin Kramer; Ann Maest; David Mills; Aaron Marr Page; Daria Fisher Page; Brian Parker; Jennifer Peers; Carlos Picone; William Powers; Mark Quarles; Kerry Roche; Daniel Rourke; Robert Scardina; Marla Scarola; Jonathan Shefftz; Stratus; Sun Trust Bank; Uhl, Baron, Rana & Associates; Uhl & Associates; Juan Cristobal Villao; The Weinberg Group; Matthew Weinberg; Andrew Woods; Alberto Wray; and Yahoo![10]

- *16 respondents received demands regarding the Calmbacher Report*:  Douglas Allen; Christopher Arthur; Banco del Pacifico; Charles Calmbacher; Steven Donziger; Laura Garr; Katia Fach Gomez; H5; Joseph Kohn; Kohn, Swift & Graft; Aaron Marr Page; Daria Fisher Page; Brian Parker; The Weinberg Group; Andrew Woods; and Alberto Wray.[11]

- *17 respondents received demands regarding the alleged "ghostwriting" of the Ecuadorian Judgment*:  Douglas Allen; Christopher Arthur; Richard Clapp; Steven Donziger; ELAW; Laura Garr; Katia Fach Gomez; H5; Joseph Kohn; Kohn, Swift & Graft; Orin Kramer; Aaron Marr Page; Daria Fisher Page; Brian Parker; Uhl & Associates; The Weinberg Group; and Andrew Woods.[12]

- *26 respondents received demands regarding the supplemental experts*:  Douglas Allen; Christopher Arthur; Lawrence Barnthouse; Richard Clapp; Steven Donziger; Ted Dunkelberger; ELAW; Laura Garr; Thomas Golojuch; Katia Fach Gomez; H5; Joseph Kohn; Kohn, Swift & Graft; Orin Kramer; Aaron Marr Page; Daria Fisher Page; Brian Parker; Carlos Picone; Kerry Roche; Daniel Rourke; Robert Scardina; Marla Scarola; Jonathan Shefftz; The Weinberg Group; Matthew Weinberg; and Andrew Woods.[13]

- *31 respondents received demands regarding counsel's alleged undue influence over the Ecuadorian judiciary*:  Douglas Allen; Christopher Arthur; Cristobal Bonifaz; Charles Champ; Richard Clapp; Ted Dunkelberger; Steven Donziger; E-Tech International;

---

[10] *See* Declaration of Caroline Marino ("Marino Decl."), Exs. 1; 2; 3; 4; 5; 6; 7; 8; 9; 10;  11; 12; 13; 14; 15; 16;  17; 19; 20; 21; 22; 23; 24; 25; 26;  and 28; 29; 30; 31; 32; 33; 34; 35; 36; 37; 38; 39; 40; 41; 42; 45; 46; 4748; 50; 51; 52;  53; 54; 55; 56; 57; 58; 59; 60; 61; 62; 63; 64; 65; and 66.

[11] See Marino Decl., Exs. 3; 4; 5; 7; 15; 18; 26 37; 44; 50; 52; 53; 55; 56;  57; 59; 60; 61; 62; 63; 64; and 66.

[12] *See* Marino Decl., Exs. 2; 3; 42; 45; 50; 52; 53; 54; 55; 56; 57; 59 60; 61; 62; 63; 64; 65; and 66.

[13] *See* Marino Decl., Exs., 2; 3; 4; 5; 11; 12; 13; 14; 15; 16; 17; 30; 31; 32; 33; 34; 35; 45; 50; 52; 53; 54; 55; 56; 57; 59; 60; 61; 62; 63; 65; 66; 66.

ELAW; Laura Garr; Thomas Golojuch; Katia Fach Gomez; H5; HomeTown Bank; Richard Kamp; Joseph Kohn; Kohn, Swift & Graft; Orin Kramer; Aaron Marr Page; Daria Fisher Page; Brian Parker; Carlos Picone; Kerry Roche; Daniel Rourke; Robert Scardina; Marla Scarola; Jonathan Sheffz; The Weinberg Group; Matthew Weinberg; Andrew Woods; and Alberto Wray.[14]

- *17 respondents received demands regarding alleged sham criminal charges against Chevron attorneys in Ecuador*: Cristobal Bonifaz; Charles Champ; Steven Donziger; ELAW; E-Tech International; Laura Garr; Katia Fach Gomez; H5; Richard Kamp; Joseph Kohn; Kohn, Swift & Graft; Orin Kramer; Aaron Marr Page; Daria Fisher Page; Brian Parker; Andrew Woods; and Alberto Wray.[15]

Chevron does not need to access opposing counsel counsel's litigation file for discovery concerning these same, well-tread areas of inquiry.

Chevron undoubtedly will contend that Patton Boggs' documents are somehow uniquely critical, but where it already subjected the Afectados' lead counsel for the past 19 years, Steven Donziger, to 16 days of deposition and collected more than 18,000 documents from him, that claim rings hollow. Of the 58 document requests in Chevron's Subpoena to Patton Boggs, 33 are identical and 23 are nearly identical to discovery demands issued to Mr. Donziger. *Compare* Young Decl., Ex. A with Young Decl., Ex. M. Moreover, while Chevron's principal complaint about Patton Boggs seems to be the firm's coordination of the supplemental expert reports submitted to the Sucumbíos Trial Court in September 2011, Chevron already obtained, through § 1782, a complete production of documents and testimony from all six of the experts who prepared these reports.[16] Chevron also obtained additional documents on the "cleansing report" issue from the Weinberg Group—the consulting firm hired to oversee preparation of these reports—in the U.S. District Court for the District of Columbia, and is now pursuing the

---

[14] *See* Marino Decl., Exs. 3; 6; 8; 10; 11; 13; 14; 15; 16; 17; 26; 31; 32; 33; 35; 45; 50; 52; 53; 54; 56; 57; 59; 60; 61; 62; 65; 66.

[15] *See* Marino Decl., Exs. 2; 3; 4; 5; 6; 7; 8; 9; 10; 26; 50; 52; 53; 54; 55; 57; 59; 60 61; 62; 63; 64; 65.

[16] *Chevron Corporation v. Rourke*, 8:10-cv-02989-AW (D. Md.); *Chevron Corp. v. Picone*, No. 8:10-mc-02990-AW (D.Md.); *Chevron Corp. v. Barnthouse*, No. 1:10-mc-00053-SSB (S.D. Ohio); *Chevron Corporation v. Scardina*, No. 7:10-mc-00067-JCT (W.D. Va.); *Chevron Corporation v. Allen*, No. 2:10-mc-00091-WKS (D. Vt.); *Chevron Corporation v. Sheffz,* No. 1:10-mc-10352-JLT (D. Mass.).

Weinberg Group's privileged documents in that proceeding.[17]   The possibility that Chevron could potentially acquire some quantity of additional documents from Patton Boggs regarding these subjects does not justify disrupting the adversarial process with an incursion into opposing counsel's litigation file.

## II.   THE SUBPOENA PRIMARILY SEEKS DOCUMENTS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE AND THE ATTORNEY WORK PRODUCT DOCTRINE

The attorney-client privilege "recognizes that sound legal advice or advocacy . . . depends upon the lawyer's being fully informed by the client."  *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981).  Similarly, the work product doctrine has its roots in the "orderly prosecution and defense of legal claims."  *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).  The doctrine is fundamental to our adversarial system:

> It is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.  Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. . . . This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways[.]

*Hickman*, 329 U.S. at 510–11.  "Opinion" or "core" work product—which can reveal the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative—is entitled to even greater, "special protection."  *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) (*citing United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998)); *Upjohn Co. v. United States*, 449 U.S. 383, 401–02 (1981).

For the past two years, Patton Boggs has appeared on behalf of the Afectados in numerous federal district courts and courts of appeal, and has supported co-counsel in still other jurisdictions, particularly in terms of bearing the legal-briefing load.  The vast majority of its

---

[17] *See Chevron Corporation v. The Weinberg Group*, No. 1:11-mc-00409-JMF (D. D.C.).

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
CHEVRON CORPORATION, :
:
Plaintiff, :
:
v. : 11 Civ. 0691 (LAK)
:
STEVEN DONZIGER, et al., :
:
Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**PLAINTIFF CHEVRON CORPORATION'S OPPOSITION TO PATTON
BOGGS LLP'S SUPPLEMENTAL SUBMISSION CLAIMING UNDUE
BURDEN FROM COMPLIANCE WITH MODIFIED SUBPOENA**


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

Second, there is no more "overlap" than would reasonably be expected among subpoenas in the same litigation. Patton Boggs specifically cites the subpoenas to Karen Hinton and her company, to the Rainforest Action Network, and to Amazon Watch, asserting there is "a clear overlap in discovery demands" constituting "duplicative discovery." Supp. Subm. at 13. But rhetoric aside, Patton Boggs identifies only a single discrete example of a request that supposedly "overlaps" with other discovery. It asserts that Request 47 of the subpoena improperly calls for communications with Karen Hinton because Chevron has already subpoenaed "all Chevron-related documents" from Hinton herself. *Id.* Yet even this cherry-picked example is not identical to the requests served on Hinton and her company. Request 47 to Patton Boggs is different from the corresponding request to Hinton, seeking not just communications but "ALL DOCUMENTS RELATED TO COMMUNICATIONS" with Hinton, and specifically including "consideration of enforcing or attempting to enforce the LAGO AGRIO JUDGMENT."[11] Patton Boggs's documents relating to communications with Hinton that were not transmitted to a third party could not reasonably be expected to be in the possession of anyone but Patton Boggs.

Indeed, a comparison of the Patton Boggs subpoena with the Hinton, Rainforest Action Network, and Amazon Watch subpoenas reveals no more "overlap" than would be true in any factually complex litigation involving multiple actors. Request 47 is the only request to Patton Boggs mentioning Hinton by name. Similarly, only one request (No. 10) mentions Rainforest Action Network and Amazon Watch by name.[12] As discussed in detail during the two court days

---

[11] *Compare* Elliot Decl., Ex. 10 (Patton Boggs subpoena), Request No. 47 ("All DOCUMENTS RELATED TO COMMUNICATIONS with Karen Hinton REGARDING CHEVRON, the CHEVRON LITIGATIONS, or consideration of enforcing or attempting to enforce the LAGO AGRIO JUDGMENT.") *with id.*, Ex. 11 (Hinton subpoena), Request No. 11 ("All YOUR communications with any of the LAGO AGRIO PLAINTIFFS, RICO DEFENDANTS, CO-CONSPIRATORS, or LAGO AGRIO PLAINTIFF LAW FIRMS concerning CHEVRON or the CHEVRON LITIGATIONS.").

[12] Patton Boggs relies on the fact that many of the subpoena's definitions—as sustained or modified by

of hearings before this Court in September, the requests to Patton Boggs, as narrowed by the

Court and through the meet-and-confer process, primarily seek information about Patton Boggs's

activities in perpetuating the LAPs' fraudulent scheme.[13]  Few of these documents will be in the

hands of third parties.  Similarly, the Hinton, Rainforest Action Network, and Amazon Watch

subpoenas seek documents specifically pertaining to those entities and generally not in the pos-

session of Patton Boggs.[14]  The Patton Boggs subpoena is not "duplicative discovery."

Moreover, Patton Boggs provides no legal authority justifying its argument that the sub-

poena should be quashed or yet further modified simply because Chevron has sought discovery

from related parties.  Patton Boggs claims that *Haber v. ASN 50th St., LLC*, 272 F.R.D. 377

(S.D.N.Y. 2011), stands for the proposition that a court may quash a subpoena because discovery

was already sought from another party.  But the court in *Haber* actually quashed a subpoena be-

cause it sought information "not . . . reasonably calculated to lead to the discovery of admissible

evidence."  *Id.* at 382 (internal quotation marks omitted).  The court further stated that the infor-

---

the Court—sweep in third parties like Hinton.  Supp. Subm. at 13 (citing Dkt. 660 (Declaration of S. Alyssa Young), Ex. 35).  Yet these definitions also broadly sweep in other relevant actors with whom Patton Boggs had, or may have had, contact.  The fact that non-parties who have also been subpoenaed are, among others, referenced in the Patton Boggs subpoena does not render it impermissible "duplicative discovery," nor does Patton Boggs provide any case law supporting such an assertion.

[13]  Patton Boggs claims "[t]he only requests in the modified subpoena that seek documents reasonably related to these issues [of Patton Boggs's "improper" conduct] are 2, 14, 20-21, 23-24, 28-30, and 58." Supp. Subm. at 18.  This is false, as can be shown by examining the very first two examples Patton Boggs omits from its list.  Request No. 1 seeks documents pertaining to Patton Boggs's authority to represent the LAPs in enforcement proceedings, which Chevron alleges comprise part of the ongoing conspiracy, as set forth in the Invictus Memo.  Request No. 3 pertains to the travel of Patton Boggs attorneys to Ecuador, as well as meetings in that country, which is plainly designed to target improper conduct in furtherance of the conspiracy.  Patton Boggs's attempt to cast Chevron's subpoena as seeking irrelevant materials is without merit; moreover, it has already been rejected by the Court.  Dkt. 621.

[14]  *See, e.g.*, Elliot Decl., Ex. 11 (Hinton subpoena), Nos. 1-4 (Hinton's compensation), Nos. 5-6 (communications with certain NGOs), No. 7 (various negative statements made about the instant litigation and this Court); *id.*, Ex. 12 (Rainforest Action Network subpoena), Nos. 1-4 (RAN's compensation), No. 5 (Trillium shareholder actions); *id.*, Ex. 13 (Amazon Watch subpoena), No. 13 (websites maintained by certain entities), No. 17 (rallies, marches, demonstrations, etc.).

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
CHEVRON CORPORATION,                                 :
                                                    :
                          Plaintiff,                 :
                                                    :
              v.                                     :   CASE NO. 11-CV-0691 (LAK)
                                                    :
                                                    :
STEVEN DONZIGER et al.,                              :
                                                    :
                          Defendants.                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**NON-PARTY SUBPOENA RESPONDENT PATTON BOGGS LLP'S
RESPONSE TO PLAINTIFF CHEVRON CORPORATION'S
SUPPLEMENTAL BRIEF (DKT. 657)**

specification analysis" directed by the Court (Hr'g Tr. Sept. 27, 2012, at 139:8-4), fails to satisfy its burden. Chevron cannot demonstrate its inability to obtain the information from other sources without "undue hardship" or a "substantial need" for active litigation counsel's work product given the massive amount of discovery Chevron has taken and is still taking. Chevron fails to even address the Second Circuit's heightened standard for disclosure of *opinion* work product.

### A. Chevron Cannot Demonstrate "Substantial Need" and "Undue Hardship" Necessary to Overcome the Protections Afforded Fact Work Product

A party seeking disclosure of work product has the burden of demonstrating *both* a "substantial need" and that it cannot obtain equivalent documents absent "undue hardship."[51] Chevron argues it has "substantial need" for the documents and is "unable to obtain them elsewhere without 'undue hardship'" because the "materials sought go to the core of Chevron's RICO, fraud, and other claims asserted in this litigation" and "[m]uch of the evidence also resides in Ecuador (and elsewhere)[.]" (Dkt. 657 at 24-25.) These conclusory statements are hardly sufficient to satisfy Chevron's burden: (1) Chevron already obtained extensive discovery concerning the same subject matter as its myriad demands;[52] (2) ongoing discovery promises additional information on the same or similar topics;[53] *and* (3) Chevron likely will obtain "substantially equivalent" materials from other sources.[54]

---

[51] Fed. R. Civ. P. 26(b)(3)(A); *In re Grand Jury Proceeding*, 219 F.3d 175, 190 (2d Cir. 2000).

[52] *See, e.g.*, *Discover Fin. Servs. v. Visa U.S.A., Inc.*, Nos. 04 Civ. 7844 & 04 Civ. 8967, 2006 U.S. Dist. LEXIS 94806, at *9 (S.D.N.Y. Nov. 6, 2006) (holding "substantial need" not established because party already received "voluminous discovery" including contemporaneous reports concerning the same matters at issue). The more discovery obtained from other sources, the lower likelihood a court will find "substantial need" exists as to a particular respondent. *Kodak Graphic Communs. Can. Co. v. E. I. du Pont de Nemours & Co*., No. 08-CV-6553, 2012 U.S. Dist. LEXIS 15752, at *13 (W.D.N.Y. Feb. 8, 2012) ("Where the requesting party already has 'all relevant, non-privileged evidence,' its demand that the opposing party disclose its attorney's selection and compilation of certain documents is often a thinly-veiled effort 'to ascertain how [counsel] intends to marshal the facts, documents and testimony in [his] possession, and to discover the inferences that [counsel] believes properly can be drawn from the evidence it has accumulated.").

[53] *See, e.g.*, *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 80-81 (S.D.N.Y. 2010) (finding – even where discovery went to heart of claims and defenses – defendant failed to establish "substantial need" because defendant could obtain information supporting its claims and defenses in future discovery and already possessed similar types of

Chevron filed § 1782 actions in 18 U.S. jurisdictions, issued 102 subpoenas, (Young Decl., Ex. 2), obtained approximately 320 hours of depositions, (Young Decl., Ex. 3), and received millions of document pages relating to the same or similar topics as the PB Subpoena. This includes massive amounts of material from long-time counsel Steven Donziger, which alone yielded 16 days of deposition and the forensic imaging of various computer devices. (Young Decl., Exs. 3, 26.) Chevron already obtained vast materials from numerous other sources concerning the same topics that Chevron now claims to "substantially need" from PB's litigation file.[55] Chevron is still pursuing documents from the Defendants in this action, and will pursue depositions. In addition, Chevron issued 31 additional subpoenas on the eve of the discovery deadline, many of which were directed at respondents at-issue in PB's Subpoena—e.g., Karen Hinton, Rainforest Action Network, and Amazon Watch.[56] (Dkt. 672, at 4 n.2; Young Decl., Ex. 2.) Moreover, PB discovery is ongoing—PB has yet to complete production of

---

information sought); *Ohio Cas. Grp. v. Am. Int'l Spec. Lines Ins. Co.*, No. 04 Civ. 10282, 2006 U.S. Dist. LEXIS 52070 (S.D.N.Y. 2006) (holding that "'substantial need' and 'undue hardship' do not exist where the information sought can be obtained through [upcoming] depositions or other discovery methods").

[54] *Costabile v. Westchester*, 254 F.R.D. 160, 167 (S.D.N.Y. 2008); *see also In re Woolworth Corp. Sec. Class Action Litig.*, No. 94 Civ. 2217, 1996 U.S. Dist. LEXIS 7773 (S.D.N.Y. June 7, 1996) (holding witness' inability to recall details did not create "substantial need" because another source existed where party could derive similar information); Fed. R. Civ. P. 26, 1970 Advisory Committee Note (B)(3) (instructing courts to consider "the difficulty [a party] will have in obtaining [materials] by other means" in making "substantial need" determinations).

[55] For example, (i) 52 respondents received subpoenas containing RFPs related to the Cabrera Report; (ii) 26 respondents received subpoenas containing RFPS related to the supplemental reports; and (iii) 17 respondents received subpoenas containing RFPs related to alleged "ghostwriting." (Dkt. 527, at 16.) Many of Chevron's subpoenas also targeted individuals that often communicated with PB and contain RFPs mirroring those directed to PB. (*Compare* Dkt. 529-04 at 65 (Chevron RFPs to Donziger), *with* 493-01 at 41 (PB subpoena).)

[56] In some instances, Chevron could have pursued discovery against non-parties to avoid seeking documents from PB, but withdrew its subpoenas or failed to pursue discovery altogether from non-parties, while continuing to seek the same information from PB. For example, Chevron's now focuses on the so-called "Fusion Memo" and the "Fajardo Trust Email." (Dkt. 657 at 8-10.) However, Chevron's counsel here submitted briefs to the District of Oregon claiming that it was the Environmental Law Alliance World ("ELAW") – and not PB – that "provided research assistance for th[e Fusion] Memo." (Young Decl., Ex. 17, at 20.) Chevron also argued that the Fusion Memo reflected "the very subject of ELAW's research," that the Fajardo Trust Email was drafted from "ELAW's computers and other facilities," and that "[t]here can be no question that . . . [ELAW] produc[ed] documents that would secretly be used to fraudulently write the judgment." (*Id.* at 19-21.) Despite ELAW's claimed "central" role in the alleged ghostwriting, Chevron voluntarily withdrew its § 1782 discovery application against ELAW after it was sanctioned by the District of Oregon court for discovery abuses and discontinued the discovery proceeding. (*See* Young Decl., Ex. 21.) Chevron did not serve ELAW with a subpoena in connection with this case.

its non-privileged documents or produce a log identifying documents as protected attorney work product.

It is difficult to imagine what material Chevron could possibly still have a "substantial need" for from PB. Chevron provides bald, conclusory assertions that it has a substantial need for **all** responsive work product protected information in PB's possession because it all allegedly "go[es] to the core of Chevron's" claims. (Dkt. 657 at 24–25.) As an initial matter, it is impossible that all responsive work product protected information in PB' possession "is 'essential' to the party's defense, is 'crucial' to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues."[57]

Chevron's sole "undue hardship" argument—that "[m]uch of the evidence also resides in Ecuador (and elsewhere)" (Dkt. 657 at 25)—is equally unavailing. Chevron's assertion is untethered to any specific information Chevron claims to need from PB. Chevron fails to point to even a single specific topic that "resides in Ecuador" such that it must obtain that information from PB's file. Chevron's claim that unspecified evidence regarding unspecified topics *may* reside in Ecuador is insufficient to establish "undue hardship." In fact, Chevron's claim is at odds with its repeated representations "that the [RICO] enterprise was directed *from the United States*," that "[t]he Defendants fraudulently drafted the Cabrera Report *in the United States*; made and publicized fraudulent statements *in the United States* as a means of extorting money . . .; tampered with witnesses *in the United States*; and concealed their ongoing fraud *in the United States*." (Dkt. 324, at 1 (emphasis added).) Finally, even assuming *arguendo* that some discovery was available in Ecuador that cannot be obtained through party discovery or from one of Chevron's 30 pending subpoenas, Chevron has conceded that it could have sought relevant

---

[57] *Gucci Am., Inc.*, 271 F.R.D. at 81. Indeed, in this Court (and throughout the world) Chevron has declared repeatedly that it already has conclusively established the alleged fraud underlying its claims. Thus, according to Chevron, the company does not need any of this material.

discovery from Ecuador through the letters rogatory process or through other discovery mechanisms, but chose not to pursue such discovery.[58]  Chevron does not explain why these means would not be appropriate here.

Chevron's conclusory assertions of "substantial need" and "undue hardship" are factually flawed and legally inadequate.[59]  Chevron cites no authority suggesting work product can be overcome as to large categories of documents based on wholesale, *en masse* determinations of substantial need and undue hardship.[60]  In fact, courts ordinarily engage in a careful topic-by-topic and often document-by-document analysis after production of a log identifying documents withheld.[61]  Often courts engage in *in camera* review of work product protected materials before dissolving protections.[62]

---

[58] (*See* Young Decl., Ex. 22, at 12:8-25 (hearing transcript from S.D. Fla. § 1782 proceeding) ("THE COURT: Have you deposed [Richard Cabrera]?  [CHEVRON COUNSEL]:  No, Your Honor.  He's in Ecuador.  We've not been able to reach him. . . . .  There is the possibility of letters rogatory. . . . .  THE COURT:  Why didn't you do it a year ago?  When did this lawsuit start up in New York? . . . .  So why'd you wait 'til now to get the – to try to get these records?").)  The United States Court of Appeals for the Fifth Circuit has also noted that "doubt exists as to whether Chevron has been and timely in" seeking discovery in aid of foreign proceedings.  (Young Decl., Ex. 23.)  Chevron recently demonstrated that it is capable of expeditiously serving letters rogatory in Ecuador without any undue hardship.  (*Compare* Young Decl., Ex. 24 (D.D.C. order issuing letters rogatory on Aug. 22, 2012 at Chevron's request), *with* Young Decl., Ex. 25, at 1 (noting respondent served in Ecuador with Petition via letters rogatory Oct. 8, 2012).)

[59] *See, e.g., Hallmark Cards, Inc. v. Murley*, No. 09-0377, 2010 U.S. Dist. LEXIS 120186, at *17 (S.D.N.Y. Nov. 10, 2010).

[60] Chevron appears to acknowledge the flawed nature of its conclusory arguments when it purports to "reserve[] the right to make a further showing of . . . substantial need and inability to obtain the materials without undue burden, once PB produces a privilege log."  (Dkt. 657 at 16 n.8.)

[61] *See, e.g., New Gold Equities Corp. v. Capital Growth Real Estate, Inc.*, No. 89 Civ. 5472, 1990 U.S. Dist. LEXIS 15173, at *6-10 (S.D.N.Y. Nov. 13, 1990) (conducting document-by-document analysis of substantial need).

[62] *See, e.g., In re McRay*, No. 03 Civ. 9685, 2011 U.S. Dist. LEXIS 135258, at *16–17 (S.D.N.Y. Nov. 22, 2011); *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 522 (S.D.N.Y. 2001).

# EXHIBIT F

**EXHIBIT 2**

## Chevron Subpoenas Noticed Across All Proceedings

### Chevron Subpoenas Issued in *Chevron Corp. v. Donziger*, No. 11-cv-00691 (S.D.N.Y.)

|     | Respondent | Issuing Jurisdiction | Date |
|-----|-----------|---------------------|------|
| 1.  | Amazon Watch | N.D. Cal. | 11/28/2012 |
| 2.  | Billenness, Simon | D.D.C. | 11/9/2012 |
| 3.  | Brownstein, Hyatt, Farber, Schreck LLC c/o The Corporation Company | D. Colo. | 11/30/2012 |
| 4.  | Burford Group Limited | S.D.N.Y. | 11/27/2012 |
| 5.  | Burford Group LLC | S.D.N.Y. | 11/27/2012 |
| 6.  | Clapp, Richard | D. Mass. | 12/17/2012 |
| 7.  | Constantine Cannon LLP | S.D.N.Y. | 12/14/2012 |
| 8.  | Fine and Associates | N.D. Cal. | 11/30/2012 |
| 9.  | Fulbrook Advisors LLC | S.D.N.Y. | 11/13/2012 |
| 10. | Glenavy Capital LLC | S.D.N.Y. | 11/13/2012 |
| 11. | Google | N.D. Cal. | 9/7/2012 |
| 12. | Grant Fine | N.D. Cal. | 11/30/2012 |
| 13. | H5 | S.D.N.Y. | 11/30/2012 |
| 14. | Hinton Communications | D.D.C. | 11/28/2012 |
| 15. | Industrial Economics, Inc. | D. Mass. | 11/30/2012 |
| 16. | Hinton, Karen | D.D.C. | 11/20/2012 |
| 17. | Kramer, Orin | S.D.N.Y. | 11/9/2012 |
| 18. | Microsoft | N.D.N.Y. | 9/10/2012 |
| 19. | Nextant LLC c/o Walter Franco | S.D. Tx. | 11/30/2012 |
| 20. | Page, Aaron Marr | D. Md. | 11/28/2012 |
| 21. | Partners in Health | D. Mass. | 11/30/2012 |
| 22. | Patton Boggs LLP | S.D.N.Y. | 6/13/2012 |
| 23. | Rainforest Action Network | N.D. Cal. | 11/28/2012 |
| 24. | Russell, David | N.D. Ga. | 11/30/2012 |
| 25. | Silver & DeBoskey PC | D. Colo. | 11/30/2012 |
| 26. | Snaider, Andres | D. Colo. | 11/30/2012 |
| 27. | Snaider, Andres c/o Nextant LLC | S.D. Tx. | 11/30/2012 |
| 28. | Trillium Asset Management | D. Mass. | 11/9/2012 |
| 29. | Woods, Andrew | N.D. Cal. | 9/14/2012 |
| 30. | Yahoo | N.D. Cal. | 9/7/2012 |
| **Chevron Subpoenas Issued in All 28 U.S.C. § 1782 Actions** | | | |
| 31. | 3TM Consulting, LLC | S.D. Tx. | 4/6/2010 |
| 32. | 3TM International, Inc. | S.D. Tx. | 4/6/2010 |
| 33. | Allen, Douglas | D. Vt. | Undated |
| 34. | Arthur, Christopher | D.D.C. | Undated |
| 35. | Banco Pichincha | S.D. Fl. | 12/22/2011 |

| | **Chevron Subpoenas Noticed Across All Proceedings** | | |
|---|---|---|---|
| 36. | Barnthouse, Lawrence | S.D. Ohio | Undated |
| 37. | Belanger, Laura | D.D.C. | 3/5/2010 |
| 38. | Beltman, Douglas | D. Colo. | 3/5/2010 |
| 39. | Berlinger, Joseph | S.D.N.Y. | Undated |
| 40. | Bonifaz, Cristobal | D. Mass. | Undated |
| 41. | Bonfiglio, Michael | S.D.N.Y. | Undated |
| 42. | Calmbacher, Charles | N.D. Ga. | 3/5/2010 |
| 43. | Champ, Charles | W.D.N.C. | Undated |
| 44. | Chapman, David | D. Colo. | 3/5/2010 |
| 45. | Crude Productions | S.D.N.Y. | Undated |
| 46. | Donziger, Steven | S.D.N.Y. | Undated |
| 47. | Dunkelberger, Ted | D.D.C. | Undated |
| 48. | E-Tech International | S.D. Cal. | 6/24/2010 |
| 49. | E-Tech International | D.N.M. | 8/16/2010 |
| 50. | Golojuch, S. Thomas | D.D.C. | Undated |
| 51. | Jones, Peter N. | D.D.C. | 3/5/2010 |
| 52. | Kamp, Richard | D.N.M. | 8/16/2010 |
| 53. | Kohn Swift & Graf, P.C. | E.D. Pa. | Undated |
| 54. | Kohn, Joseph C. | E.D. Pa. | Undated |
| 55. | Mills, David | D. Colo. | 3/5/2010 |
| 56. | Maest, Ann | D. Colo. | 3/5/2010 |
| 57. | Page, Aaron Marr | D. Md. | 5/20/2011 |
| 58. | Peers, Jennifer | D. Colo. | 3/5/2010 |
| 59. | Picone, Carlos Emilio | D. Md. | Undated |
| 60. | Powers, William | S.D. Cal. | 6/24/2010 |
| 61. | Quarles, Mark | M.D. Tenn. | Undated |
| 62. | Radical Media | S.D.N.Y. | Undated |
| 63. | Roche, Kerry | D.D.C. | Undated |
| 64. | Rourke, Daniel Lee | D. Md. | Undated |
| 65. | Scardina, Robert | W.D. Va. | Undated |
| 66. | Scarola, Marla | D.D.C. | Undated |
| 67. | Shefftz, Jonathan S. | D. Mass. | Undated |
| 68. | Stratus Consulting, Inc. | D. Colo. | 3/5/2010 |
| 69. | The Weinberg Group | D.D.C. | Undated |
| 70. | Third Eye Motion Picture Company | S.D.N.Y. | Undated |
| 71. | Uhl, Baron, Rana & Associates (Vincent Uhl) | D.N.J. | 6/15/2010 |
| 72. | Villao, Juan Cristobal | D.N.J. | Undated |
| 73. | Weinberg, Matthew R. | D.D.C. | Undated |
| 74. | Wray, Alberto | D. Colo. | 6/8/2010 |

| **Chevron Subpoenas Noticed Across All Proceedings** | | |
|---|---|---|
| **Chevron Subpoenas Issued in *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.)** | | |
| 75. | Allen, Douglas | D. Vt. | 5/20/2011 |
| 76. | Arthur, Christopher | W.D. Va. | 5/20/2011 |
| 77. | Banco del Pacifico | S.D. Fla. | 9/8/2011 |
| 78. | Banco Pichincha | S.D. Fla. | 6/10/2011 |
| 79. | Clapp, Richard | D. Mass. | 9/8/2011 |
| 80. | Dematteis, Lou | N.D. Cal. | 9/8/2011 |
| 81. | E-Law c/o Bern Johnson | D. Or. | 11/1/2011 |
| 82. | Entity c/o Managing Agent Law Office of Steven Donziger | S.D.N.Y. | 8/8/2011 |
| 83. | Garr, Laura | S.D.N.Y. | 5/20/2011 |
| 84. | Gomez, Katia Fach | S.D.N.Y. | 8/12/2011 |
| 85. | Google | N.D. Cal. | 9/7/2011 |
| 86. | Greenberg, Gary | S.D.N.Y. | 8/12/2011 |
| 87. | H5 Consulting | S.D.N.Y. | 7/20/2011 |
| 88. | Home Town Bank | S.D.N.Y. | 6/28/2011 |
| 89. | Hotmail | S.D.N.Y. | 9/7/2011 |
| 90. | Kohn, Swift & Graf | S.D.N.Y. | 5/20/2011 |
| 91. | Kohn, Joseph | S.D.N.Y. | 5/20/2011 |
| 92. | Kramer, Orin | S.D.N.Y. | 7/20/2011 |
| 93. | Page, Aaron Marr | D. Md. | 5/20/2011 |
| 94. | Page, Daria Fisher | D. Md. | 5/20/2011 |
| 95. | Parker, Brian | N.D. Cal. | 7/13/2011 |
| 96. | Russell, David | N.D. Ga. | 7/18/2011 |
| 97. | Saenz, Juan Pablo | S.D.N.Y. | 9/16/2011 |
| 98. | Skype | N.D. Cal. | 9/7/2011 |
| 99. | Sun Trust Bank | N.D. Ga. | 7/6/2011 |
| 100. | Weinberg | D.D.C. | 5/20/2011 |
| 101. | Woods, Andrew | S.D.N.Y. | 5/20/2011 |
| 102. | Yahoo | N.D. Cal. | 9/7/2011 |

**EXHIBIT 3**

| | **Depositions Conducted by Chevron Across All Proceedings** | | |
|---|---|---|---|
| | **Deponent** | **Proceeding** | **Date** |
| 1. | 3TM Consulting | *In re Application of Chevron Corp. (3TM)*, No. 4:10-mc-0134 (S.D. Tex.) | 2/17/2011 |
| 2. | Allen, Douglas | *In re Application of Chevron Corp. (Allen)*, No. 2:10-mc-0091 (D. Vt.) | 12/16/2010 |
| 3. | Barnthouse, Lawrence | *In re Application of Chevron Corp. (Barnthouse)*, No. 1:10-mc-0053 (S.D. Ohio) | 12/10/2010 |
| 4. | Belanger, Laura | *Chevron Corp. v. Stratus, et al.*, No. 10-cv-00047 (D. Colo.) | 11/30/2010 |
| 5. | Beltman, Douglas | *Chevron Corp. v. Stratus, et al.*, No. 1:10-cv-00047 (D. Colo.) | 10/6/2010 12/2/2010 12/9/2010 12/16/2010 |
| 6. | Beltman, Douglas | *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.) | 9/9/2011 |
| 7. | Berlinger, Joseph | *In re Application of Chevron Corp. (Berlinger)*, No. 10-mc-00001 (S.D.N.Y.) | 10/28/2010 11/5/2010 11/6/2010 3/10/2011 |
| 8. | Bonfiglio, Michael | *In re Application of Chevron Corp. (Berlinger)*, No. 10-mc-00001 (S.D.N.Y.) | 11/23/2010 11/30/2010 12/2/2010 1/12/2011 |
| 9. | Bonifaz, Cristobal | *In re Application of Chevron Corp. (Bonifaz)*, No. 10-mc-30022 (D. Mass.) | 12/30/2010 3/1/2011 |
| 10. | Callejas, Adolfo | *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.) | 9/9/2011 |
| 11. | Calmbacher, Charles W. | *In re Application of Chevron Corp. (Calmbacher)*, No. 1:10-mi-00706 (N.D. Ga.) | 3/29/2010 |
| 12. | Carney, Michael | *Chevron Corp. v. Stratus, et al.*, No. 1:10-cv-00047 (D. Colo.) | 12/3/2010 |
| 13. | Caron, David | *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.) | 9/2/2011 |
| 14. | Champ, Charles | *Chevron Corp. v. Champ*, No. 1:10-mc-0027 (W.D.N.C.) | 9/9/2010 9/10/2010 |
| 15. | Chapman, David | *Chevron Corp. v. Stratus, et al.*, No. 1:10-cv-00047 (D. Colo.) | 4/23/2010 |
| 16. | Donziger, Steven | *In re Application of Chevron Corp. (Donziger)*, No. 10-mc-00002 (S.D.N.Y.) | 11/29/2010 12/1/2010 12/8/2010 12/10/2010 |

| Depositions Conducted by Chevron Across All Proceedings | | | |
|---|---|---|---|
| | | | 12/13/2010<br>12/22/2010<br>12/23/2010<br>12/29/2010<br>1/8/2011<br>1/14/2011<br>1/18/2011<br>1/19/2011<br>1/29/2011<br>1/30/2011<br>3/23/2011<br>7/19/2011 |
| 17. | Economou, Nicholas | *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.) | 9/15/2011 |
| 18. | Elena, Sandra | *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.) | 8/18/2011 |
| 19. | Engebou, William | *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.) | 9/14/2011 |
| 20. | Escobar, Santiago | *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.) | 9/15/2011 |
| 21. | Garr, Laura | *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.) | 9/12/2011 |
| 22. | Grau, Alvarez Dr. | *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.) | 9/7/2011 |
| 23. | Horsak, Randy | *In re Application of Chevron Corp. (3TM)*, No. 4:10-mc-0134 (S.D. Tex.) | 10/27/2010 |
| 24. | Johnson, Bern | *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.) | 9/15/2011 |
| 25. | Kamp, Richard and E-Tech International | *In re Application of Chevron Corp. (Kamp and E-Tech)*, No. 1:10-mc-00021 (D.N.M.) | 10/7/2010<br>10/8/2010 |
| 26. | Larkin, Blake | *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.) | 9/14/2011 |
| 27. | MacLean, Roberto Dr. | *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.) | 8/29/2011 |
| 28. | Maest, Ann | *Chevron Corp. v. Stratus, et al.*, No. 1:10-cv-00047 (D. Colo.) | 12/8/2010<br>1/19/2011<br>1/20/2011 |
| 29. | Martinez Erraez, Jhinsop | *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.) | 9/12/2011 |
| 30. | Mills, David | *Chevron Corp. v. Stratus, et al.*, No. 1:10-cv-00047 (D. Colo.) | 10/20/2010 |
| 31. | Mills, David | *In re Application of Pallares and Veiga* | 12/7/2010 |

2

| | Depositions Conducted by Chevron Across All Proceedings | | |
|---|---|---|---|
| | | *(Stratus)*, No. 10-cv-2528 (D. Colo.) | |
| 32. | Mittelstaedt, Robert A. | *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.) | 12/7/2010 |
| 33. | Moncayo Jimenez, Donald Rafael | *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.) | 9/13/2011 |
| 34. | Page, Aaron Marr | *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.) | 9/15/2011 |
| 35. | Parker, Brian | *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.) | 8/5/2011 |
| 36. | Peers, Jennifer | *In re Application of Pallares and Veiga (Stratus)*, No. 10-cv-2528 (D. Colo.) | 12/6/2010 |
| 37. | Peers, Jennifer | *Chevron Corp. v. Stratus, et al.*, No. 10-cv-00047 (D. Colo.) | 11/6/2010 12/22/2010 |
| 38. | Picone, Carlos | *In re Application of Chevron Corp. (Picone)*, No. 10-cv-2990 (D. Md.) | 12/16/2010 |
| 39. | Powers, William | *In re Application of Chevron Corp. (Powers)*, No. 10-cv-01146 (S.D. Cal.) | 9/10/2010 |
| 40. | Quarles, Mark | *In re Application of Chevron Corp. (Quarles)*, No. 2:10-cv-0686 (M.D. Tenn.) | 9/1/2010 10/12/2010 |
| 41. | Reis Vega, Ricardo | *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.) | 9/6/2011 |
| 42. | Rourke, Daniel | *In re Application of Chevron Corp. (Rourke)*, No. 10-cv-2989 (D. Md.) | 12/20/2010 |
| 43. | Rourke, Daniel | *In re Application of Chevron Corp. (Picone)*, No. 10-cv-02990 (D. Md.) | 4/21/2011 |
| 44. | Scardina, Robert | *In re Application of Chevron Corp. (Scardina)*, No. 10-cv-0067 (W.D. Va.) | 12/22/2010 |
| 45. | Shefftz, Jonathan | *In re Application of Chevron Corp. (Shefftz)*, No. 1:10-mc-10352 (D. Mass.) | 12/16/2010 |
| 46. | Staats, Joseph | *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.) | 9/8/2011 |
| 47. | Uhl, Vincent | *In re Application of Chevron Corp. (UBR)*, No. 10-cv-2675 (D.N.J.) | 4/19/2011 7/27/2011 7/10/2012 |
| 48. | Woods, Andrew | *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.) | 9/14/2011 |
| 49. | Wray, Alberto | *In re Application of Chevron Corp. (Wray)*, No. 10-mc-00371 (D.D.C.) | 11/2/2010 11/3/2010 11/5/2010 |
| 50. | Verstuyft, Allen | *Chevron Corp. v. Salazar, et al.*, No. 11-cv-3718 (S.D.N.Y.) | 8/30/2011 |

# EXHIBIT G

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Andrea E. Neuman
Direct: +1 212.351.3883
Fax: +1 212.351.5303
ANeuman@gibsondunn.com

March 24, 2013

VIA ELECTRONIC MAIL

John Keker, Esquire
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
jkeker@kvn.com

Stuart Krause, Esquire
Zeichner Ellman & Krause LLP
575 Lexington Avenue
New York, NY 10022
skraus@zeklaw.com

Julio C. Gómez, Esquire
The Sturde Building
111 Quimby Street, Suite 8
Westfield, NJ 07090
jgomez@gomezllc.com

Craig Smyser, Esquire
Smyser Kaplan & Veselka, LLP
700 Louisiana
Suite 2300
Houston, TX 77002
csmyser@skv.com

Re:     *Chevron Corp. v. Donziger*, Case No. 11 Civ. 0691 (LAK)

Counsel:

Pursuant to Judge Kaplan's Rule 16 Order of March 15, 2013, (Dkt. 910) ("Rule 16 Order"),
Chevron hereby notifies all parties that it intends to depose the fact witnesses identified
below and that it intends to notice their depositions for the following dates:

| Name of Deponent | Date of Deposition | Location of Deposition |
|---|---|---|
| Andrew Woods | April 4, 2013 | San Francisco, California |

**GIBSON DUNN**

March 24, 2013
Page 2

| | | |
|---|---|---|
| Pablo Fajardo | April 8, 2013 | Lima, Peru |
| Julio Prieto | April 8, 2013 | Lima, Peru |
| Juan Pablo Sáenz Mena | April 9, 2013 | Lima, Peru |
| Luis Francisco Yanza | April 9, 2013 | Lima, Peru |
| Judge Nicolas Zambrano Lozada | April 10, 2013 | Lima, Peru |
| Emery Celli Brinckerhoff & Abady, LLC 30(b)(6) | April 16, 2013 | New York, New York |
| Jeffrey I. Shinder | April 17, 2013 | New York, New York |
| Joseph Kohn | April 18, 2013 | New York, New York |
| Laura Garr | April 22, 2013 | New York, New York |
| Silver and DeBoskey 30(b)(6) | April 23, 2013 | Denver, Colorado |
| Amazon Watch 30(b)(6) | April 26, 2013 | San Francisco, California |
| Hugo Camacho Naranjo | May 9, 2013 | Lima, Peru |
| Ramiro Fernando Reyes | May 13, 2013 | Lima, Peru |
| Javier Piaguaje Payaguaje | May 15, 2013 | Lima, Peru |
| Ted Dunkelberger | May 17, 2013 | Washington D.C. |
| John McDermott | May 21, 2013 | Denver, Colorado |
| Charles Calmbacher | May 22, 2013 | New York, New York |
| Dave Russell | May 24, 2013 | New York, New York |
| Patton Boggs LLP | May 28, 2013 | New York, New York |
| Donziger & Associates 30(b)(6) | May 29-30, 2013 | New York, New York |

# GIBSON DUNN

March 24, 2013
Page 3

Given the need to make arrangements for travel to Peru and with the U.S. embassy in Lima, please confirm by 5:00 p.m. Eastern on March 28, 2013, whether any of the above witnesses located in Ecuador intend to attend their depositions in Lima, Peru on the dates noticed, or whether they prefer an alternate date.  We are continuing to negotiate deposition dates with certain third-party witnesses and will provide you a copy of those subpoenas once served.

Should any of the foregoing deponents prove unwilling to appear for deposition, Chevron reserves the right to notice the following alternate deponents, in no particular order:

>       Martin Beier
>       Doe 1
>       Mary Cuddehe
>       Emergildo Criollo
>       Burford Group 30(b)(6)
>       Aaron Marr Page
>       Karen Hinton

In addition to the above witnesses, Chevron reserves the right to depose any witness identified by the defendants among their list of 21 deponents, any witness previously identified in the defendants' deponent lists filed with the Court on February 26, 2013, and any witness the defendants intend to call at trial but whom they have not offered for deposition.  In addition, Chevron reserves the right to alter or supplement this list (1) in the event that the defendants submit declarations or affidavits from non-deponents in this case, in which case Chevron would expect defendants to make any such declarant available for deposition promptly in New York, (2) if needed in light of the Court's resolution of Dkt. 798 (Chevron's motion to resolve disputed issues of admissibility of prior depositions); or (3) as needed given the ongoing fact discovery in this case.

Note that, pursuant to the Rule 16 Order, Chevron is proposing to conduct depositions of all witnesses resident in South America in Lima, Peru, in two condensed windows so as to minimize inconvenience and travel for counsel, the special master(s)—in the event the Court orders their attendance—and the witnesses themselves.  In order to further minimize expense and inconvenience, Chevron is noticing depositions of the following expert witnesses in Lima, Peru on these dates:

| Name of Deponent | Deposition Date |
| --- | --- |
| Wladimiro Villalba Vega | May 8, 2013 |

# GIBSON DUNN

March 24, 2013
Page 4

| Juan Pablo Alban Alencastro | May 10, 2013 |
|---|---|
| Farith Ricardo Simon | May 14, 2013 |
| Raul Rosero Rivas | May 16, 2013 |
| Armando Bermeo Castillo | May 17, 2013 |

Attached you will find copies of notices of deposition for the following witnesses:

Pablo Fajardo
Julio Prieto
Juan Pablo Sáenz Mena
Luis Francisco Yanza
Judge Nicolas Zambrano Lozada
Wladimiro Villalba Vega
Hugo Camacho Naranjo
Juan Pablo Alban A1encastro
Ramiro Fernando Reyes
Farith Ricardo Simon
Javier Piaguaje Payaguaje
Raul Rosero Rivas
Armando Bermeo Castillo

Sincerely,

Andrea E. Neuman

AEN/rg
Enclosures

Marco Simons (SBN 237314)
marco@earthrights.org
Richard L. Herz [admitted *pro hac vice*]
rick@earthrights.org
Michelle C. Harrison
michelle@earthrights.org
Marissa A. Vahlsing
marissa@earthrights.org
EARTHRIGHTS INTERNATIONAL
1612 K Street NW, Suite 401
Washington, DC 20006
Telephone: (202) 466-5188

Jose Luis Fuentes
jlf@siegelyee.com
Siegel & Yee
499 14th Street Ste 300
Oakland, CA 94612
Tele: (510) 839-1200
Facsimile: (510) 444-6698

Attorneys for Non-Party Amazon Watch

### UNITED STATES DISTRICT COURT

### FOR THE NOTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEVRON CORP., | Case No. C 13-80038-MISC CRB |
| Plaintiff, | **DECLARATION OF ATOSSA SOLTANI IN SUPPORT OF NON-PARTY AMAZON WATCH'S REPLY IN SUPPORT OF AMAZON WATCH'S MOTION TO QUASH AND/OR MODIFY DEPOSITION SUBPOENAS** |
| v. | |
| STEVEN DONZIGER, *et al.* | |
| Defendants. | |

DECLARATION OF ATOSSA SOLTANI

**DECLARATION OF ATOSSA SOLTANI**

I, Atossa Soltani, hereby declare as follows:

1.     I am over the age of 18 and am competent to make this declaration.

2.     I have personal knowledge of all matters set forth in this declaration, except where such facts are stated based on information and belief, and those facts I believe to be true. If called upon to do so, I could and would testify to all matters set forth herein.

3.     I am currently, and have been since its founding 1996, the Executive Director of Amazon Watch (AW), a nonprofit organization.

4.     In Dkt. 52 at page 11& n.7, Chevron misrepresents a conversation that I had with Steven Donziger and I would like to correct the record. Chevron states that I "knew," based on a 2006 conversation with Steven Donziger, that the RICO defendants planned to "ghostwrite" the Cabrera report. *Id.* This is simply not true. When Steven Donziger told me "The judge is going to appoint a guy in Ecuador, um, to be the expert but really, you know, we'll be supporting him with the work." I took this to mean that the LAPs, like Texaco, would be supporting the expert with technical assessment and expertise and ensure that the documented pollution levels and resulting public health risks received the highest consideration in the evaluation. I understood that this kind of direct dialogue with the experts was a role that both sides played since there was debate over which technical standards were to be used to evaluate data sets. I never, under any circumstance, understood Steven's statement to mean that the Cabrera report would be "ghostwritten" and would not be a piece of independent work.

5.     It was only recently, within the past two years or so as part of this lawsuit that AW began to hear accusations by Chevron that the Cabrera report was the subject of "fraud." However, we hesitated and continue to doubt Chevron's characterization of events because we do not believe that Chevron has always been forthright or truthful in its statements to discredit the LAPs in the past.

6.     At no instance in which AW posted web content about the Cabrera report or summarized its findings, did AW believe that the report was the product of fraud and not appropriate for citation.

7.     Chevron also cites a conversation in which I discuss a conversation that I had with Judge Yanez in Ecuador in March, 2006, Dkt. 52-10, and I would like to clarify the record on that account as

1

DECLARATION OF ATOSSA SOLTANI

well. Dkt. 52-10. The conversation that I had with Judge Yanez was a friendly conversation concerning, for the most part, Judge Yanez's interest in Islam and my roots growing up in an Islamic society. And although the judge gave me his personal contact information, at no point did I use that information to call him or email him or contact him in any manner.

8.    AW has not benefited financially from the judgment in Ecuador and does not have a financial interest in the enforcement of the Ecuador judgment.

I declare under penalty of perjury of the laws of the United States and the State of California that the foregoing is true and correct. Executed on April 1, 2013.

_____
Atossa Soltani

Case  No.  C  13-80038-MISC CRB          DECLARATION OF ATOSSA SOLTANI