UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHEVRON CORP., <br><br> Plaintiff, <br><br> v. <br><br> STEVEN DONZIGER, and others, <br><br> Defendants. | Case No. 13-mc-80038 CRB (NC) <br><br> **ORDER QUASHING SUBPOENAS** <br><br> Re: Dkt. Nos. 1, 3, 13, 44, 50, 55 |

Chevron has issued subpoenas to non-party Amazon Watch for documents and depositions under Federal Rule of Civil Procedure 30(b)(6). Amazon Watch moved to quash both subpoenas because they seek information protected by the First Amendment and are not carefully tailored to request only information that is highly relevant to Chevron's RICO claims against defendants and unavailable by other means. Chevron moved to enforce the subpoenas arguing that what Amazon Watch claims is protected speech is in fact fraudulent statements made in furtherance of a conspiracy, and thus no heightened burden beyond the discovery rules is warranted. After ten briefs and a hearing on the matter, the Court QUASHES Chevron's subpoenas.

//

# I. BACKGROUND

This discovery dispute is just one piece in an elaborate puzzle. Chevron brought RICO charges against defendants in the Southern District of New York, alleging, among other things, that defendants attempted to defraud and extort Chevron by bringing suit in Ecuador, bribing Ecuadorian judges and ghostwriting opinions and expert reports, and exerting a pressure campaign on Chevron in the United States. Dkt. No. 48-1 at 15. Amazon Watch is not a party to that litigation; nor is it a party to the underlying Ecuadorian litigation that spawned Chevron's RICO claims. Chevron alleges, however, that the RICO defendants used Amazon Watch as a mouthpiece for pressure and smear campaigns in the United States against Chevron, in furtherance of their conspiracy to defraud Chevron of billions of dollars.

Amazon Watch is a non-profit organization whose mission is to bring attention to what it perceives as environmental and human rights abuses by companies operating in the Amazon Rain Forest. Amazon Watch has a website on which it posts content critical of Chevron's former operations in the Ecuadorian Amazon, among other industries that affect the Amazon Rain Forest and the indigenous people who live there. Amazon Watch organizes campaigns to raise awareness of the impact that industrial development in the Amazon Rain Forest has on the world as a whole. It uses media coverage, its website, publications, documentary films, legal action, and shareholder campaigns to educate and lobby for social and environmental accountability. *See* Dkt. No. 6 ¶¶ 11-20.

Chevron seeks to discover a wide range of documents from Amazon Watch and to depose Atossa Soltani, the Executive Director of Amazon Watch, under Federal Rule of Civil Procedure 30(b)(6).

# II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena. The scope of the discovery that can be requested through a subpoena under Rule 45 is the same as the scope under Rule 34, which in turn is the same as under Rule 26(b). Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970) ("[T]he scope of discovery through a subpoena

is the same as that applicable to Rule 34 and other discovery rules."); Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)."). Rule 26(b) allows a party to obtain discovery concerning any nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). The court must limit the extent of the discovery sought if it is unreasonably duplicative, if it can be obtained from a source that is more convenient or less burdensome, or if the burden of producing it outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C).

A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. Fed. R. Civ. P. 45(c)(1). In turn, the court "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(c)(2)(B)(ii). The court may modify or quash a subpoena that subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(iv). And, the court "must impose an appropriate sanction" on any party or attorney who fails to comply with these limitations on discovery by subpoena. Fed. R. Civ. P. 45(c)(1).

### III. DISCUSSION

**A.  Amazon Watch Has Made a Prima Facie Showing that the Subpoenas Seek Information Protected by the First Amendment.**

Amazon Watch moves to quash both Chevron's subpoena for documents and its Rule 30(b)(6) deposition subpoena because the information Chevron seeks is protected by the First Amendment and the subpoenas do not withstand the heightened scrutiny required under *Perry v. Schwarzenegger*, 591 F.3d 1126, 1139-41 (9th Cir. 2009). *Perry* sets forth a two-part test for analyzing claims of first amendment privilege in a discovery dispute. *Id.* at 1140. First, the party asserting the privilege must make "a prima facie showing of arguable first amendment infringement." *Id.* "This prima facie showing requires [a party] to demonstrate that enforcement of the discovery requests will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or chilling of, the members' associational rights."

*Id.* at 1140 (internal citation and quotation marks omitted).  A prima facie showing "turns not on the type of information sought, but on whether disclosure of the information will have a deterrent effect on the exercise of protected activities." *Id.* at 1141.

Here, Amazon Watch asserts that responding to Chevron's subpoenas will chill participation in its campaigns by its staff and its constituents and will infringe upon its right to associate.  Amazon Watch submitted the declaration of Paul Paz y Miño, its Online and Operations Director and former Managing Director, which stated that revealing Amazon Watch's campaign strategy would "severely chill debate and the exchange of information on the industrial threats to the Amazon and human rights abuses often associated with such threats." Dkt. No. 6 ¶ 21.  "Employees would not be able to feel free to voice opinions, share strategies, brainstorm, or talk openly about our campaigns . . . ." *Id.* ¶ 26.  Disclosure would also have "a chilling effect on the communities with whom [Amazon Watch] works.  Were it to be known that information given to Amazon Watch would be turned over to an opponent like Chevron, and possibly end up shared with the Ecuadorian government or any other corporate actor or host country, it would keep those communities from sharing information with Amazon Watch, and even dissuade them from speaking up and denouncing rights abuses in the first place." *Id.* ¶ 25.  Online petitions and social media support "would be significantly chilled if supporters knew their support might become known to Chevron, or become public knowledge.  It would significantly reduce the number of people who support Amazon Watch's campaigns and take action." *Id.* ¶¶ 34-35.

Kevin Koenig, Ecuador Program Coordinator at Amazon Watch, declared that "if Chevron were to gain access to my communications and documents . . . it would greatly compromise my ability to carry out my work with Amazon Watch." Dkt. No. 8 ¶ 14.  "Disclosing this information to Chevron would absolutely change how I would conduct work, not only on the Clean up Ecuador Campaign, but also on virtually every other area of my work.  It would compromise our advocacy strategies, compromise the safety of some of our indigenous partners, and severely limit our ability to speak out and educate the general public about Amazon issues as per our mission.  And it would greatly hinder even basic

communication within Amazon Watch about Chevron or our other campaigns knowing that the target of our campaigns would potentially be privy to our thinking, planning, and strategizing." *Id.*

Here, just as in *Perry*, members of Amazon Watch have demonstrated that "disclosure would have the practical effects of discouraging political association and inhibiting internal campaign communications that are essential to effective association and expression." 591 F.3d at 1143 (holding that a declaration by a member of the organization's executive committee stating that disclosure would "drastically alter how [he] communicate[d] in the future" made the "conclusion that important First Amendment interests are implicated by the plaintiffs' discovery request" "self-evident"). Furthermore, Koenig has stated that he has been followed, videotaped, and photographed, and fears increasing harassment and for his personal safety if information about Amazon Watch's campaign strategy is disclosed. Dkt. No. 8 ¶ 12, 14. This speaks to the strength of the First Amendment interests at issue. *AFL-CIO v. FEC*, 333 F.3d 168, 176 (D.C. Cir. 2003) ("[C]ases involving groups whose members had been subjected to violence, economic reprisals, and police or private harassment . . . speak[] to the strength of the First Amendment interests asserted.").

In addition, both Paz y Miño and Koenig have been identified as custodians related to Chevron's subpoena for documents. *Compare* Dkt. No. 4, Ex. L *with* Dkt. No. 4, Ex. N. Koenig is the "lead coordinator of Amazon Watch work in/or related to Ecuador," and Paz y Miño has "managed all Ecuador Program work for the last 5 years." Dkt. No. 4, Ex. L. Their job responsibilities indicate that they are among the "core group of persons engaged in the formulation of campaign strategy and messages." *Perry*, 519 F.3d at 1144 n.12 ("emphasiz[ing] that our holding is limited to private, internal campaign communications concerning the formulation of campaign strategy and messages" as opposed to documents or messages conveyed to the electorate at large or groups of voters for purposes such as persuasion). Accordingly, the Court finds that Amazon Watch has made a prima facie showing that disclosure will discourage First Amendment activity.

//

Case No. 13-mc-80038 CRB (NC)
ORDER QUASHING SUBPOENAS            5

Chevron argues that the First Amendment does not protect Amazon Watch's conduct because it furthers fraud and a conspiracy. At the April 3, 2013 hearing, Chevron's counsel admitted that there are no cases in which courts have found that running a pressure campaign brings speech outside the protection of the First Amendment and entitles a party to discovery. Nevertheless, Chevron urges the Court to rely on *United States v. Hempfling*, 431 F. Supp. 2d 1069, 1083 (E.D. Cal. 2006). In *Hempfling*, the Eastern District denied a defendant's motion to dismiss based on its finding that "it is well-established that the First Amendment does not protect those who aid and abet criminal conduct by the dissemination of printed materials that incite crimes." There, the government sought to enjoin the defendant from providing commercial tax products that allegedly encouraged and assisted customers to willfully fail to file income tax returns. *Id.* at 1073-74. Here, however, Chevron has not established that Amazon Watch is organizing individuals to willfully break the law. The analogy Chevron encourages the Court to adopt simply does not fit.

The Court finds the reasoning from *NAACP v. Claiborne* more persuasive, in which the Supreme Court held that "[s]peech does not lose its protected character . . . simply because it may embarrass others or coerce them into action." 458 U.S. 886, 911 (1982). The *Claiborne* Court held that a speaker engaged in "mere advocacy" cannot be held liable for the crimes of another. *Id.* at 927. Even if this Court assumes that Amazon Watch was the mouthpiece for the RICO defendants, there is nothing to suggest that Amazon Watch's campaigns and speech were more than mere advocacy and were likely to incite or produce imminent lawless action. *Id.* at 928. "Such a characterization must be supported by findings that adequately disclose the evidentiary basis for concluding that specific parties agreed to use unlawful means, that carefully identify the impact of such unlawful conduct, and that recognize the importance of avoiding the imposition of punishment for constitutionally protected activity." *Id.* at 933-34. All that Chevron has shown this Court is that Amazon Watch has been very critical of Chevron's operations in Ecuador.

Furthermore, and most importantly, Chevron's position on this issue asks the Court to make a finding that Amazon Watch's conduct is fraudulent or is in furtherance of the

Case No. 13-mc-80038 CRB (NC)
ORDER QUASHING SUBPOENAS         6

conspiracy, which this Court is in a poor position to do. *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680-81 (N.D. Cal. 2006) (finding that where a court does not have the benefit of involvement with the underlying litigation because its only connection is to supervise discovery ancillary to litigation in another district, it should be especially hesitant to decide what constitutes relevant evidence). Judge Kaplan, in ordering disclosure of discovery from the law firm Patton Boggs, expressly determined that Chevron has established probable cause to believe that defendants committed at least five specific instances of fraud, which Judge Kaplan found justified compelling production of discovery limited to those five instances. Dkt. No. 48-1 at 68. Importantly, none of those five instances had anything to do with the alleged pressure campaign or Amazon Watch. In the absence of a finding by Judge Kaplan that Chevron has established probable cause to believe that Amazon Watch's conduct falls outside the scope of the First Amendment because it is inciting unlawful activity or is fraudulent speech, and because all evidence before this Court suggests otherwise, the Court concludes that Amazon Watch has made its prima facie showing required under *Perry*.

**B.    Chevron's Subpoena for Documents Is Overly Broad.**

Once a party makes a prima facie showing that the discovery sought is protected by the First Amendment, the evidentiary burden shifts to the party seeking discovery to show (1) "that the information sought is highly relevant to the claims or defenses in the litigation—a more demanding standard of relevance than that under [Rule] 26(b)(1)"; (2) that the request is "carefully tailored to avoid unnecessary interference with protected activities"; and (3) that "the information is otherwise unavailable." *Perry*, 591 F.3d at 1140, 1141. In this analysis, the Court "balance[s] the burdens imposed on individuals and associations against the significance of the interest in disclosure" and considers such things as "the importance of the litigation," "the centrality of the information sought to the issues of in the case," "the existence of less intrusive means of obtaining the information," and "the substantiality of the First Amendment interests at stake." *Id.* at 1140 (internal citation and quotation marks omitted).

### 1.     Chevron fails to show that the information it seeks is highly relevant.

"In view of the desirability of focusing only on that which is most important," and in consideration of the important First Amendment issues that this subpoena touches upon, the Court follows Judge Kaplan's lead and looks to the five instances in which Chevron has established probable cause to believe the RICO defendants have engaged in some fraud when considering what is "highly relevant" to the claims in the litigation. Dkt. No. 48-1 at 68. Those five instances are (1) the alleged bribery of an Ecuadorian judge and the writing of the judgment and other judicial documents in Lago Agrio case; (2) that the Lago Agrio Plaintiffs wrote the expert reports regarding judicial inspection submitted over Calmbacher's signature; (3) the circumstances under which the Lago Agrio court terminated the judicial inspection process; (4) the selection and appointment of Cabrera as a global expert, preparation and submission of his report to the Lago Agrio court, and its representation as his independent work; and (5) the submission of deceptive accounts of the Lago Agrio Plaintiffs' and Stratus Consulting's relationship with Cabrera in the District of Colorado and elsewhere in § 1782 proceedings. *See id.* at 68-69.

Chevron's subpoenas to Amazon Watch seek less than "highly relevant" information. For example, Chevron seeks "[a]ll documents concerning shareholder actions sponsored by Trillium beginning as of at least 2005, Chevron investor statements sponsored by Trillium beginning as of [at] least 2009, or any other shareholder actions." Dkt. No 3, Ex. E ¶ 5. It also seeks "[a]ll documents concerning the establishment, administration, or management of any of the related websites, or communications with the owners, managers, or administrators of any related websites" and to depose Soltani about these documents. *Id.* ¶ 22; Dkt. No. 1 ¶ 11. Chevron's definition of "Related Websites" includes over sixty specific URLs, which include Twitter accounts, Facebook pages, Flickr accounts, as well as an Amnesty International website, and a Huffington Post website, in addition to "any other website controlled by or on behalf of the Lago Agrio Plaintiffs." Dkt. No. 1 ¶ 46. Chevron seeks to depose Soltani about her "analysis, evaluation, or assessment of the impact of [Amazon Watch's] work relating to the Chevron Litigations." *Id.* ¶ 6. Chevron defines

"Chevron Litigations" as four separate civil suits, an international arbitration, the countless § 1782 actions in district courts around the country, and seventeen criminal actions. *Id.*, Attach. B ¶ 17.

Chevron requests documents that are not central to the issues in this case, and the deposition topics based on these documents are likewise not highly relevant.

### 2.     Far from being carefully tailored, Chevron's requests are overbroad.

Chevron's requests are egregiously overbroad and do not satisfy the "carefully tailored" standard required by *Perry*. For example, Chevron seeks "[a]ll documents concerning any protests, rallies, marches, demonstrations, petitions, or other similar events concerning Chevron or the Chevron Litigations." Dkt. No. 3, Ex. E ¶ 17. It also seeks "[a]ll documents concerning any activities organized, created, or held on social media including, but not limited to, Facebook and Twitter, concerning Chevron or the Chevron Litigations," *id.* ¶ 18, "[a]ll documents concerning the following campaigns": the Change Chevron Campaign, Chevron is Guilty, Human Rights Hitmen, Clean-up Ecuador Campaign, Global Fugitive Campaign, and The Campaign for Justice in Ecuador, *id.* ¶ 8, and "[a]ll documents related to Chevron or the Chevron litigations posted or published by you . . . on any of the related websites or other media outlets that you manage, fund, control, or contribute to," *id.* at 23. Chevron's deposition subpoena seeks to depose Soltani about these topics and more, including, Amazon Watch's communications relating to the Chevron litigations with energy industry analysts, stock analysts, or investment professionals, the media, non-governmental organizations, any author, artist, filmmaker, performer, or activist, as well as Amazon Watch's "process of preparing" the content of its campaigns. Dkt. No. 1, Ex. A ¶ 23, ¶¶ 8-10.

These requests seek the heart of Amazon Watch's expressive activity, are not carefully tailored to avoid infringing on protected activity, and encompass expression that is not highly relevant to this litigation.

//

### 3. Chevron has not shown this information is unavailable via other means.

Chevron has failed to show that its subpoenas to Amazon Watch are the only means by which it can obtain the information it seeks.  Chevron asserts that the RICO defendants have failed to produce certain documents that Chevron believes are in possession of defendants' Ecuadorian counsel, but this does not overlap with the scope of what Chevron currently requests and, therefore, is not a sufficient justification to compel production from Amazon Watch.  Furthermore, Judge Kaplan recently granted Chevron discovery from Patton Boggs, which will provide Chevron with additional information related to the central thrust of its RICO claims.

## C. Chevron May Issue New Subpoenas, If It Can Satisfy the *Perry* Factors.

If Chevron can limit its requests to only information that is highly relevant to the central issue of this litigation, and carefully tailor those requests to avoid infringing on Amazon Watch's First Amendment rights, it may issue new subpoenas by April 19, 2013.  Chevron should tether its subpoena to those facts that it has established with a reasonable degree of certainty, such as the areas Judge Kaplan identified.  This subpoena may not be used as a means to seek information that is only tangential to its RICO claims.  Chevron must be able to show that the information it seeks is unavailable through the myriad discovery avenues it has at its disposal.  It should also be mindful that the discovery cut-off is quickly approaching.  The Court does not intend, however, to alter Judge Kaplan's schedule and defers to his case management deadlines regarding the appropriateness of Chevron's serving another, more tailored subpoena to Amazon Watch.

## D. The Court Does Not Impose Sanctions at This Time.

Rule 45 requires the court to impose an appropriate sanction upon a party whose subpoena creates an undue burden. Fed. R. Civ. P. 45(c)(1).  When enforcing Rule 45(c)(1), "courts have discretion over the type and degree of sanction imposed." *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 425 (9th Cir. 2012); *see also Ritchie v. United States*, 451 F.3d 1019, 1026 (9th Cir. 2006)  ("District Courts have broad discretion in imposing discovery sanctions.").  The Court refrains from sanctioning Chevron at this time,

given that Chevron did meet and confer with Amazon Watch and took some reasonable steps to respond to Amazon Watch's objections before the hearing. If the case management deadlines allow Chevron to issue new subpoenas to Amazon Watch, and it so chooses, those subpoenas must be significantly narrower in scope to seek only highly relevant information and more carefully tailored to avoid infringing upon the organization's First Amendment rights. Otherwise, the Court will impose sanctions.

## IV. CONCLUSION

Because Amazon Watch has made a prima facie showing that Chevron's discovery requests seek information protected by the First Amendment, Chevron must meet a higher standard of relevance, careful tailoring, and unavailability. Chevron's subpoena requests are overbroad, unrelated to the central issues in this litigation, and very likely available from defendants and other sources. Accordingly, the Court GRANTS Amazon Watch's motion to quash Chevron's subpoena for documents (Dkt. No. 3) and its motion to quash Chevron's subpoena to depose Amazon Watch under Rule 30(b)(6) (Dkt. No. 44). The Court DENIES Chevron's motion to enforce its subpoenas (Dkt. No. 13).

For reasons stated at the hearing, the Court also GRANTS Amazon Watch's motion to extend time to respond to the subpoena (Dkt. No. 1) and DENIES Chevron's motion to strike Amazon Watch's surreply (Dkt. No. 55).

Any party may object to this order by April 19, 2013. Fed. R. Civ. P. 72(a).

IT IS SO ORDERED.

Date: April 5, 2013

Nathanael M. Cousins
United States Magistrate Judge