ETHAN D. DETTMER, SBN 196046
  edettmer@gibsondunn.com
ENRIQUE A. MONAGAS, SBN 239087
  emonagas@gibsondunn.com
AIMEE M. HALBERT, SBN 279144
  ahalbert@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

*Attorneys for Plaintiff Chevron Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHEVRON CORPORATION,<br><br>              Plaintiff,<br><br>     v.<br><br>STEVEN DONZIGER, *et al.*,<br><br>              Defendants. | Case No. 3:13-mc-80038-CRB (NC)<br><br>**CHEVRON CORPORATION'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF APRIL 5, 2013**<br><br>**[Fed. R. Civ. P. 72(a); Civ. L.R. 72-2]** |

Pursuant to Federal Rule of Civil Procedure 72(a) and Civil Local Rule 72-2, Chevron Corporation ("Chevron") respectfully requests relief from the Honorable Magistrate Judge Nathanael Cousins' April 5, 2013 Order Quashing Subpoenas. Dkt. 59.

The Magistrate Judge quashed, rather than sustained or narrowed, Chevron's subpoenas to Amazon Watch ("AW") because he found the subpoenas infringed on the First Amendment privilege recognized in *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). *Perry* shields from discovery *private*, *internal* communications among an advocacy organization's "core group," except where the discovery is "highly relevant" to the underlying action and unavailable elsewhere. 591 F.3d at 1161.

In quashing, rather than sustaining or narrowing, the subpoenas, the Magistrate Judge mistakenly concluded that the requested discovery was not "highly relevant" to the underlying litigation in the Southern District of New York, even though the district judge in that action, the Hon. Lewis A. Kaplan, includes the extortionate "pressure campaign" on his short list of issues central to Chevron's RICO, fraud, and conspiracy complaint. *See Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 249 (S.D.N.Y. 2012) (Chevron alleges "a multi-faceted, extortionate scheme" that includes "making false statements to U.S. courts, Congress, the SEC, and the media" in order to "coerc[e] Chevron 'into paying to stop the campaign against it'"). In this regard, Chevron's complaint refers to AW and its actions dozens of times. *See* Dkt. 14 Ex. 1 ¶¶ 18(f)-(g), 75, 105-08, 176, 214-24, 229-30, 238-41, 250-59. The pressure campaign is part of a coordinated effort to force Chevron to pay off those who corruptly obtained a fraudulent $18.2 billion judgment against Chevron in Ecuador—a judgment that the undisputed evidence shows was ghostwritten by the SDNY defendants and/or their associates, Dkt. 38-3 at 5-10, on whose behalf and at whose direction AW has long acted. As another district court hearing a related discovery proceeding observed, "Chevron has shown to anyone with common sense that this [Ecuadorian judgment] is a blatant cut and paste exercise" reflecting a significant number of the RICO defendants' internal, confidential documents, word-for-word. Dkt. 38-4 at 57.

Furthermore, Judge Kaplan has upheld the legal validity and factual sufficiency of Chevron's "pressure campaign" extortion allegations, among other viable RICO predicate acts, specifically noting the allegation that the defendants "drafted public attacks distributed by Amazon Watch in added efforts to induce Chevron to pay them off." *Chevron*, 871 F. Supp. 2d at 248-49. Thus, the Magis-

trate Judge erred by concluding that *all* of AW's actions were entitled to First Amendment protection in the first place, since it is well established that extortion and fraud are not protected speech.

Finally, even if some of AW's activities were entitled to First Amendment protection, the Magistrate Judge incorrectly shielded *all* of AW's documents from discovery and failed to apply *Perry*'s limitation to "*private, internal* campaign communications concerning the *formulation of campaign strategy and messages*" as between a defined list of the organization's "core group" members. 591 F.3d at 1165 n.12 (emphases in original). The Magistrate Judge identified only two core members (Dkt. 59 at 5), but quashed all document requests and precluded production of any communications between any members of the organization—and even with third parties. In view of these legal errors, the Magistrate's decision to quash rather than modify the subpoenas is an abuse of discretion.[1]

I. **The Order Erroneously Limits Relevant Topics To Those Where The Underlying Court Has Already Found "Probable Cause" That Defendants Have Engaged In Fraud.**

When faced with a challenge to a Rule 45 subpoena arising out of litigation in another court, the issuing court must assess the relevance of the sought-after discovery. *Gonzales v. Google*, 234 F.R.D. 674, 681 (N.D. Cal. 2006). Because the issuing court is not always in a strong position to make this determination, "[w]here relevance is in doubt[,] the court should be permissive." *Id*. But the Magistrate Judge imposed an incorrect limitation of Chevron's discovery based on an order in the underlying action directed to a different entity and subject to a different legal standard.

Under Rule 26(b)(1), the court need only find that the discovery is "reasonably calculated to lead to the discovery of admissible evidence." Even under *Perry*, Chevron is entitled to discovery that is "highly relevant" to the action. 591 F.3d at 1161. But the Magistrate Judge ignored these

---

[1] Chevron sought leave from Judge Kaplan to serve modified subpoenas, as contemplated in the Order, limited largely to the topics identified in the Order and seeking only documents constituting or concerning communications with the SDNY defendants and their co-conspirators. Judge Kaplan denied that request today. Dettmer Decl. Ex. 1. That denial appears to rest in part on a misapprehension of the record in this case, when it states that Chevron did not "seek to modify its first subpoena to Amazon Watch . . . ." Chevron in fact made substantial concessions and proposed numerous modifications to its subpoena during the meet and confer process, *see id.* at Ex. 2, despite the fact that AW did not provide its supposed "core group" members—a crucial factor for the meet and confer process—until the eleventh hour, and after Chevron filed its motion to compel. *See* Dkt. 42-41. As the Magistrate Judge has acknowledged that substantially narrowed subpoenas could be permissible, Chevron requests that this Court, if it does not permit Chevron to proceed with its original subpoenas, limit, rather than quash them, to the scope of the narrowed subpoenas attached as Exhibits 4 & 5.

standards and imposed a burden of persuasion on Chevron, requiring at one point "probable cause" that the SDNY defendants have engaged in fraud (Dkt. 59 at 8) and then, later, "a reasonable degree of certainty" (*id*. at 10). But this is discovery, and its purpose is to obtain evidence, not weigh it.

In analyzing relevance to the underlying action, the Magistrate Judge looked not to the complaint but to a single order in which Judge Kaplan found, in the context of a subpoena to the law firm Patton Boggs LLP, that the record had established "probable cause" that a crime or fraud had been committed. Dkt. 59 at 8. But Judge Kaplan applied the "probable cause" standard to Patton Boggs because it is a law firm asserting attorney-client and work product protection, which required application of the crime-fraud exception to compel discovery. Dkt. 48-1 at 5-6. And Judge Kaplan's findings in the Patton Boggs order address the conduct in which Patton Boggs participated or likely would have responsive documents, *id.* at 65, conduct that the Magistrate Judge acknowledged did not have "anything to do with the alleged pressure campaign or Amazon Watch," *see* Dkt. 59 at 7.

Given the complaint's different allegations against Patton Boggs and AW, it makes no sense to limit Chevron's discovery from AW to the scope of discovery it has shown entitlement to—under different circumstances—from Patton Boggs. The discovery Chevron seeks from AW is "highly relevant"—as that term is used in *Perry*—to Chevron's claims that AW, at the direction and funding of the SDNY defendants, was the mouthpiece of the extortionate campaign against Chevron. *See* Dkts. 14 Exs. 5 and 6, 38-13 at 1, 42-34. Judge Kaplan did not have occasion to rule "that [AW's] conduct falls outside the scope of the First Amendment" (Dkt. 59 at 7), but he has repeatedly identified the pressure campaign as a central element in Chevron's lawsuit, including in the Patton Boggs order itself: "The RICO and, to some extent, the fraud claims rest on allegations that [defendants and others sought to extort] and defraud Chevron by . . . (3) . . . subjecting Chevron to public attacks in the United States and elsewhere based on false and misleading statements; (4) inducing U.S. public officials to investigate Chevron." Dkt. 48-1 at 12-13. The Magistrate Judge's contrary ruling was error.

## II. The First Amendment Does Not Apply to AW's Extortionate Pressure Campaign.

The Magistrate Judge's erroneous reliance on the Patton Boggs order led him to circumscribe his analysis of whether the subpoenas sought materials protected by the First Amendment. It is well settled that "the First Amendment does not shield fraud" or extortion. *Illinois ex rel. Madigan v. Tel-*

*emarketing Assoc., Inc.*, 538 U.S. 600, 612 (2003); *U.S. v. Hutson*, 843 F.2d 1232, 1235 (9th Cir. 1998). The Order observes that it has not been cited a case where "running a pressure campaign" was a basis for discovery (Dkt. 59 at 6), but discovery is proper here because courts recognize that "the First Amendment provides no refuge for extortion" in the form of a "campaign" designed "to exert pressure" on an employer through "requests that regulatory agencies investigate and pursue" the employer and "negative publicity campaigns aimed at reducing the employer's goodwill with employees, investors, or the general public." *Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union*, 585 F. Supp. 2d 789, 795, 806 (E.D. Va. 2008) (quotation marks and citation omitted).[2]

Because AW engaged in just such activity, the First Amendment cannot preclude discovery, much less all discovery into any of its activities. Chevron has shown that AW's "criticism"[3] furthers both fraud and extortion. *See, e.g.*, Dkt. 42 at 1-10; Dkt. 52 at 6-7.[4] In furtherance of its stated objective to "put [Chevron's management and board] in a position where, to survive intact in American society as a reputable company with a competitive edge, they will be forced to settle the lawsuit" (Dkt. 14 Ex. 4), AW has made false statements to the public and to public officials in order to induce third parties to take action against Chevron. *Id.* Ex. 1 ¶¶ 108, 239-41. For example, AW urged the SEC to "open an investigation into Chevron Corporation" based on a $6 billion damages estimate that the defendants' expert disavowed and the report of a purported "independent special master" whose purportedly "independent" report the SDNY defendants secretly ghostwrote. *Id.*; Dkt. 48-1 at 23-25.

### III. The Order Ignores *Perry*'s Limits and Incorrectly Shields All Communications.

Even assuming that the First Amendment applies to a fraudulent and extortionate pressure

---

[2] The order discusses *NAACP v. Claiborne Hardware Co.*, Dkt. 59 at 6, but this case is inapplicable because it concerns liability for the economic consequences of alleged "fighting words." 458 U.S. 886, 888, 927-28 (1982). Neither liability, "fighting words," nor "incit[ing] or produc[ing] imminent lawless action," is at issue here. Dkt. 59 at 6. Chevron seeks discovery, not compensation, from AW.
[3] The order states that "[a]ll that Chevron has shown this Court is that [AW] has been very critical of Chevron's operations in Ecuador." Dkt. 59 at 6. But it so concludes without reference to Chevron's allegations or evidence, and relies almost entirely on misapplying Judge Kaplan. *See* Dkt. 59 at 7. As just shown, Judge Kaplan has found that the pressure campaign in which AW participated constitutes part of a legally and factually valid prima facie showing of fraud and extortion.
[4] Even if AW were only parroting the defendants' falsehoods, it "knew or had reason to know that the statements . . . were false and/or fraudulent" and thus "cannot hide behind the First Amendment simply by asserting [it] did not author" them itself. *U.S. v. Hempfling*, 431 F. Supp. 2d 1069, 1084 (E.D. Cal. 2006). AW is at least a witness to its co-conspirators' activities, and the First Amendment does not protect "concealment of crime." *Branzburg v. Hayes*, 408 U.S. 665, 697 (1972).

1  campaign, its protection is limited to "*private, internal* campaign communications concerning the
2  *formulation of campaign strategy and messages*." *Perry*, 591 F.3d at 1165 n.12 (emphases in origi-
3  nal); *see also In re Motor Fuel Temperatures Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1152 (D.
4  Kan. 2010).  And it protects such communications only where they are exclusively between the "the
5  core group of *persons* engaged in the formulation of campaign strategy and messages." 591 F.3d at
6  1165 n.12 (emphasis in original).  But rather than protect this limited discovery—which would have
7  been an unwarranted limitation in any event, given that it is "highly relevant" and in furtherance of
8  fraud and extortion—the Order quashes the subpoenas in their entirety. *Cf. Nat'l Org. for Marriage*
9  *v. McKee*, 723 F. Supp. 2d 236, 239-41 (D. Me. 2010) (assessing whether "enforcement of [a] partic-
10 ular discovery request" would infringe on First Amendment rights).

11  The majority of Chevron's requests do not implicate the First Amendment under any theory.
12 For example, various requests seek communications with courts, government agencies, media profes-
13 sionals, the public, and donors (Dkt. 3 Ex. E ¶¶ 1, 6, 11, 21, 23)—but *Perry* "certainly does not apply
14 to documents or messages conveyed to" the public "for purposes such as persuasion, recruitment or
15 motivation," or to "communications soliciting active support from actual or potential" donors.  591
16 F.3d at 1165 n.12.  Even the requests cited in the Order are not exclusive to *Perry*'s protected sphere,
17 but would encompass communications with third parties and other unprotected documents. *See* Dkt.
18 59 at 9.  The Magistrate's apparent conclusion that these requests are "overbroad" because they list
19 numerous activities, campaigns, and media vehicles (*id.*) is erroneous, since it reflects the breadth of
20 AW's actions to harm Chevron.  In any event, if *Perry*'s protections applied here, the appropriate re-
21 sponse would have been to limit the subpoena to a reasonably determined "core group."[5]

22  Accordingly, Chevron respectfully requests relief from the Order, and requests that any brief-
23 ing schedule be expedited in light of the underlying litigation's May 31, 2013 discovery cut-off.

---

[5] The Order does not identify the members of the "core group," even though that is a fundamental aspect of the analysis. *See Perry v. Schwarzenegger*, 602 F.3d 976, 981 (9th Cir. 2010) (district court must determine core group).  AW, after refusing to identify its core group throughout the meet and confer, and insisting that, at most, it "at times coordinated its message" with the RICO defendants, Dkt. 41 at 8, asserted at the last minute that Donziger and other RICO defendants and co-conspirators were actually in the core group.  This contradicts their initial position, and the evidence of fraud and extortion precludes application of First Amendment protections to Donziger and his co-conspirators.

Dated: April 19, 2013                    Respectfully submitted,

                                                          GIBSON, DUNN & CRUTCHER LLP

                                                          By:   */s/ Ethan Dettmer*
                                                                              Ethan D. Dettmer

                                         *Attorneys for Plaintiff Chevron Corporation*